April 23, 2020

<u>BY CM/ECF AND EMAIL</u>

Hon. Analisa Torres,
    United States District Court,
        Southern District of New York,
           Daniel Patrick Moynihan U.S. Courthouse,
             500 Pearl Street,
                New York, NY 10007-1312.

      Re:   *Contrarian Capital Management LLC, et al.* v. *Bolivarian Republic of Venezuela*,
           No. 1-19-cv-11018 (S.D.N.Y.) (rel. Nos. 1-18-cv-11940 and 1:19-cv-03123)

Dear Judge Torres:

        We write pursuant to Rule II.C of Your Honor's Individual Practices in Civil Cases and Local Civil Rule 37.2 to raise a discovery dispute.  Specifically, Defendant the Bolivarian Republic of Venezuela (the "Republic") seeks to compel disclosure of the identity of certain of Plaintiffs' beneficial owners.[1]  Plaintiffs have represented that, for certain beneficial holders, they are contractually barred from making this disclosure without a court order compelling them to do so.  Plaintiffs have also objected that disclosure of Plaintiffs' investors is disproportionate to the needs of this case.

---

[1] The parties have agreed to the following definition of beneficial ownership, defined in accordance with FinCEN "know your customer" rules:

    a)  Each person, if any, who, directly or indirectly, through any contract, arrangement, understanding, relationship or otherwise, owns 25 percent or more of the equity interests of a legal entity;

    b)  Each individual with a significant responsibility to control, manage, or direct a legal entity, including:

        i.  An executive officer or senior manager (e.g., a Chief Executive Officer, Chief Financial Officer, Chief Operating Officer, Managing Member, General Partner, President, Vice President, or Treasurer); or

        ii.  Any other individual who regularly performs similar functions; and

    c)  Each trustee, grantor, beneficiary or protector, and each other person designated by a trust instrument to receive any distribution (whether or not in the discretion of a trustee), make any appointment, or manage or control the management of any asset of a trust; and

    d)  Each person who, by assignment, pledge, gift, contract, or otherwise (other than merely through share ownership of a Plaintiff), holds any contract or property interest in the claims asserted in this case or in any judgment or settlement of this case.

Hon. Analisa Torres                                                                                          -2-

The parties met and conferred in good faith to resolve this dispute, including emails exchanged on April 6 and April 8, a twenty-minute phone conference on April 21 at 3:30 p.m., and a follow-up phone conference on April 22 at 1:05 p.m. lasting 11 minutes, both of which were attended by Justin Ellis and Lauren Dayton for Plaintiffs and Joseph Neuhaus and Angela Ellis for Defendant.  This dispute was not resolved.  Pursuant to the parties' joint letter of April 2, 2020 (ECF 35) and the Court's April 10, 2020 Civil Case Management Plan and Scheduling Order (ECF 41), the parties have engaged cooperatively in expedited discovery that is to end today.  Defendant is raising the dispute at the earliest opportunity after the dispute arose.

**The Republic's Position**

On April 1, 2020 and April 8, 2020, the Republic served Plaintiffs with two sets of informal interrogatories and one set of informal requests for production.  Those requests were designed to serve three objectives:

1.  Confirm that plaintiffs actually own the bonds or notes, have not transferred them, and have received DTC's proxy to assert claims;

2.  Confirm that plaintiffs acquired the right to sue on the bonds or notes in due course and without fraud;

3.  Confirm the identity of the plaintiffs and their beneficial owners, to ensure that they are not subject to sanctions or counterclaims by the Republic, and are not otherwise associated with the Maduro regime.

On April 6, 2020, Plaintiffs informed the Republic that they objected to disclosure of the funds' beneficial owners.  As a compromise, the Republic offered to limit the definition of beneficial ownership consistent with FinCEN "know your customer" requirements[2] to include, among other things, each person who, directly or indirectly, owns 25 percent or more of the equity interests of a legal entity.  *See supra* n.1.  We understand that similar requests were formally propounded in the related cases, *Casa Express Corp.* v. *Bolivarian Republic of Venezuela* (No. 1:18-cv-11940) and *Pharo Gaia Fund Ltd et al.* v. *Bolivarian Republic of Venezuela* (No. 1-19-cv-03123), and were complied with.[3]

---

[2] *See* Beth Moskow-Schnoll, Ballard Spahr LLP, *FinCEN's Beneficial Ownership Rule:  A Practical Guide to Being Prepared for Implementation* 3-4 (Aug. 1, 2017), *available at* https://www.moneylaunderingnews.com/2017/08/fincens-beneficial-ownership-rule-a-practical-guide-to-being-prepared-for-implementation/.

[3] Contrary to plaintiffs' speculation (n. 5 *infra*), the plaintiff in *Casa Express* provided the name of the individual behind the claim under assurances of attorneys-eyes-only confidentiality similar to those available to Plaintiffs here.

Hon. Analisa Torres                                                                         -3-

On the evening of April 17, Plaintiffs served the Republic with responses and objections to the Republic's informal interrogatories and requests for production.  Those responses accepted the definition of beneficial ownership offered by the Republic, but objected to disclosure of certain of the beneficial owner identities.

The Republic has offered to restrict access to the beneficial owner identities even further than provided by the Protective Order entered by this Court on March 24, 2020 (ECF No. 31), which already limits to Attorneys' Eyes Only any information designated Highly Confidential.  ECF No. 31 ¶ 6.3.  Despite these considerable protections, Plaintiffs represented that they are contractually barred from disclosing this information without an order from the Court compelling them to do so.

The Republic therefore respectfully requests that Your Honor enter an order compelling Plaintiffs to identify any beneficial owner that meets the criteria agreed to by the parties as set forth *supra* in footnote 1.  The Republic is entitled to determine whether Plaintiffs acquired the right to sue on the bonds or notes in due course, without fraud, or with the primary purpose of commencing suit.  *See McConnell* v. *Commonwealth Pictures Corp.*, 7 N.Y. 2d 465, 469 (1960).  In particular, the Republic is entitled to know the identities of the beneficial owners in order to verify that the beneficial owners are neither connected to, nor a front for, the Maduro regime.  Plaintiffs note *infra* that the plaintiff funds have few investors and that in fact at least some of them are "funds-of-one," that is, plaintiffs who own the bonds in question through shell vehicles; plaintiffs argue that as a result they should be allowed to conceal the identity of the sole owner of the bonds even from their counterparty when suing on those bonds.  That is a remarkable position—that discovery in a U.S. court would allow a plaintiff to hide behind a shell entity so as to prevent the defendant from knowing who is suing it.  If discovery is to reveal anything, it should disclose the people who are the real parties in a case such as this.  The Republic should not be required to rely on Plaintiffs' say-so with respect to whether they are, for example, sanctioned entities.

In addition, because the Interim Government lacks access to the full records of the Republic (*see* ECF 35 at 3-4), it needs the identities of the beneficial owners to do database and public records searches to attempt to determine whether the Republic has potential counterclaims or claims against the plaintiffs (which are apparently pass-through fund entities) or their beneficial owners.  *See* Fed. R. Civ. P. 56(d) (providing for discovery where nonmovant cannot present facts essential to justify opposition to summary judgment).  Plaintiffs argue that discovery is limited, without leave of court, to claims that are pled.  But this is precisely a case in which the court should grant leave in order to allow the Republic to do minimal due diligence before a summary judgment motion on a claim seeking a judgment in excess of $500 million.

**<u>Plaintiffs' Position</u>**

Plaintiffs have already identified their "beneficial owners" to the Republic under the parties' agreed-to definition, with one exception:  Plaintiffs object to disclosing the names of persons who own 25 percent or more of the equity interests of a Plaintiff fund.  *See* footnote 1,

Hon. Analisa Torres                                                                        -4-

*supra*.  That discovery would, in effect, require Plaintiffs to disclose their investors to the Republic.  The Republic does not need that information.  Plaintiffs have already provided sworn statements that neither they nor their investors are sanctioned or in any way connected to the Maduro regime.  And Plaintiffs have backed up those sworn statements with interrogatory responses and documents allowing the Republic to verify that what Plaintiffs have sworn to is true.  Because the relevance of investor names is minimal given Plaintiffs' other disclosures, and because Plaintiffs' investors have substantial privacy interests, the Court should deny this requested discovery as disproportionate to the needs of this case.  Fed. R. Civ. P. 26(b)(1).

The Republic's proposed discovery is disproportionate for two reasons.  First, some of the Republic's asserted reasons for production are simply not relevant.  For example, while the Republic seeks discovery into potential counterclaims, it is "well-established that information relevant only to claims not yet pled [is] beyond the scope of discovery" without leave of court. *Lifeguard Licensing Corp. v. Kozak*, No. 15 Civ. 8459, 2016 WL 3144049, at *2 (S.D.N.Y. May 23, 2016).  Likewise, while the Republic wishes to explore whether Plaintiffs bought bonds "with the primary purpose of commencing suit," champerty defenses under governing New York law do not apply in this case.  *See* N.Y. Judiciary L. § 489(2) (champerty defenses "shall not apply to any assignment, purchase or transfer hereafter made of one or more bonds . . . having an aggregate purchase price of at least five hundred thousand dollars").

Second, the possibly legitimate defenses that the Republic *does* raise do not justify the intrusive discovery it seeks.  The Republic suggests that it might litigate whether Plaintiffs acquired the bonds "in due course and without fraud" and whether Plaintiffs or their investors are connected to the Maduro regime.  But the marginal utility to those defenses of providing Plaintiffs' investors' names is near zero.  That is because Plaintiffs have already gone to great lengths to assure the Republic through their discovery productions[4] that they and their investors have legitimate claims to these bonds.  Most importantly, Plaintiffs have provided a sworn statement in interrogatory responses that none of Plaintiffs, or, to their knowledge, any of Plaintiffs' beneficial owners, are (a) a senior official of any foreign government; (b) subject to sanctions by OFAC, including, without limitation, sanctions relating to Venezuela; (c) an immediate family member of any such senior foreign official or sanctioned person; or (d) a close associate of any such senior foreign official or sanctioned person.  The Republic has given no reason why that sworn statement cannot satisfy its due diligence needs.

However, the Republic does not have to rely solely on Plaintiffs' sworn statement.  Plaintiffs also gave the Republic ample information to independently ascertain that none of Plaintiffs' investors are subject to sanctions or connected to the Maduro regime.  As Plaintiffs disclosed, Plaintiffs' investors include Contrarian employees and funds, U.S. public endow-ments, a publicly traded financial-services company, a U.S. national's family office, and

---

[4] Plaintiffs have designated certain of the discovery materials referred to here as "confidential" or "highly confidential" under the Court's protective order.  *See* Dkt. 31.  Plaintiffs will submit any of the designated materials referred to in this letter *in camera* if the Court so requests.

Hon. Analisa Torres                                                                                    -5-

investors in an account managed by an SEC-registered investment adviser located in the U.S. (whose name is disclosed to the Republic).  Plaintiffs also identified, for every corporate equity owner, the jurisdiction in which that entity is incorporated.  Plaintiffs disclosed to the Republic every person with significant authority to control or manage any Plaintiff.  And Plaintiffs certified under oath that no person holds any contract or property interest in the causes of action in this case (other than through investing in a Plaintiff).  That information is more than enough to determine whether any persons on current sanctions lists meet the investors' description.

Plaintiffs have also provided ample information to show that they acquired these bonds in due course and without fraud.  Plaintiffs have produced interrogatory responses and documents, including trade blotters, transaction histories, and account statements, demonstrating that they bought these bonds at prevailing market prices from large institutional brokers.  Plaintiffs have also certified under oath that they bought the bonds in the ordinary course of business, in good faith, for value, and without notice of any adverse claims.  They have produced materials showing that they legitimately hold a securities entitlement in their bonds, including prime brokerage agreements, DTC authorizations, and assignments.  And they have produced corporate documentation such as certificates of good standing, certificates of formation, and tax filings.

All of the above shows that the relevance of investor names – on top of the information Plaintiffs have already given – is minimal.  But the burden to Plaintiffs and their investors is obvious.  Plaintiffs' investors are third parties who have legitimate privacy interests in their investments.  *Refco Grp. Ltd., LLC v. Cantor Fitzgerald, L.P.*, No. 13 Civ. 1654, 2014 WL 5420225, at *4 (S.D.N.Y. Oct. 24, 2014) (collecting cases to describe the "privacy interest in [one's] personal financial affairs" that both individuals and corporations have); *see also Seife v. Nat'l Institutes of Health*, 874 F. Supp. 2d 248, 257 (S.D.N.Y. 2012) (recognizing the "substantial privacy interest in information describing [a person's] personal financial interest").  In addition, four of Plaintiffs' investors have contractual rights to confidentiality.  While confidentiality agreements do not, by themselves, prevent discovery, the fact of such agreements demonstrates that Plaintiffs' investors have a substantial expectation of privacy.  Given that Plaintiffs have produced to the Republic almost everything else it has asked for – and in any event more than the Republic needs to satisfy itself about its potential defenses – that privacy interest outweighs the Republic's minimal interest in disclosing the investors' identities.[5]

---

[5] The Republic also represents that similar requests were complied with in the related *Casa Express* and *Pharo Gaia* cases.  However, the corporate structure of the plaintiffs in those cases made the burden of complying with the Republic's request far less than it is in this case.  The related cases' plaintiffs are set up, respectively, as a single trust and two large multi-investor funds in which no investor is likely to hold more than 25% of any entity's equity.  By comparison, the Plaintiff funds in this case are set up as several smaller funds, including "funds-of-one" for single investors, so that disclosing any investor with a 25% or more stake in a given fund would necessarily disclose investors for five of the Plaintiff funds.  And while the Republic speculates that Plaintiffs' fund structure was designed to "conceal" ownership, Plaintiffs in fact chose that structure for legitimate and mundane investment reasons – in large part, because investors requested that structure.  The funds – far from being "shells" – are general-purpose investment vehicles

Hon. Analisa Torres                                                                                  -6-

 

Finally, the Republic suggests that it should be allowed to learn the identities of Plaintiffs' investors because that information would be subject to a protective order.  However, a protective order cannot give the investors' identities any more relevance than they already have.  And there is no guarantee that a protective order will prevent the ultimate disclosure of Plaintiffs' investors' identities if they are later used in this litigation.  *See In re Namenda Direct Purchaser Antitrust Litig.*, No. 15 Civ. 7488, 2017 WL 3613663, at *6 n.5 (S.D.N.Y. Aug. 21, 2017).  The safer course is to deny the Republic's motion and allow this case to proceed based on the ample discovery that Plaintiffs have already provided.

 

Respectfully submitted,

 

/s/ Steven F. Molo
Steven F. Molo
Justin M. Ellis
Lauren F. Dayton
MOLOLAMKEN LLP
430 Park Avenue
New York, NY 10022
Tel:    (212) 607-8160
Fax:    (212) 607-8161
smolo@mololamken.com

*Counsel for Plaintiffs*

/s/ Joseph E. Neuhaus
Joseph E. Neuhaus
Sergio J. Galvis
James L. Bromley
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY  10004
Tel:    (212) 558-4000
Fax:    (212) 558-3588
neuhausj@sullcrom.com

 

Angela N. Ellis
1700 New York Avenue, N.W. Suite 700
Washington, D.C.  20006-5215
Tel:    (202) 956-7500
Fax:    (202) 293-6330

*Counsel for Defendant*

---

for each investor that contain numerous other investments beyond the bonds at issue.  The Republic offers no proof otherwise.