# SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

*125 Broad Street*
*New York, New York 10004-2498*

___

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.
BRUSSELS • FRANKFURT • LONDON • PARIS
BEIJING • HONG KONG • TOKYO
MELBOURNE • SYDNEY

May 22, 2020

BY CM/ECF AND EMAIL

Hon. Analisa Torres,
   United States District Court,
      Southern District of New York,
         Daniel Patrick Moynihan U.S. Courthouse,
           500 Pearl Street,
              New York, NY 10007-1312.

      Re:    *Contrarian Capital Management LLC, et al.* v. *Bolivarian Republic of Venezuela*, No. 1:19-cv-11018 (S.D.N.Y.) (rel Nos. 1:18-cv-11940 and 1:19-cv-03123)

Dear Judge Torres:

      I represent Defendant the Bolivarian Republic of Venezuela (the "Republic") in the above-captioned action (the "Action"). I write pursuant to Rule III.A of this Court's Rules of Individual Practice in Civil Cases and the Court's Order dated May 7, 2020 (ECF No. 51) to request leave to move for a stay of this action.

### I.    A Stay Is Appropriate In Light of the Unprecedented Crises in Venezuela.

      The Republic intends to ask the Court to exercise its inherent authority to stay this case on essentially the same grounds on which the Republic has sought a stay in the cases of *Pharo Gaia Fund Ltd. et al.* v. *Bolivarian Republic of Venezuela*, No. 1:19-cv-03123, (S.D.N.Y.), and *Casa Express Corp.* v. *Bolivarian Republic of Venezuela*, No. 1:18-cv-11940 (S.D.N.Y.) (the "Related Cases"). Those motions are presently pending before this Court.

      As the Republic detailed in those motions,[1] Venezuela has been mired in a constitutional crisis since Nicolás Maduro claimed victory in a rigged and fraudulent election held

___

[1]     *See* Memorandum of the Bolivarian Republic of Venezuela in Response to Motion for Summary Judgment and in Support of Cross-Motion for a Stay at 2-6 ("Republic's Brief in Support of Stay"), *Pharo Gaia Fund Ltd. et al.* v. *Bolivarian Republic of Venezuela*, No. 1:19-cv-03123, (S.D.N.Y. Jan. 16, 2020) (ECF No. 44); No. 1:18-cv-11940 (S.D.N.Y. Jan. 16, 2020) (ECF No. 66).

Hon. Analisa Torres                                                                                                          -2-

in 2018.  In January 2019, with the support of the fairly elected Venezuelan National Assembly, then-National Assembly President Juan Guaidó assumed the presidency.  *See Jiménez* v. *Palacios*, 2019 WL 3526479, at *3 (Del. Ch. Aug. 2, 2019). The United States swiftly recognized Mr. Guaidó and denounced Mr. Maduro,[2] and more than 50 nations across the world now recognize Mr. Guaidó and the Interim Government he leads as the only legitimate government of Venezuela.[3] Within Venezuela, however, Mr. Maduro has refused to relinquish power.

In addition to this political crisis, Venezuela also faces a catastrophic humanitarian emergency.  The corrupt policies of former presidents Maduro and Chávez destroyed Venezuela's infrastructure and domestic production capacity, leading to an historic economic collapse.  Over the past six years, Venezuela's gross domestic product has plummeted nearly 62.2%, and an estimated 4.7 million people have fled the country.[4]  This human rights disaster has only been exacerbated by the global COVID-19 pandemic; access to food and other life-saving resources is scarce, and the public health system is on the brink of collapse, with hospitals lacking even the most basic resources, such as running water.[5]

In light of these crises, this court should exercise its inherent authority to stay this proceeding.  *See Louis Vuitton Malletier S.A.* v. *LY USA, Inc.*, 676 F.3d 83, 96 (2d Cir. 2012) ("The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket . . . .") (citation omitted).  In deciding whether a stay is appropriate, this Court typically considers "(1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest." *Catskill Mountains Chapter of Trout Unlimited, Inc.* v. *EPA*, 630 F. Supp. 2d 295, 304 (S.D.N.Y. 2009). Each of these factors weighs in favor of a stay here.

- **Plaintiffs' Private Interests.**  A stay would not prejudice Plaintiffs because Office of Foreign Assets Control ("OFAC") sanctions prevent them from recovering on any debt of the Republic without specific permission from the Executive Branch.  *See* Exec. Order No. 13884, § 1(a), 84 Fed. Reg. 38,843 (Aug. 5, 2019).  More generally, Plaintiffs are sophisticated investors who purchased the securities at a material discount reflecting the

---

[2]   The White House, Statement from President Donald J. Trump Recognizing Venezuelan National Assembly President Juan Guaidó as the Interim President of Venezuela (Jan. 23, 2019), https://www.whitehouse.gov/briefings-statements/statement-president-donald-j-trump-recognizing-venezuelan-national-assembly-president-juan-guaido-interim-president-venezuela/.

[3]   ShareAmerica, *More than 50 Countries Support Venezuela's Juan Guaidó* (Nov. 15, 2019), https://share.america.gov/support-for-venezuelas-juan-guaido-grows-infographic/.

[4]   *See* Statement by United Nations High Commissioner for Human Rights Michelle Bachelet, Oral Update on the Situation of Human Rights in the Bolivarian Republic of Venezuela (Dec. 18, 2019), https://www.ohchr.org/EN/NewsEvents/Pages/DisplayNews.aspx?NewsID=25438&LangID=E.

[5]   Philip Reeves, *Many Venezuelan Hospitals Lack Access to Function, Let Alone Handle COVID-19*, NPR (Apr. 10, 2020), https://www.npr.org/2020/04/10/831569313/many-venezuelan-hospitals-lack-basics-to-function-let-alone-handle-covid-19.

Hon. Analisa Torres                                                                                                       -3-

        risky nature of their investment, including the risk of such obstacles to collecting on the bonds.

- **Defendant's Interests.** The Republic has announced its intention to undertake an orderly and comprehensive restructuring of its debts on consensual terms, and is taking concrete steps to move that process forward.[6] Entry of judgment would cause tremendous harm to the Republic by triggering an onslaught of further proceedings as bondholders seek to gain a leg-up in any eventual restructuring. Allowing this and its related cases to proceed would waste the Republic's scarce resources and significantly complicate the contemplated restructuring and the ability to preserve crucial assets for the Venezuelan people.

- **Judicial Resources.** The run on the court that would be triggered by entry of judgment here would also waste valuable judicial resources, without providing any benefit to the potential litigants, who are unable to recover on their judgments in light of OFAC sanctions. Thus, it would be far more efficient for the Court to stay litigation until the Republic is in a position to propose an orderly, consensual debt restructuring plan.

- **Interests of Non-Parties and Public Interest.** A consensual restructuring of the Republic's debt is also in the public's interest, and strongly supported by U.S. policy. *See* Brief for the United States, *Capital Ltd.* v. *Republic of Argentina*, 2012 WL 1150791, at *7 (2d Cir. Apr. 4, 2012) ("In those rare cases where a sovereign cannot meet its external obligations . . . the policy of the United States is that the orderly and consensual restructuring of sovereign debt . . . is the most appropriate response."). *See also Crystallex Int'l Corp.* v. *PDV Holding, Inc.*, 2019 WL 6785504, at *3 (D. Del. Dec. 12, 2019) (staying cases pending against the Republic based, in part, on "concern not to create a 'run on the bank,' that is, an influx of creditors to the Court, with negative consequences for the Republic, for U.S. policy (which favors an orderly transition of power in the Republic and a coordinated restructuring of its debts), and, potentially, th[e] Court").

        A stay is also appropriate based on principles of international comity and necessity. This Circuit has recognized that a stay may be justified in the context of sovereign restructurings to permit time for a negotiated outcome between the sovereign and its creditors, particularly where the debt resolution is consistent with United States policy. *See, e.g., Pravin Banker Assocs., Ltd.* v. *Banco Popular del Peru*, 109 F.3d 850, 855–56 (2d Cir. 1997) (stay may be appropriate to pending a sovereign restructuring to facilitate "negotiations with its creditors without unduly threatening the ultimate enforceability of the debt"); *Canada Southern Railway Co.* v. *Gebhard*, 109 U.S. 527, 539 (1883) ("the true spirit of international comity" requires deference to reorganization efforts undertaken by a foreign nation). Likewise, a stay is appropriate under the

---

[6]     *See* Office of the Special Attorney General of the Bolivarian Republic of Venezuela, *Guidelines for the Renegotiation of the Chávez/Maduro Era Legacy Public External Debt* (July 1, 2019) (the "Guidelines"), available at *Pharo Gaia Fund Ltd. et al.*, No. 1-19-cv-03123 (ECF. No. 44) (Ex. 1); Debtwire, *Venezuela interim government distributes preliminary RFP for debt reconciliation agent*, (Mar. 4, 2020), https://www.debtwire.com/intelligence/view/prime-2996157?searchTerm=venezuela.

Hon. Analisa Torres -4-

doctrine of necessity, because the humanitarian and political crisis facing Venezuela poses "a serious danger to its existence, to its political or economic survival, [or] to the possibility of maintaining its essential services in operation." *LG&E Energy Corp.* v. *Argentine Republic*, ICSID Case No. ARB/02/01, Decision on Liability, ¶ 246 (Oct. 3, 2006).

## II. Plaintiffs Cannot Obtain A Judgment Without A Specific License From OFAC.

A stay is also warranted here because Plaintiffs cannot obtain a judgment against the Republic absent a specific license from OFAC, which Plaintiffs have not obtained, or, apparently, sought. As set forth in the briefing in the Related Cases,[7] Executive Order 13884 designates "all property and interests in property of the Government of Venezuela that are in the United States" as blocked property that may not be "transferred, paid, exported, withdrawn, or otherwise dealt in." Exec. Order No. 13884, § 1(a), 84 Fed. Reg. 38,843 (Aug. 5, 2019). Under OFAC's Venezuela Sanctions Regulations, the term "transfer" encompasses "any actual or purported act or transaction" that is intended to or that does "create, surrender, release, convey, transfer, or *alter*, directly or indirectly, any right, remedy, power, privilege, or *interest with respect to any property*." 31 C.F.R. § 591.310 (emphasis added).

The Republic has an interest in the property at issue here—the bonds on which Plaintiffs are suing—insofar as it has an interest in the collective action clauses (clauses in the bonds that permit a specified supermajority of bondholders to alter certain terms of the bonds) and other contractual provisions in the Bonds. Plaintiffs seek to have the Court's judgment nullify certain of those rights—in particular, the collective action clauses—and thus plaintiffs are seeking to "affect" the Republic's interests in the property.

Respectfully submitted,

*/s/ Joseph E. Neuhaus*
Joseph E. Neuhaus

---

[7] *See* Reply Memorandum of the Bolivarian Republic of Venezuela in Support of Cross-Motion for a Stay ("Republic's Reply Brief") at 2-7, *Pharo Gaia Fund Ltd., et al.*, No. 1:19-cv-03123 (ECF No. 52).