

Steven F. Molo
MoloLamken LLP
430 Park Avenue
New York, NY 10022
T: 212.607.8170
F: 212.607.8161
smolo@mololamken.com
www.mololamken.com

May 29, 2020

BY CM/ECF AND EMAIL

Hon. Analisa Torres
United States District Court
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, NY 10007-1312

> Re: *Contrarian Capital Management, LLC v. Bolivarian Republic of Venezuela*, 19 Civ. 11018 (S.D.N.Y.) (rel. Nos. 19 Civ. 3123 & 18 Civ. 11940): <u>Motion to Stay</u>

Dear Judge Torres:

We represent the Plaintiffs. Pursuant to Rules III.A and III.C of the Court's individual practices and the Court's May 4, 2020 order, Dkt. 48, we write in response to the Defendant Bolivarian Republic of Venezuela's pre-motion letter seeking leave to file a motion to stay this action indefinitely. Dkt. 55. While the parties have agreed that the Republic's stay motion should be briefed on the same schedule as Plaintiffs' proposed motion for summary judgment, Dkt. 35 at 3, the Republic's proposed motion is meritless and should be denied.

**I.     A Stay is Not Justified**

The Republic requests the extraordinary relief of staying this action indefinitely. *See* Dkt. 55 at 1-3 (not specifying the proposed stay's length); No. 18 Civ. 11940, Dkt. 73 at 7 (admitting in the related cases that the Republic seeks a stay of a "to-be-determined duration"). Its primary argument for a stay is that, at some point in the future, it intends to begin a process for restructuring its bonds. Dkt. 55 at 3. But there is no indication when the restructuring will occur, and that "restructuring" in any event will be wholly voluntary.

While the Republic gestures in its pre-motion letter towards tentative steps it has taken towards a restructuring, such as "announc[ing] its intention[s]" and soliciting possible advisors, Dkt. 55 at 3 & n.6, the Republic has not given any details about when advisors will be hired, let alone when – or even if – a restructuring will start in earnest. As the Republic's state-owned oil company has admitted, the Republic's restructuring plan "calls for a ***voluntary*** renegotiation, and will not be implemented until the Maduro's [*sic*] unlawful usurpation of the Venezuelan government has ended and the OFAC sanctions are lifted." Letter, *Red Tree Invs., LLC v. Petroleos de Venezuela, S.A.*, No. 19 Civ. 2523, Dkt. 42 at 3 (S.D.N.Y. Sept. 3, 2019). Given

that the Republic's government does not control Venezuela's territory or institutions, *see* Dkt. 55 at 2, it is not clear that restructuring will ever occur.

The Republic asserts two bases for its proposed stay:  (1) the Court's inherent authority; and (2) international-law principles of comity and necessity.  Dkt. 55 at 1-4.  Neither basis, however, can support the relief that the Republic seeks.

### a.  The Court's Inherent Authority Does Not Justify A Stay

While the Court has inherent power to stay civil actions, such a stay is an "extraordinary remedy."  *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 98 (2d Cir. 2012).  The Republic bears the burden of showing the need for a stay.  *Id.* at 97 (citing *Clinton v. Jones*, 520 U.S. 681, 708 (1997)).  Moreover, courts should not grant "a stay of indefinite duration in the absence of a pressing need."  *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936).  A stay "is immoderate and hence unlawful unless so framed in its inception that its force will be spent within reasonable limits, so far at least as they are susceptible of prevision and description."  *Id.* at 257.  The Republic's failure to propose ***any*** limits for its immoderate, indefinite stay is reason enough to deny its motion.  *Id.* at 255; *see also Pravin Banker Assocs., Ltd. v. Banco Popular Del Peru*, 109 F.3d 850, 855 (2d Cir. 1997) (affirming district court order denying "an indefinite stay to allow [a foreign sovereign] to complete its efforts to renegotiate its foreign debt").

Even if the Republic had proposed a more limited stay, that stay should be still denied as a matter of equity.  *See Louis Vuitton*, 676 F.3d at 97 ("A request for a stay is an appeal to equity." (citation omitted)).  The Republic cites a multi-factor test about granting stays.  Dkt. 55 at 2-3. But such factors "can do no more than act as a rough guide for the district court as it exercises its discretion."  *Louis Vuitton*, 676 F.3d at 99.  Two courts have already found that equity does not support frustrating the Republic's investors' rights in favor of a theoretical restructuring that may never come.  *Red Tree Invs., LLC v. Petroleos de Venezuela, S.A.*, No. 19 Civ. 2523, 2020 WL 209276, at *3 (S.D.N.Y. Jan. 14, 2020); *OI European Grp. B.V. v. Bolivarian Republic of Venezuela*, 419 F. Supp. 3d 51, 56 (D.D.C. 2019).  While nobody doubts the reality of the Republic's crises, the fact remains that "'it may take years to stabilize the country and fully transition to another political regime' in Venezuela."  *Red Tree*, 2020 WL 209276 at *3 (quoting *OI*, 419 F. Supp. 3d at 56).  Nor is it clear that whatever restructuring process the Republic may someday adopt would offer a worthwhile alternative to litigation.  As a result, it is neither "'appropriate [n]or fair to [a] plaintiff to stay this case indefinitely until transition to the Guaidó government is completed.'"  *Id.* (internal punctuation omitted).  The Court should find the same here.

In any event, each of the equitable factors the Republic cites weigh ***against*** a stay:

***Plaintiffs' Interests***.  Plaintiffs have an obvious due process interest in a prompt resolution of their claims.  That interest is especially powerful because, except for one legal dispute about prejudgment interest, the Republic does not challenge its liability on these bonds.  *See* Dkt. 56 (pre-motion letter) at 2-3.  A stay would prejudice Plaintiffs by preventing them from even obtaining a judgment on uncontested claims while other creditors with judgments are proceeding towards execution.  *See Red Tree*, 2020 WL 209276, at *2 (recognizing such prejudice); *see, e.g.*, Mem. Order, *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,

No. 17 Misc. 151, 2020 WL 2616225, at 1 (D. Del. May 22, 2020) (lifting stay on writ of attachment). And while the Republic speculates about what prices Plaintiffs paid for their bonds, Dkt. 55 at 2-3, debtors are not entitled to avoid facing judgment on their debts simply because those debts might trade at a discount.

**Defendant's Interests.** The Republic urges that a stay would support its interest in an orderly restructuring. Dkt. 55 at 3. As described above, however, any restructuring remains wholly hypothetical. And while the Republic also warns of an "onslaught of further proceedings" by other creditors if this case goes forward, *id.*, the Republic hardly has a legitimate interest in avoiding liability on these debts just because it has other creditors that might also sue. In any event, staying this one case will not deter new lawsuits if other cases like *Crystallex* are already moving towards execution. Nor is it all clear that this lawsuit meaningfully impacts the Republic's time and resources when the Republic is ably represented by counsel.

**Judicial Resources.** This factor weighs heavily against a stay. Both this case and other cases involving the Republic's debt are straightforward contract cases that can be easily resolved. This Court has a "well-recognized interest in disposing 'of the causes on its docket with economy of time and effort for itself. . . .'" *Louis Vuitton*, 676 F.3d at 104 (quoting *Landis*, 299 U.S. at 254). The Court's interests are best served by resolving a case that can be resolved now.

**Interests of Nonparties and Public Interest.** The Republic tries to conjure up a "U.S. policy" in favor of its restructuring. Dkt. 55 at 3. But the Executive Branch has never expressed support for staying this case or any other bondholder case against the Republic. In fact, as one of the Republic's cited courts recognized, regulations ***permit*** allowing claims against the Republic to proceed to judgment. *Crystallex*, 2020 WL 2616225, at *1 (noting that "[n]o Executive Branch order or regulation prohibits this Court from moving forward in" arranging execution); pp. _-_, *infra*. Regardless, where, as here, the "restructuring" at issue is speculative, that would-be process cannot outweigh the United States' "strong interest in ensuring the enforceability of valid debts under the principles of contract law, and in particular, the continuing enforceability of foreign debts owed to United States lenders." *Pravin*, 109 F.3d at 855 (collecting cases).

### b. International Law Does Not Justify a Stay

The Republic is also wrong to argue that comity supports a stay. Dkt. 55 at 2-3. While comity has on rare occasions justified staying U.S. cases to defer to foreign bankruptcy proceedings, such stays are granted only where a formal bankruptcy process is actually taking place. *Canada S. Ry. Co. v. Gebhard*, 109 U.S. 527, 530, 539 (1883) (deferring to Canadian statutory "scheme of arrangement" that had already taken place); *Pravin*, 109 F.3d at 855 (affirming district court order that deferred to ongoing Chilean liquidation proceeding). Where, on the other hand, a sovereign's restructuring negotiations are a "voluntary and open-ended" process with "no obvious (and reasonably proximate) termination date," courts refuse to grant a stay to defer to those proceedings. *Pravin*, 109 F.3d at 855 (affirming denial of stay). That is because such a stay would improperly convert what should be "voluntary and open-ended negotiations … into the equivalent of a judicially-enforced bankruptcy proceeding." *Id.* If ***ongoing*** voluntary negotiations do not justify a stay, then the Republic's claims that a voluntary restructuring may ***someday*** happen certainly will not do.

The Republic's reliance on the international-law doctrine of necessity likewise fails. The FAAs have choice-of-law clauses applying New York law. Republic 56.1 Response ¶¶ 21-22. Those clauses are enforceable under the New York choice-of-law rules applicable in FSIA cases. *Barkanic v. Gen. Admin. of Civil Aviation of the People's Republic of China*, 923 F.2d 957, 960 (2d Cir. 1991) ("[F]orum law provides the proper choice of law rules for FSIA cases"). The Republic should be held to its bargain to apply New York law, not international law. In addition, international law doctrines such as the "doctrine of necessity" do not apply in a private contract case like this one. *See* 28 U.S.C. § 1606 (foreign sovereigns that are not immune "shall be liable in the same manner and to the same extent as a private individual under like circumstances").

## II. OFAC Regulations Do Not Bar Entering Judgment

Finally, the Republic argues that OFAC regulations bar the Court from entering judgment. Dkt. 55 at 4. It does not deny that, by their terms, OFAC regulations address the "enforcement of . . . judgment[s]" against the Republic but do not restrict *entering* judgments. 31 C.F.R. § 591.407; U.S. Dep't of the Treasury, OFAC FAQs: Venezuela Sanctions, No. 808, https://www.treasury.gov/resource-center/faqs/sanctions/pages/faq_other.aspx#venezuela (explaining that U.S. courts may "hear . . . case[s]" against the Republic). Instead, the Republic cites regulations against "alter[ing] . . . [its] interest with respect to any property" and claims that the contracts underlying the Bonds are its property. Dkt. 55 at 4 (citing 31 C.F.R. § 591.310).

The Republic's interpretation of the regulations is wrong. Entering a judgment against a party that breaches a contract does not "alter" rights under that contract – it *enforces* them. The Republic's rights and duties under the contracts will remain if a judgment is entered on Plaintiffs' claims for the missed payments so far, not least because the Republic still owes Plaintiffs future payments on their bonds.[1] Similarly, courts have recognized that OFAC regulations prohibiting "payment or transfer" of a sovereign's property do not affect a court's ability to enter a judgment that "merely establishes liability and fixes damages." *See, e.g.*, *Dean Witter Reynolds, Inc. v. Fernandez*, 741 F.2d 355 (11th Cir. 1984); *see also Comet Enter. Ltd. v. Air-A-Plane Corp.*, 128 F.3d 855, 859 (4th Cir. 1997) (noting the "serious constitutional concerns" that would arise if OFAC could restrict federal jurisdiction).

\* \* \*

There is no serious dispute that the Republic owes Plaintiffs missed principal and interest on their bonds. As the Third Circuit has remarked in the *Crystallex* case, when a creditor of the Republic's right to damages is so clear, "[a]ny outcome where [the creditor] is not paid means that Venezuela has avoided its obligations." *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 932 F.3d 126, 149 (3d Cir. 2019). The Court should not permit the Republic to avoid its obligations by staying this case indefinitely.

Respectfully submitted,

*/s/ Steven F. Molo*
Steven F. Molo

---

[1] The Republic's assertion that a judgment would "nullify" collective-action clauses in the bonds and FAAs, Dkt. 55 at 4, is also surprising: The Republic has argued in the related cases that entry of judgment "will not supersede the CAC provisions." No. 18 Civ. 11940, Dkt. 73, at 8-9 & n.4.