Exhibit J

# FISCAL AGENCY AGREEMENT

## Among

## THE REPUBLIC OF VENEZUELA

## BANCO CENTRAL DE VENEZUELA

## and

## THE CHASE MANHATTAN BANK
### *Fiscal Agent*

*Dated as of August 6, 1998*

## DEBT SECURITIES

DC_LAN01: 91108.4

# TABLE OF CONTENTS

Page

Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

1.   Securities Issuable in Series . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1
     (a)   General . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1
     (b)   Authorization   1
     (c)   Forms of Securities   4
     (d)   Temporary Securities . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4
     (e) (i)   Originally Issued Bearer Securities . . . . . . . . . . . . . . . . .   5
         (ii)   Temporary Bearer Global Securities   5
     (f) (i)   U.S. Book-Entry Provisions   7
         (ii)   Offshore Book-Entry Provisions   8
     (g)   Legends . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

2.   Fiscal Agent; Other Agents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

3.   Authentication . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9

4.   Payment and Cancellation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   10
     (a)   Payment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   10
     (b)   Withholding; Payment of Additional
           Amounts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11
     (c)   Cancellation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12
     (d)   Instructions of the Republic to Banco Central . . . . . . . . . . .   12
     (e)   References to Include Additional
           Amounts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

5.   Exchange of Securities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13
     (a)   General . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13
     (b)   Bearer and Registered Securities   13
     (c)   Definitive Registered Global
           Securities   13
     (d)   Definitive Bearer Global Securities   15

6.   Register . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15

7.   Sinking Fund and Optional Redemption . . . . . . . . . . . . . . . . . . . . .   16

8.   Conditions of Fiscal Agent's Obligations . . . . . . . . . . . . . . . . . . . .   17
     (a)   Compensation and Indemnity . . . . . . . . . . . . . . . . . . . . . . . .   17
     (b)   Agency   17
     (c)   Advice of Counsel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   18
     (d)   Reliance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   18
     (e)   Interest in Securities, etc. . . . . . . . . . . . . . . . . . . . . . . . . . . .   18
     (f)   Non-Liability for Interest . . . . . . . . . . . . . . . . . . . . . . . . . . . .   18
     (g)   Certifications . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   18

|  |  |  | Page |
|---|---|---|---|
| | (h) | No Implied Obligations | 19 |
| 9. | | Resignation and Appointment of Successor | 19 |
| | (a) | Fiscal Agent and Paying Agent | 19 |
| | (b) | Resignation and Removal | 20 |
| | (c) | Successors | 20 |
| | (d) | Acknowledgment | 20 |
| | (e) | Merger, Consolidation, etc. | 20 |
| | (f) | Separate Fiscal Agents | 21 |
| 10. | | Payment of Taxes | 21 |
| 11. | | Meetings and Amendments | 21 |
| | (a) | Calling of Meeting, Notice and Quorum | 21 |
| | (b) | Approval | 22 |
| | (c) | Binding Nature of Amendments, Notices, Notations, etc. | 23 |
| | (d) | "Outstanding" Defined | 24 |
| 12. | | Governing Law | 25 |
| 13. | | Notices | 25 |
| 14. | | Waiver of Immunity; Consent to Jurisdiction; Consent to Service; Proceedings in Venezuela | 26 |
| 15. | | Conversion of Currency | 28 |
| 16. | | Headings | 28 |
| 17. | | Counterparts | 28 |

EXHIBIT A     Form of Registered Security

EXHIBIT B     Form of Bearer Security

EXHIBIT C     Form of Temporary Bearer Global Security

EXHIBIT D     Form of Certificate of Beneficial Ownership

EXHIBIT E     Form of Certificate to be given by the EUROCLEAR Operator or CEDEL BANK, *société anonyme*

EXHIBIT F     Form of Banco Central Undertaking

FISCAL AGENCY AGREEMENT, dated as of August 6, 1998, among THE REPUBLIC OF VENEZUELA (the "Issuer" or "Venezuela"), BANCO CENTRAL DE VENEZUELA, as official financial agent of Venezuela, ("Banco Central") and THE CHASE MANHATTAN BANK, a banking corporation duly organized and existing under the laws of New York, as Fiscal Agent.

1.   Securities Issuable in Series.

(a)  General.  Venezuela may issue its notes, bonds, debentures and/or other unsecured evidences of indebtedness (the "Securities") in separate series from time to time (each such series of Securities being hereinafter referred to as a "Series" or the "Securities of a Series"). All Securities will be unsecured (subject to the provisions in the Securities providing for the securing of such obligations in the event certain other obligations of Venezuela are secured), direct, unconditional and general obligations of Venezuela for money borrowed and each Series will rank pari passu without any preference among themselves. The payment obligations under the Securities will at all times rank at least equally with all other payment obligations of Venezuela relating to External Public Debt (as defined in the Securities) of Venezuela. The full faith and credit of Venezuela will be pledged for the due and punctual payment of all Securities and for the due and timely performance of all obligations of Venezuela in respect thereof. The aggregate principal amount of the Securities of all Series which may be authenticated and delivered under this Agreement and which may be outstanding at any time is not limited by this Agreement.

(b)  Authorization.  The Securities of a Series delivered to the Fiscal Agent (as defined in Section 2 hereof) for authentication on original issuance pursuant to Section 3 hereof shall be authorized by Venezuela in a certificate (an "Authorization") executed by the Minister of Finance, the Director General of the Ministry of Finance, the Director General of Public Finance of the Ministry of Finance or another person duly authorized to deliver an Authorization by one of the foregoing and shall establish and, subject to Section 3 hereof, shall set forth or prescribe the manner for determining:

(i)   Designation:  the designation of the Securities of such Series (which shall distinguish the Securities of such Series from all other Series);

(ii)  Aggregate Principal Amount:  any limit upon the aggregate principal amount of the Securities of such Series which may be authenticated and delivered under this Agreement (except for Securities authenticated and delivered upon registration of transfer of, or in exchange for, or in lieu of, other Securities of such Series pursuant to the provisions of this Agreement or the Securities of such Series);

(iii) Registered/Bearer Form:  whether the Securities of such Series shall be in registered form without interest coupons or in bearer form with or without interest coupons, or both, and the terms upon which Securities of such Series in one form may be exchanged for Securities of such Series in another form, if at all;

(iv)  Temporary Global Securities:  whether Securities of such Series in registered form and/or bearer form shall initially be represented in whole or in part, by one or more temporary global Securities, the date, or the manner of

determination of such date, prior to which interests in any such temporary global Security may not be exchanged for definitive Securities of such Series (each an "Exchange Date") and the extent to which and the manner in which any interest on such temporary global Security may be paid;

(v)  **Book Entry:**  whether the definitive Securities of such Series in registered form and/or bearer form shall be represented by one or more definitive global Securities to be deposited with a depositary, and the terms upon which such definitive global Securities may be exchanged for Securities of such Series not in global form, if at all;

(vi)  **Payment Dates, etc.:**  the date or dates on which the principal of (and premium, if any, on) and the interest on (and Additional Amounts, if any) the Securities of such Series is payable and the record dates, if any, for the determination of holders of the Securities of such Series to whom such principal (and premium, if any) is payable;

(vii)  **Interest Rates, etc.:**  the rate or rates at which the Securities of such Series shall bear interest, if any, or the manner in which such rate or rates will be determined (including any provisions for the increase or decrease of such rate or rates upon the occurrence of specified events), the date or dates from which any such interest shall accrue, the interest payment dates on which such interest shall be payable and the record dates, if any, for the determination of holders of the Securities of such Series to whom any such interest is payable;

(viii)  **Payment Places:**  the place or places where the principal of (and premium, if any) and any interest on the Securities of such Series is payable, where any Securities of such Series in registered form may be surrendered for registration of transfer, where Securities of such Series may be surrendered for exchange and where notices and demands to or upon the Issuer in respect of the Securities of such Series may be served;

(ix)  **Optional Redemption Features:**  the price or prices at which, the period or periods within which and the terms and conditions upon which Securities of such Series may be redeemed, whether in whole or in part, at the option of the Issuer or otherwise;

(x)  **Special Redemption Features:**  the obligation (which may be fixed or contingent upon events), if any, of the Issuer to redeem, purchase or repay Securities of such Series pursuant to any sinking fund or analogous provisions or at the option of the holder thereof and the price or prices at which and the period or periods within which (or the manner in which such price or prices or period or periods will be determined) and the terms and conditions upon which Securities of such Series shall be redeemed, purchased or repaid, in whole or in part, pursuant to such obligation;

(xi)  **Denomination:**  the denomination or denominations in which Securities of such Series shall be issuable and transferable or exchangeable;

(xii)  <u>Covenants</u>:  if other than as set forth in the forms of Securities attached hereto as Exhibits A, B and/or C, all covenants or agreements of the Issuer and any events which give rise to the right of the holder of a Security of such Series to accelerate the maturity of such Security;

(xiii)  <u>Special Principal Repayment Features</u>:  if other than all of the principal amount thereof, the portion of the principal amount of Securities of such Series which shall be payable upon acceleration of maturity, or otherwise, or the manner in which such portion will be determined;

(xiv)  <u>Foreign Currency Features</u>:  the coin or currency or composite currency in which principal of (and premium, if any) and any interest are payable, or the manner in which such coin, currency or composite currency will be determined; and if the principal of (or premium, if any) or interest on the Securities of such Series are to be payable, at the election of the Issuer or a holder thereof, in a currency or currencies, including composite currencies, other than that or those in which the Securities are stated to be payable, the currency or currencies in which payment of the principal of (or premium, if any) or interest on Securities of such Series as to which such election is made shall be payable, and the periods within which and the terms and conditions upon which such election is to be made;

(xv)  <u>Index Features</u>:  if the amount of payments of principal of (or premium, if any) or interest on Securities of such Series is to be determined by reference to an index, the manner in which such amounts shall be determined;

(xvi)  <u>Special Payment Features</u>:  the person to whom any interest on any registered Security of such Series shall be payable if other than the person in whose name such Security (or one or more predecessor Securities) is registered at the close of business on the record date for such interest and the manner in which, or the person to whom, any interest on any bearer Security of such Series shall be payable if otherwise than upon presentation and surrender of the coupons appertaining thereto as they severally mature;

(xvii)  <u>Additional Amounts</u>:  if other than as set forth in the forms of Securities attached hereto as Exhibits A, B and/or C, the obligation, if any, of the Issuer to pay additional amounts in respect of principal of (and premium, if any) and any interest on Securities of such Series, and the circumstances under which any such obligation shall arise;

(xviii)  <u>Legends</u>:  whether any legends shall be stamped or imprinted on any Securities of such Series, and the terms and conditions upon which any such legends may be removed;

(xix)  <u>Certifications</u>:  whether any certifications by purchasers or holders of the Securities of such Series should be required, and the form thereof if other than in substantially the form of Exhibits D or E hereto;

(xx)  <u>Other Terms</u>:  any other terms of the Securities of such Series: and

(xxi)   Form of Securities:  the form of the Securities of such Series if other than in substantially the form of Exhibits A, B and/or C hereto.

Each Authorization shall be delivered to the Fiscal Agent and copies thereof shall be held on file and available for inspection at the corporate trust office of the Fiscal Agent in The City of New York, and in the offices of any Paying Agents (as referred to below) for the Securities of the Series to which the Authorization relates.

(c)   Forms of Securities.  The Securities of a Series to be issued in registered form without coupons ("registered Securities") will be issuable in substantially the form of Exhibit A hereto or such other form as shall be established pursuant to an Authorization and in the denominations specified in such Authorization. The Securities of a Series, if any, to be issued in bearer form, with or without interest coupons attached ("bearer Securities"), will be issuable in substantially the form of Exhibit B hereto (or, in the case of a temporary bearer global security, in substantially the form of Exhibit C hereto) or such other form as shall be established pursuant to such Authorization and in the denominations specified in such Authorization. In this Agreement, (i) Securities which are not in temporary form are referred to as "definitive Securities" and Securities which are in temporary form are referred to as "temporary Securities", (ii) registered Securities which are not in temporary form are referred to as "definitive registered Securities" (unless such Securities are in global form, in which case they are referred to as "definitive registered global Securities") and registered Securities which are in temporary form are referred to as "temporary registered Securities" (unless such Securities are in global form, in which case they are referred to as "temporary registered global Securities") and (iii) bearer Securities which are not in temporary form are referred to as "definitive bearer Securities" (unless such Securities are in global form, in which case they are referred to as "definitive bearer global Securities") and bearer Securities which are in temporary form are referred to as "temporary bearer Securities" (unless such Securities are in global form, in which case they are referred to as "temporary bearer global Securities").

All Securities shall be executed manually or in facsimile on behalf of Venezuela by such official or officials of Venezuela as shall have been authorized by an Authorization (each, an "Authorized Official").  In case any person who shall have executed any Security shall thereafter cease to hold the office by virtue of which such person so executed such Security prior to the authentication and delivery thereof, such Securities may nevertheless be authenticated and delivered as though such person had not ceased to be an Authorized Official. The Securities of a Series (i) may have such additional provisions, omissions, variations or substitutions as are not inconsistent with the provisions of this Agreement or of an Authorization, and (ii) may have such letters, numbers or other marks of identification and such legends or endorsements not referred to in an Authorization placed thereon as may be required to comply with this Agreement, any law or with any rules made pursuant thereto or with the rules of any securities exchange or governmental agency or as may, consistently herewith, be determined necessary or advisable by the Authorized Officials executing such Securities, in each case (i) and (ii) as conclusively evidenced by their execution of such Securities. All Securities of a particular Series shall be otherwise substantially identical except as to denomination and as provided herein or in an Authorization.

(d)   Temporary Securities.  Until definitive Securities of a Series are prepared, the Issuer may (and, if an Authorization so requires, the Issuer shall) execute, and there shall be authenticated and delivered in accordance with the provisions of Section 3 hereof (in lieu of

definitive printed Securities of such Series), temporary Securities of such Series. Such temporary Securities may be in global form; provided, however, that any temporary Security in global form shall be in registered form unless delivered in compliance with the conditions set forth in Section 1(e) hereof. Such temporary Securities of a Series shall be subject to the same limitations and conditions and entitled to the same rights and benefits as definitive Securities of such Series, except as provided herein or therein. Unless otherwise provided herein or therein, temporary Securities of a Series shall be exchangeable for definitive Securities of such Series when such definitive Securities are available for delivery; and upon the surrender for exchange of temporary Securities of a Series which are so exchangeable, the Issuer shall execute and there shall be authenticated and delivered, in accordance with the provisions of Sections 5 and 6 hereof, in exchange for such temporary Securities of a Series, a like aggregate principal amount of definitive Securities (provided that such Securities have not been previously redeemed) of such Series of like tenor. The Issuer shall pay all charges, including (without limitation) stamp and other taxes and governmental charges, incident to any exchange of temporary Securities for definitive Securities. All temporary Securities shall be identified as such and shall describe the right of the holder thereof to effect an exchange for definitive Securities and the manner in which such an exchange may be effected.

(e)  (i)  Originally Issued Bearer Securities. This Section 1(e)(i) shall apply only to definitive bearer Securities, temporary bearer Securities and definitive bearer global Securities which are originally issued at the time of sale thereof.

The Issuer shall not deliver for original issuance at the time of sale thereof any definitive bearer Security, temporary bearer Security or definitive bearer global Security of any Series to the person entitled to physical delivery thereof (other than EUROCLEAR or CEDEL (each as defined below)) except upon delivery by such person to the Issuer of a certificate in substantially the form set forth in Exhibit D hereto and where the person entitled to physical delivery of such Securities is EUROCLEAR or CEDEL, only upon delivery to the Issuer of a certificate substantially in the Form set forth in Exhibit E hereto. Notwithstanding any other provision hereof or the Securities of a Series, no bearer Security of such Series may be mailed to or otherwise delivered to any location within the United States in connection with their sale during the restricted period (as defined in United States Treasury Regulations Section 1.163-5(c)(2)(i)(D)(7)).

(ii)  Temporary Bearer Global Securities.  This Section 1(e)(ii) shall apply only to temporary bearer global Securities delivered to a common depositary or its nominee (the "Common Depositary") for the benefit of Morgan Guaranty Trust Company of New York, Brussels office, as operator of the EUROCLEAR system ("EUROCLEAR"), or CEDEL BANK, société anonyme ("CEDEL"), except as otherwise may be provided in the Authorization.

If the Authorization relating to the Securities of a Series so provides, bearer Securities of such Series shall be issued initially in the form of a temporary bearer global Security in substantially the form of Exhibit C hereto or such other form as shall be established pursuant to such Authorization. The temporary bearer global Security of a Series will be exchangeable, as provided below, for definitive bearer or definitive registered Securities of such Series or, if such Authorization so provides, in the form of one or more definitive bearer global Securities or definitive registered global Securities, or any combination thereof specified or contemplated by such Authorization. The term "Securities of a Series" as used herein includes any temporary bearer global Security of such Series.

Any such temporary bearer global Security of a Series shall be executed by the Issuer and delivered to the Fiscal Agent, and the Fiscal Agent shall, upon the order of the Issuer, authenticate such temporary bearer global Security and deliver such temporary bearer global Security to the Common Depositary for the benefit of EUROCLEAR and CEDEL for credit to the respective accounts of the beneficial owners of Securities of such Series on the records of EUROCLEAR and CEDEL (or to such other accounts as they may direct).

Unless otherwise specified in an Authorization, the interest of a beneficial owner of Securities of a Series in the temporary bearer global Security of such Series shall be exchanged for an interest in one or more definitive bearer global Securities of such Series, when the account holder instructs EUROCLEAR or CEDEL, as the case may be, to request such exchange on his behalf and delivers to EUROCLEAR or CEDEL, as the case may be, a certificate in substantially the form set forth in Exhibit D hereto, copies of which certificates shall be available at the offices of EUROCLEAR, CEDEL and the Fiscal Agent. If an Exchange Date is specified in an Authorization relating to the Securities of a Series to be applicable to the Securities of such Series, no definitive Securities of such Series shall be exchanged pursuant to this Section 1(e)(ii) prior to such Exchange Date. Any exchange pursuant to this Section 1(e)(ii) shall be made free of charge to the beneficial owners of the temporary bearer global Security, except that a person receiving definitive Securities must bear the cost payable in advance to the Fiscal Agent of insurance, postage, transportation and the like in the event that such person does not take delivery of such definitive Securities in person at the offices of EUROCLEAR or CEDEL. Notwithstanding any other provision hereof or of the Securities of a Series, no bearer Security of such Series may be mailed to or otherwise delivered in connection with their sale during the restricted period (as defined in United States Treasury Regulations Section 1.163-5(c)(2)(i)(D)(7)) to a location within the United States.

On or after the applicable Exchange Date, or if no Exchange Date is specified in the Authorization relating to the Securities of a Series to be applicable to Securities of such Series, on or after the fortieth day following the date of original issuance of the Securities of such Series, the temporary bearer global Security of such Series shall be surrendered by the Common Depositary to the Fiscal Agent outside the United States, as the Issuer's agent, for purposes of the exchange of Securities described below. In the event the temporary bearer global Security of such Series is to be exchanged for one or more definitive bearer global Securities and/or definitive registered global Securities, following such surrender the Fiscal Agent shall authenticate and deliver such definitive Securities to the Common Depositary for the benefit of EUROCLEAR and CEDEL for credit to the respective accounts of the beneficial owners of Securities of such Series on the records of EUROCLEAR and CEDEL (or to such other accounts as they may direct), but only upon delivery by EUROCLEAR and CEDEL, as the case may be, to the Fiscal Agent of a certificate or certificates substantially in the form set forth in Exhibit E hereto. In the event the temporary bearer global Security of a Series is to be exchanged for one or more definitive bearer Securities and/or definitive registered Securities, following such surrender, upon the request of EUROCLEAR or CEDEL, acting on behalf of beneficial owners of Securities, the Fiscal Agent shall authenticate and deliver to EUROCLEAR or CEDEL, as the case may be, for the account of such owners, definitive bearer Securities or definitive registered Securities, or any combination thereof, as shall be specified by such owners, in exchange for the aggregate principal amount of the temporary bearer global Security of such Series beneficially owned by such owners, but only upon delivery by EUROCLEAR and CEDEL, as

the case may be, to the Fiscal Agent of a certificate or certificates substantially in the form set forth in Exhibit E hereto.

Upon any exchange of a portion of the temporary bearer global Security of a Series for definitive Securities of such Series, the temporary bearer global Security of such Series shall be endorsed to reflect the reduction of the principal amount evidenced thereby, whereupon its remaining principal amount shall be reduced for all purposes by the amount so exchanged. Until so exchanged in full, the temporary bearer global Security of a Series shall in all respects be entitled to the same benefits under this Agreement as definitive Securities of such Series authenticated and delivered hereunder, except that neither EUROCLEAR nor CEDEL nor the beneficial owners of the temporary bearer global Security of such Series shall be entitled to receive payment of interest thereon; provided that beneficial owners of the temporary bearer global Security of such Series, and EUROCLEAR or CEDEL on their behalf, shall be entitled to receive payment of interest in respect of the definitive global or bearer securities, as the case may be, in accordance with the terms of such Securities following delivery by the beneficial owners to EUROCLEAR or CEDEL, as the case may be, of a certificate substantially in the form set forth in Exhibit D hereto and delivery by EUROCLEAR or CEDEL to the Fiscal Agent of a certificate substantially in the form set forth in Exhibit E thereto.

(f)(i)   U.S. Book-Entry Provisions.  This Section 1(f)(i) shall apply only to definitive registered global Securities of a Series deposited with or on behalf of a depositary located in the United States (a "U.S. Depositary"), except as may otherwise be provided in an Authorization.

If the Issuer shall establish in an Authorization that the registered Securities of a Series are to be issued in whole or in part in the form of one or more definitive registered global Securities deposited with or on behalf of a U.S. Depositary, then the Issuer shall execute and the Fiscal Agent shall, in accordance with this Section 1(f)(i) and the Authorization with respect to such Series, authenticate and deliver one or more definitive registered global Securities that (i) shall be registered in the name of the U.S. Depositary for such global Security or Securities or the nominee of such U.S. Depositary, (ii) shall be delivered by the Fiscal Agent to such U.S. Depositary or pursuant to such U.S. Depositary's instruction and (iii) except as otherwise provided in such Authorization, shall bear a legend substantially to the following effect: "Unless this certificate is presented by an authorized representative of [insert name and address of the U.S. Depositary] to the Republic of Venezuela or its agent for registration of transfer, exchange or payment, and any certificate issued is registered in the name of [insert name of nominee of the U.S. Depositary] or such other name as requested by an authorized representative of [insert name of the U.S. Depositary] (and any payment is made to [insert name of nominee of the U.S. Depositary] or to such other entity as is requested by an authorized representative of [insert name of U.S. Depositary]), ANY TRANSFER, PLEDGE OR OTHER USE HEREOF FOR VALUE OR OTHERWISE BY OR TO ANY PERSON IS WRONGFUL inasmuch the registered owner hereof, [insert name of nominee of the U.S. Depositary], has an interest herein".

Members of, or participants in, a U.S. Depositary ("Agent Members") shall have no rights under this Agreement with respect to any definitive registered global Security held on their behalf by a U.S. Depositary or under the global Security, and such U.S. Depositary may be treated by the Issuer, the Fiscal Agent, and any agent of the Issuer or the Fiscal Agent as the sole owner of such definitive registered global Security for all purposes

whatsoever. Notwithstanding the foregoing, nothing herein shall prevent the Issuer, the Fiscal Agent, or any agent of the Issuer or the Fiscal Agent, from giving effect to any written certification, proxy or other authorization furnished by a U.S. Depositary or impair, as between a U.S. Depositary and its Agent Members, the operation of customary practices governing the exercise of the rights of a holder of any Security.

(ii)   Offshore Book-Entry Provisions.  This Section 1(f)(ii) shall apply only to definitive bearer global Securities of a Series delivered to the Common Depositary for the benefit of EUROCLEAR and CEDEL, except as otherwise may be provided in an Authorization.

The provisions of the "Operating Procedures of the EUROCLEAR System" and the "Terms and Conditions Governing Use of EUROCLEAR" and the "Management Regulations" and "Instructions to Participants" of CEDEL, respectively, shall be applicable to definitive bearer global Securities of a Series delivered to the Common Depositary for the benefit of EUROCLEAR and CEDEL. Account holders or participants in EUROCLEAR and CEDEL shall have no rights under this Agreement with respect to any such definitive bearer global Securities delivered to the Common Depositary for the benefit of EUROCLEAR and CEDEL for credit to the respective accounts of such account holders or participants, and such Common Depositary may be treated by the Issuer, the Fiscal Agent, and any agent of the Issuer or the Fiscal Agent as the owner of any such definitive bearer global Securities for all purposes whatsoever. Notwithstanding the foregoing, nothing herein shall prevent the Issuer, the Fiscal Agent, or any agent of the Issuer or the Fiscal Agent, from giving effect to any written certification, proxy or other authorization furnished by the Common Depositary or impair, as between the Common Depositary and its account holders or participants, the operation of customary practices governing the exercise of the rights of a holder of any Security.

(g)   Legends.  Securities of a Series shall be stamped or otherwise be imprinted with such legends, if any, as are provided in an Authorization or pursuant to Section 1(c) hereof. Any legends so provided may be removed as provided in an Authorization or pursuant to Section 1(c) hereof.

2.   Fiscal Agent; Other Agents.

The Issuer hereby appoints The Chase Manhattan Bank, having a corporate trust office at 450 West 33rd Street, 15th Floor and a payment office at 450 West 33rd Street, 15th Floor (for payments, exchanges and transfers), each in The City of New York (together, the "Corporate Trust Office"), as fiscal agent of the Issuer in respect of the Securities upon the terms and subject to the conditions herein set forth, and The Chase Manhattan Bank hereby accepts such appointment. The Chase Manhattan Bank and any successor or successors as such fiscal agent qualified and appointed in accordance with Section 9 hereof, are herein called the "Fiscal Agent". The Fiscal Agent shall have the powers and authority granted to and conferred upon it in the Securities and hereby and such further powers and authority to act on behalf of the Issuer as may be mutually agreed upon by the Issuer and the Fiscal Agent. All of the terms and provisions with respect to such powers and authority contained in the Securities are subject to and governed by the terms and provisions hereof. The Fiscal Agent shall keep a copy of this Agreement available for inspection during normal business hours at its Corporate Trust Office.

The Issuer may, in its discretion, appoint one or more agents (a "Paying Agent" or "Paying Agents") for the payment (subject to applicable laws and regulations) of the principal of (and premium, if any) and any interest on the Securities of a Series, and one or more agents (a "Transfer Agent" or "Transfer Agents") for the transfer and exchange of Securities of a Series, at such place or places as the Issuer may determine; provided, however, that for so long as any Securities of such Series are listed on the Luxembourg Stock Exchange or the stock exchange of Hong Kong Limited, and such Exchange shall so require, the Issuer shall maintain a Paying Agent in Luxembourg or Hong Kong, as the case may be; and provided, further, that, in the event Securities are issued in registered form, the Issuer shall at all times maintain a Paying Agent, Registrar and Transfer Agent in The City of New York (which Paying Agent and Transfer Agent may be, and initially shall be, the Fiscal Agent). The Issuer shall promptly notify the Fiscal Agent of the name and address of each Paying Agent and Transfer Agent appointed by it and of the country or countries in which a Paying Agent or Transfer Agent may act in that capacity, and will notify the Fiscal Agent of the resignation or termination of any Paying Agent or Transfer Agent. Subject to the provisions of Section 9(c) hereof, the Issuer may vary or terminate the appointment of any such Paying Agent or Transfer Agent at any time and from time to time upon giving not less than ninety days' notice to such Paying Agent or Transfer Agent, as the case may be, and to the Fiscal Agent. Notwithstanding the foregoing, if the Issuer issues bearer Securities of a Series, to the extent provided in the Securities of such Series, the Issuer shall maintain under appointment a Paying Agent or Paying Agents with respect to such Series outside the United States of America (including the States and the District of Columbia), its territories, its possessions and other areas subject to its jurisdiction (the "United States") for the payment of principal of (and premium, if any) and any interest on bearer Securities of such Series.

In respect of the Securities of a Series, the Issuer shall cause notice of any resignation, termination or appointment of any Paying Agent or Transfer Agent or of the Fiscal Agent and of any change in the office through which any such Agent will act to be given as provided in the text of the Securities of such Series.

3.   Authentication.

The Fiscal Agent is authorized, upon receipt of Securities of a Series duly executed on behalf of the Issuer for the purposes of the original issuance of Securities of such Series, (i) to authenticate the said Securities in an aggregate principal amount not in excess of the aggregate principal amount specified in the text of the Securities of such Series in accordance with an Authorization and to deliver the said Securities in accordance with the written order or orders of the Issuer signed on its behalf by any person authorized by or pursuant to an Authorization and (ii) thereafter to authenticate and deliver Securities of such Series in accordance with the provisions therein or hereinafter set forth. Each registered Security shall be dated the date of its authentication.

Notwithstanding the provisions of Section 1(b) and of the preceding paragraph, if all Securities of a Series are not to be originally issued at one time, it shall not be necessary to deliver an Authorization otherwise required pursuant to Section 1(b) or the order or orders otherwise required pursuant to such preceding paragraph at or prior to the time of authentication of each Security of such Series if such documents are delivered at or prior to the time of authentication upon original issuance of the first Security of such Series to be issued.

No Security shall be entitled to any benefit under this Agreement or be valid or obligatory for any purpose unless there appears on such Security a certificate of authentication executed by the Fiscal Agent or any authenticating agent by manual signature, and such certificate upon any Security shall be conclusive evidence, and the only evidence, that such Security has been duly authenticated and delivered hereunder and is entitled to the benefit of this Agreement.

The Fiscal Agent may, with the written consent of the Issuer, appoint by an instrument or instruments in writing one or more agents (which may include itself) for the authentication of Securities of a Series and, with such consent, vary or terminate any such appointment upon written notice and approve any change in the office through which any authenticating agent acts. The Issuer (by written notice to the Fiscal Agent and the authenticating agent whose appointment is to be terminated) may also terminate any such appointment at any time. The Fiscal Agent hereby agrees to solicit written acceptances from the entities concerned (in form and substance satisfactory to the Issuer) of such appointments. In its acceptance of such appointment, each such authenticating agent shall agree to act as an authenticating agent pursuant to the terms and conditions of this Agreement.

4.   **Payment and Cancellation.**

(a)   _Payment._  Unless otherwise agreed, subject to the following provisions, the Issuer shall provide to the Fiscal Agent, no later than 10:00 a.m. (New York City time), in immediately available funds on the business day in New York prior to each date on which a payment of principal of (or premium, if any) or any interest on the Securities of a Series shall become due, as set forth in the text of the Securities of such Series, such amount, in such coin or currency, as is necessary to make such payment, and the Issuer hereby authorizes and directs the Fiscal Agent from funds so provided to it to make or cause to be made payment of the principal of (and premium, if any) and any interest on, as the case may be, the Securities of such Series as set forth herein and in the text of such Securities. The Fiscal Agent shall arrange directly with any Paying Agent who may have been appointed by the Issuer pursuant to the provisions of Section 2 hereof for the payment from funds so paid by the Issuer of the principal of (and premium, if any) and any interest on the Securities of such Series as set forth herein and in the text of such Securities. Notwithstanding the foregoing, where an Authorization expressly so provides, the Issuer may provide directly to a Paying Agent funds for the payment of the principal thereof and premium and interest, if any, payable thereon under an agreement with respect to such funds containing substantially the same terms and conditions set forth in this Section 4(a) and in Section 8(b) hereof and shall so advise the Fiscal Agent in writing; and the Fiscal Agent shall have no responsibility with respect to any funds so provided by the Issuer to any such Paying Agent.

The Issuer will deliver to the Fiscal Agent by 10:00 a.m. (New York City time), two business days prior to each payment date an irrevocable confirmation (by tested telex or authenticated SWIFT MT 100 Message) of its intention to make such payment.

Any interest on registered Securities of a Series shall be paid, unless otherwise provided in the text of the Securities of such Series, to the persons (the "registered holders") in whose names such Securities are registered on the register maintained pursuant to Section 6 hereof at the close of business on the record dates designated in the text of

the Securities of such Series. Principal of (and premium, if any, on) registered Securities of a Series shall be payable against surrender thereof at the corporate trust office of the Fiscal Agent and at the offices of such other Paying Agents as the Issuer shall have appointed pursuant to Section 2 hereof, and payments of any interest on registered Securities of a Series shall be made, in accordance with the foregoing and subject to applicable laws and regulations, by check mailed on or before the due date for such payment to the person entitled thereto at such person's address appearing on the register of the Securities of such Series maintained pursuant to Section 6 hereof, or, in the case of payments of principal (and premium, if any), to such other address as the registered holder shall provide in writing at the time of such surrender; provided, however, that, if provided in the Authorization relating to the Securities of such Series, such payments may be made, in the case of a registered holder of greater than the aggregate principal amount of Securities of such Series specified in such Authorization, by transfer to an account denominated in the currency in which such payments are to be made maintained by the payee with a bank as specified in such Authorization if such registered holder so elects by giving written notice to the Fiscal Agent, not less than 15 days (or such fewer days as the Fiscal Agent may accept at its discretion) prior to the date of the payments to be obtained, of such election and of the account to which payment is to be made.

   Any interest on bearer Securities of a Series shall be payable by check or wire transfer upon surrender of any applicable coupon, and principal of (and premium, if any, on) bearer Securities of such Series shall be payable by check or wire transfer upon surrender of such Securities, at such offices or agencies of the Fiscal Agent or any Paying Agent outside the United States as the Issuer may from time to time designate, unless the Issuer shall have otherwise instructed the Fiscal Agent in writing, or additionally or alternatively, in such other manner as may be set forth or provided for in the Securities of such Series. No such check which is mailed shall be mailed to an address in the United States, nor shall any transfer made in lieu of payment by check be made to an account maintained by the payee with a bank in the United States. Neither the Fiscal Agent nor any Paying Agent shall, and the Issuer shall not instruct the Fiscal Agent or any Paying Agent to, make such payments on bearer Securities of a Series at an office or agency located in the United States unless such payments are to be made in U.S. dollars and payment of the full amount so payable at each office of the Fiscal Agent and of each Paying Agent outside the United States appointed and maintained by the Issuer in accordance with Section 2 hereof is illegal or effectively precluded by reason of the imposition of exchange controls or other similar restrictions on the full payment or receipt of such amount in U.S. dollars.

   If the Fiscal Agent pays out any amount due under the terms of the Securities on or after the due date thereof on the assumption that the corresponding payment for such amount has been or will be made by the Issuer and such payment has in fact not been so made by the Issuer prior to the time the Fiscal Agent makes such payment, then the Issuer shall on demand reimburse the Fiscal Agent for the relevant amount, and pay interest to the Fiscal Agent on such amount from the date on which such amount is paid out to the date of reimbursement at a rate per annum equal to the cost (to the Fiscal Agent) of funding the amount paid out, as certified by the Fiscal Agent and expressed as a rate per annum.

   Interest on Securities of a Series in which the rate of interest is a fixed rate will be computed on a basis of a 360-day year of twelve 30-day months unless otherwise provided in the Authorization relating to Securities of such Series.

(b)  Withholding; Payment of Additional Amounts.  In respect of the Securities of each Series issued hereunder, at least 10 days prior to the first date of payment of interest (which, for purposes of this subsection (b), shall include accrued original issue discount) on the Securities of such Series and at least 10 days prior to each date, if any, of payment of principal (and premium, if any) or interest or other amount thereafter if there has been any change with respect to the matters set forth in the below-mentioned certificate, the Issuer will furnish the Fiscal Agent and each other Paying Agent with a certificate of an Authorized Official instructing the Fiscal Agent and each other Paying Agent whether such payment of principal of (and premium, if any) or any interest on such Securities shall be made without deduction or withholding for or on account of any tax, duty, assessment or other governmental charge. If any such deduction or withholding shall be required, then such certificate shall specify, by country, the amount, if any, required to be withheld or deducted on such payment to holders of such Securities or any coupon appertaining thereto, and the Issuer will pay to the Fiscal Agent (or, if applicable, directly to a Paying Agent or Agents) additional amounts, if any, required by the terms of such Securities to be paid. The Issuer agrees to indemnify the Fiscal Agent and each other Paying Agent for, and to hold them harmless against, any loss, liability or expense reasonably incurred without negligence or bad faith on their part arising out of or in connection with actions taken or omitted by them in reliance on any certificate furnished pursuant hereto.

(c)  Cancellation.  All Securities, together with all coupons appertaining thereto, delivered to the Fiscal Agent (or any other Agent appointed by the Issuer pursuant to Section 2 hereof) for payment, redemption, registration of transfer or exchange or for credit against any sinking fund payment as provided herein or in the Securities and all coupons paid through the application of interest installments (other than Securities and coupons delivered to the Fiscal Agent), shall be marked "cancelled" and, in the case of any other such Agent, forwarded to the Fiscal Agent by the Paying or Transfer Agent to which they are delivered. If any Security shall have been authenticated and delivered hereunder but never issued or sold by the Issuer thereof, the Issuer may deliver such Security to the Fiscal Agent for cancellation together with a written statement stating that such Security has never been issued and sold by the Issuer. All such Securities and coupons shall be cancelled and destroyed by the Fiscal Agent or such other person as may be jointly designated by the Issuer and the Fiscal Agent, and the Fiscal Agent or such other person shall thereupon furnish certificates of such destruction to the Issuer.

(d)  Instructions of the Republic to Banco Central.    The Issuer hereby irrevocably and unconditionally agrees that each payment to be made by the Issuer under this Agreement and the Securities shall be effected through Banco Central, and to that effect in connection with the issuance of each Series of Securities it shall instruct Banco Central to remit (as and to the extent provided in Section 2(a) of the form Banco Central Undertaking to be delivered in connection with each issuance of Securities, the form of which is attached hereto as Exhibit F) an amount equal to each payment of principal, interest (including Additional Amounts), or other amounts required to be paid by the Issuer for the benefit of the holders and the Paying Agents to the person, at the time and place, and in the manner provided in this Agreement and the Securities. In this regard, the Issuer irrevocably and unconditionally agrees to deposit, from time to time, at Banco Central, in the accounts specially established for this purpose, the Bolivars required for each payment prior to the date such payment is required to be made and to deliver, in a timely manner, to Banco Central the authorizations (the "Orders") necessary for it to effect the required conversion of Bolivars into the currency in which the Securities are denominated.  The

Issuer agrees that no such deposit of funds with Banco Central shall be deemed to constitute payment to any holder or any Paying Agent of any amount payable to such holder or Paying Agent and further agrees that nothing in this Section or in the Banco Central Undertaking shall excuse any failure by the Issuer to pay any amount on the date such payment is required to be made by the Issuer by the terms of this Agreement and the Securities or otherwise affect an any way any of the rights of any holders or any Paying Agent. The Issuer agrees that, in the event that any payment required to be made by the Issuer hereunder or under any Security is not effected through Banco Central at or prior to the time such payment is required to be made by the terms of this Agreement and the Securities, it will effect such payment in accordance with the terms of this Section or the relevant provisions of such Security.

(e)  <u>References to Include Additional Amounts</u>.  All references in this Agreement to principal, premium and interest and other amounts payable in respect of Securities of a Series shall, unless the context otherwise requires, be deemed to mean and include all additional amounts, if any, payable in respect thereof as set forth herein or in the text of the Securities of such Series.

5.  <u>Exchange of Securities</u>.

(a)  <u>General</u>.  The Fiscal Agent, or its duly authorized agent, is hereby authorized from time to time in accordance with and subject to the provisions of the Securities and of this Agreement (including Section 3 hereof and this Section 5) to authenticate and deliver:

(i)  Securities of a Series in exchange for or in lieu of Securities of such Series of like tenor and form which become mutilated, defaced, destroyed, stolen or lost;

(ii)  registered Securities of a Series of authorized denominations in exchange for a like aggregate principal amount of registered Securities of such Series of like tenor and form;

(iii)  if bearer Securities of a Series are authorized to be issued, registered Securities of such Series in exchange for a like aggregate principal amount of bearer Securities of such Series of like tenor and form;

(iv)  if Securities of a Series are subject to partial redemption, Securities of a Series of authorized denominations in exchange for the unredeemed portion of any Securities of such Series redeemed in part only; and

(v)  if specifically so provided by the provisions of the Securities of a Series, Securities of such Series in exchange for Securities of another Series;

<u>provided, however</u>, that any definitive registered global Security shall be exchangeable only as provided in Sections 5(a)(i), 5(a)(iv) and 5(c) and any definitive bearer global Securities delivered to a Common Depositary shall be exchangeable only as provided in Sections 5(a)(i), 5(a)(iv) and 5(d).

(b)  <u>Bearer and Registered Securities</u>.  Bearer Securities may not be issued in exchange for registered Securities. All bearer Securities of a Series surrendered for exchange for other

Securities of such Series shall have attached thereto all unmatured coupons appertaining thereto. Unless otherwise provided in the applicable Authorization, bearer Securities shall be dated the date from which any interest on the Securities of such Series first begins to accrue. Registered Securities shall be dated the date of their authentication by the Fiscal Agent. Notwithstanding anything to the contrary herein contained, such Security authenticated and delivered upon any transfer or exchange for or in lieu of the whole or any part of any Security shall carry all the rights if any, to interest accrued and unpaid and to accrue which were carried by the whole or such part of such Security. Each new Security, if a registered Security, shall be so dated, and, if a bearer Security, shall have attached thereto such coupons, that neither gain nor loss in interest shall result from such transfer or exchange.

(c)   Definitive Registered Global Securities.  This Section 5(c) shall apply only to definitive registered global Securities deposited with a U.S. Depositary pursuant to Section 1(f)(i), unless otherwise provided in the Authorization.

A definitive registered global Security shall be exchangeable for definitive registered Securities of such Series if (x) the U.S. Depositary with respect to such definitive registered global Security notifies the Issuer that it is unwilling or unable to continue as U.S. Depositary for all global Securities or if at any time such U.S. Depositary ceases to be a clearing agency registered under the U.S. Securities Exchange Act of 1934, as amended, and a successor U.S. Depositary is not appointed by the Issuer within ninety days, (y) the Issuer delivers to the Fiscal Agent a written notice executed by Authorized Officials that all definitive registered global Securities shall be exchangeable or (z) an Event of Default (as defined in the terms and conditions of such Securities) has occurred and is continuing with respect to such Securities.

Unless the definitive registered global Security is presented by an authorized representative of the U.S. Depositary to the Issuer or its agent for registration of transfer, exchange or payment, and any certificate issued is registered in the name of a nominee of the U.S. Depositary and any payment is made to such nominee, any transfer, pledge or other use of the definitive registered global Security for value or otherwise shall be wrongful since the registered owner of the definitive registered global Security, the nominee of the U.S. Depositary, has an interest in the definitive registered global Security.

If the beneficial owners of interests in a definitive registered global Security are entitled to exchange interests for definitive registered Securities of such Series of another authorized form, as provided in the second preceding paragraph, then without unnecessary delay but in any event not later than the earliest date on which such interests may be so exchanged the Issuer shall deliver to the Fiscal Agent definitive registered Securities in aggregate principal or face amount equal to the principal or face amount of such definitive registered global Security executed by the Issuer. On or after the earliest date on which such interests may be so exchanged, such definitive registered global Security shall be surrendered by the U.S. Depositary to the Fiscal Agent, as the Issuer's agent for such purpose, to be exchanged, in whole or from time to time in part, for definitive registered Securities without charge and the Fiscal Agent shall authenticate and deliver, in exchange for each portion of such definitive registered global Security, an equal aggregate principal amount of definitive registered Securities of the same Series of authorized denominations and of like tenor as the portion of such definitive registered global Security to be exchanged; provided, however, that no such exchanges may occur during a period

beginning at the opening of business 15 days before any selection of Securities of such Series and like tenor to be redeemed and ending on the relevant date of redemption. Any definitive registered global Security that is exchangeable pursuant to this Section 5(c) shall be exchangeable for definitive registered Securities issuable in the denominations specified in the applicable Authorization and registered in such names as the U.S. Depositary that is the holder of such definitive registered global Security shall direct. If a definitive registered Security is issued in exchange for any portion of a definitive registered global Security after the close of business at the office or agency where such exchange occurs on any record date and before the opening of business at such office or agency on the relevant interest payment date, interest will not be payable on such interest payment date in respect of such definitive registered Security, but will be payable on such interest payment date only to the person to whom interest in respect of such portion of such definitive registered global Security is payable.

The U.S. Depositary may grant proxies and otherwise authorize any person, including Agent Members and persons that may hold interests through Agent Members, to take any action which a holder is entitled to take under this Fiscal Agency Agreement or the Securities.

(d)  Definitive Bearer Global Securities.  This Section 5(c) shall apply only to definitive bearer global Securities delivered to a Common Depositary for EUROCLEAR or CEDEL pursuant to Section 1(f)(ii), unless otherwise provided in an Authorization.

If the beneficial owners of interests in a definitive bearer global Security are entitled to exchange such interests for definitive bearer Securities or definitive registered Securities of such Series, as provided in the Authorization, then without unnecessary delay but in any event not later than the fifteenth day prior to the earliest date on which such interests may be so exchanged the Issuer shall deliver to the Fiscal Agent definitive bearer Securities and/or definitive registered Securities in aggregate principal amount equal to the principal amount of such definitive bearer global Security. On or after the earliest date (if any) on which such interests may be so exchanged, such definitive bearer global Security shall be surrendered by the Common Depositary to the Fiscal Agent outside the United States, as the Issuer's agent for such purpose, to be exchanged, in whole or from time to time in part, for definitive bearer Securities and/or definitive registered Securities without charge and the Fiscal Agent shall authenticate and deliver, in exchange for each portion of such definitive bearer global Security, an equal aggregate principal amount of definitive bearer Securities and/or definitive registered Securities of the same Series of authorized denominations and of like tenor as the portion of such definitive bearer global Security in such combination thereof as shall be specified by the beneficial owner thereof and communicated to the Fiscal Agent through EUROCLEAR or CEDEL, and, if registered in such name as may be specified by the beneficial owner thereof and so communicated to the Fiscal Agent; provided, however, that no such exchanges may occur during a period beginning at the opening of business 15 days before any selection of Securities of that Series and like tenor to be redeemed and ending on the relevant date of redemption; and provided, further, that no definitive bearer Security delivered in exchange for a portion of a definitive bearer global Security shall be mailed or otherwise delivered to any location in the United States. If a definitive registered Security is issued in exchange for any portion of a definitive bearer global Security after the close of business at the office or agency where such exchange occurs on any record date and before the opening of business at such office or agency on the relevant interest payment date, interest will not be payable on such interest payment

date in respect of such registered Security, but will be payable on such interest payment date only to the person to whom interest in respect of such portion of such definitive bearer global Security is payable.

So long as the Common Depositary is the registered owner of a definitive bearer global Security, such Common Depositary, as the case may be, will be considered the sole owner or holder of the Securities represented by such definitive bearer global Security for the purposes of receiving payment on the Securities, receiving notices and for all other purposes under this Agreement and the definitive bearer global Security. The Common Depositary may grant proxies and otherwise authorize any person, including EUROCLEAR and CEDEL and beneficial owners of the Securities, to take any action which a holder is entitled to take under this Fiscal Agency Agreement or the Securities. Beneficial interests in a definitive bearer global Security will be evidenced only by, and transfers thereof will be effected only through, records maintained by EUROCLEAR and CEDEL.

6. Register.

The Fiscal Agent, as agent of the Issuer for this purpose, shall maintain at its corporate trust office in The City of New York, a register for each Series of Securities issued in whole or in part in registered form for the registration of Securities of such Series and the registration of transfers and exchanges thereof. Upon presentation for the purpose of registration or transfer or exchange at the said office of the Fiscal Agent of any registered Security of such Series, accompanied by a written instrument of transfer or exchange in the form approved by the Issuer and the Fiscal Agent (it being understood that, until notice to the contrary is given to holders of Securities of a Series, the Issuer and the Fiscal Agent shall each be deemed to have approved the form of instrument of transfer, if any, printed on any definitive registered Security of such Series), executed by the registered holder, in person or by such holder's attorney thereunto duly authorized in writing, such Security shall be transferred upon the register for the Securities of such Series, and a new registered Security of such Series and of like tenor shall be authenticated and issued in the name of the transferee; provided, however, that registered Securities may be delivered for the purpose of registration of transfer by mail at the risk and expense of the transferor. Transfers and exchanges of Securities of a Series shall be subject to such restrictions as shall be set forth in the text of the Securities of such Series and such reasonable regulations as may be prescribed by the Issuer. Successive registrations and registrations of transfers as aforesaid may be made from time to time as desired, and each such registration shall be noted on the Security register. No service charge shall be made for any registration, registration of transfer or exchange of the Securities of a Series unless otherwise provided by the provisions of the Securities of such Series, but, except as otherwise provided herein with respect to the exchange of temporary securities for definitive securities, the Fiscal Agent (and any Transfer Agent or authenticating agent appointed pursuant to Section 2 or 3 hereof, respectively) may require payment of a sum sufficient to cover any stamp or other tax or governmental charge in connection therewith and any other amounts required to be paid by the provisions of the Securities of such Series.

Any Transfer Agent appointed pursuant to Section 2 hereof shall provide to the Fiscal Agent such information as the Fiscal Agent may reasonably require in connection with the delivery by such Transfer Agent of Securities in exchange for other Securities.

Neither the Fiscal Agent nor any Transfer Agent shall be required to make registrations of transfer or exchange of Securities of a Series during any periods set forth in the text of the Securities of such Series in which such transfer or exchange is prohibited.

7.   Sinking Fund and Optional Redemption.

The Issuer hereby authorizes and directs the Fiscal Agent to administer the sinking fund with respect to the Securities of any Series having a mandatory sinking fund or similar provision in accordance with the provisions set forth in the text of the Securities of such Series. In the event that the provisions of the Securities of a Series permit the Issuer to redeem Securities of such Series at its option, the Issuer shall, unless otherwise provided in the text of the Securities of such Series, give written notice to the Fiscal Agent of the principal amount of Securities of such Series to be so redeemed not less than 60 days prior to the optional redemption date and, if earlier, no later than 15 days prior to the date on which notice is required to be given to holders of the Securities of such Series pursuant to the following sentence (or such shorter period as may be acceptable to the Fiscal Agent). All notices of redemption of the Securities of a Series shall be made in the name and at the expense of the Issuer and shall be given in accordance with the provisions applicable thereto set forth in the Authorization relating to or the text of the Securities of such Series. In the event that the provisions set forth in the Authorization or in the text of the Securities of a Series permit the Issuer to redeem Securities of such Series only upon the occurrence or satisfaction of a condition or conditions precedent thereto, prior to the giving of notice of redemption of the Securities of such Series, the Issuer shall deliver to the Fiscal Agent a certificate of an Authorized Official stating that the Issuer is entitled to effect such redemption and setting forth in reasonable detail a statement of facts showing that such condition or conditions precedent have occurred or been satisfied. In the event that the provisions of the Securities of a Series permit the holders thereof, at their option, to cause the Issuer to redeem such Securities, the Issuer shall, as contemplated by Section 4 hereof, arrange with the Fiscal Agent (and each Paying Agent for the purpose, if applicable) for the provision of funds sufficient to make payments to such holders in respect of such redemptions, and the Fiscal Agent shall provide to the Issuer from time to time reasonably detailed information as to such redemptions.

Whenever less than all the Securities of a Series at any time outstanding are to be redeemed at the option of the Issuer, the particular Securities of such Series to be redeemed shall be selected not more than 60 days prior to the redemption date by the Fiscal Agent from the Outstanding Securities of such Series not previously called for redemption, in the case of bearer Securities of such Series, individually by lot (unless all bearer Securities are subject to such redemption) and, in the case of registered Securities of such Series, by such usual method as the Fiscal Agent shall deem fair and appropriate, which method may provide for the selection for redemption of portions of the principal amount of registered Securities of such Series the minimum denominations of which, if any, will be specified in the text of the Securities of such Series. Upon any partial redemption of a registered Security of a Series, the Fiscal Agent shall authenticate and deliver in exchange therefor one or more registered Securities of such Series, of any authorized denomination and like tenor as requested by the holder thereof, in aggregate principal amount equal to the unredeemed portion of the principal of such Security.

8.   <u>Conditions of Fiscal Agent's Obligations.</u>

The Fiscal Agent accepts its obligations set forth in this Agreement upon the terms and conditions hereof, including the following, to all of which the Issuer agrees and to all of which the rights of holders from time to time of Securities are subject:

(a)   <u>Compensation and Indemnity.</u>  The Fiscal Agent shall be entitled to compensation as agreed in writing with the Issuer for all services rendered by it, and the Issuer agrees promptly to pay such compensation and to reimburse the Fiscal Agent for the out-of-pocket expenses (including counsel fees) reasonably incurred by it in connection with its services hereunder after receipt of an itemized statement detailing such expenses. The Issuer also agrees to indemnify the Fiscal Agent for, and to hold it harmless against, any loss, damage, claim, liability or expense, including the reasonable and documented fees and expenses of counsel, incurred without gross negligence or bad faith, arising out of or in connection with its acting as Fiscal Agent hereunder, as well as the reasonable and documented costs and expenses of defending against any claim of liability in the premises. The obligations of the Issuer under this Section 8(a) shall survive payment of all the Securities or the resignation or removal of the Fiscal Agent.

(b)   <u>Agency.</u>  In acting under this Agreement and in connection with the Securities, the Fiscal Agent is acting solely as agent of the Issuer and does not assume any responsibility for the correctness of the recitals in the Securities (except for the correctness of the statement in its certificate of authentication thereon) or any obligation or relationship of agency or trust, for or with any of the owners or holders of the Securities or coupons, except that all funds held by the Fiscal Agent for the payment of principal of (and premium, if any) and any interest on the Securities shall be held in trust for such owners or holders, as the case may be, as set forth herein and in the Securities; <u>provided, however,</u> that monies held in respect of the Securities of a Series remaining unclaimed at the end of two years after the principal of all the Securities of such Series (and premium, if any) or such interest, as the case may be, shall have become due and payable (whether at maturity or otherwise) and monies sufficient therefor shall have been duly made available for payment shall, together with any interest made available for payment thereon, be repaid to the Issuer, as provided and in the manner set forth in the Securities of such Series. Upon such repayment, the aforesaid trust with respect to the Securities of such Series shall terminate and all liability of the Fiscal Agent and Paying Agents with respect to such funds shall thereupon cease.

(c)   <u>Advice of Counsel.</u>  The Fiscal Agent and any Paying Agent or Transfer Agent appointed by the Issuer pursuant to Section 2 hereof may consult with their respective counsel or other counsel satisfactory to them, and the written opinion of such counsel shall be full and complete authorization and protection in respect of any action taken or suffered by them hereunder in good faith and without gross negligence and in accordance with such opinion.

(d)   <u>Reliance.</u>  The Fiscal Agent and any Paying Agent or Transfer Agent appointed by the Issuer pursuant to Section 2 hereof each shall be protected and shall incur no liability for or in respect of any action taken or thing suffered by it in reliance upon any Security or coupon, Authorization, notice, direction, consent, certificate,

affidavit, statement, or other paper or document believed by it, in good faith and without negligence, to be genuine and to have been passed or signed by the proper parties.

(e) Interest in Securities, etc. The Fiscal Agent, any Paying Agent or Transfer Agent appointed by the Issuer pursuant to Section 2 hereof and their respective officers, directors and employees may become the owners of, or acquire any interest in, any Securities or coupons, with the same rights that they would have if they were not the Fiscal Agent, such Paying Agent or Transfer Agent or such other person, and may engage or be interested in any financial or other transaction with the Issuer, and may act as depositary, trustee or agent for, holders of Securities or coupons or other obligations of the Issuer, as freely as if they were not the Fiscal Agent, such Paying Agent or Transfer Agent or such other person.

(f) Non-Liability for Interest. Except as expressly provided for in this Agreement, and subject to any agreement between the Issuer and the Fiscal Agent to the contrary, the Fiscal Agent shall not be under any liability for interest on monies at any time received by it pursuant to any of the provisions of this Agreement or of the Securities.

(g) Certifications. Whenever in the administration of this Agreement the Fiscal Agent shall deem it necessary or desirable that a matter of fact be proved or established prior to taking, suffering or omitting any action hereunder, the Fiscal Agent (unless other evidence be herein specifically prescribed) may, in the absence of bad faith or gross negligence on its part, rely upon a certificate signed by any person authorized by or pursuant to an Authorization and delivered to the Fiscal Agent as to such matter of fact.

(h) No Implied Obligations. The duties and obligations of the Fiscal Agent shall be determined solely by the express provisions of this Agreement, and the Fiscal Agent shall not be liable except for the performance of such duties and obligations as are specifically set forth in this Agreement, and no implied covenants or obligations shall be read into this Agreement against the Fiscal Agent. Nothing in this Agreement shall be construed to require the Fiscal Agent to advance or expend its own funds; provided, however, that the Fiscal Agent may not refuse or fail to perform any of its duties hereunder solely as a result of nonpayment by the Issuer of the Fiscal Agent's fees.

9. Resignation and Appointment of Successor.

(a) Fiscal Agent and Paying Agent. The Issuer agrees, for the benefit of the holders from time to time of the Securities of a Series, that there shall at all times be a Fiscal Agent hereunder which shall be a bank or trust company organized and doing business under the laws of the United States of America or the State of New York, in good standing and having an established place of business in The City of New York, and authorized under such laws to exercise corporate trust powers, and, to the extent required by the provisions of bearer Securities of such Series, if any, unless payments are permitted by the provisions of the fourth paragraph of Section 4(a) hereof to be made in the United States, a Paying Agent outside the United States for payment of principal of (and premium, if any) and any interest on such bearer Securities, until all the Securities of such Series authenticated and delivered

hereunder (i) shall have been delivered to the Fiscal Agent for cancellation or (ii) become due and payable and monies sufficient to pay the principal of (and premium, if any) and any interest on the Securities of such Series shall have been made available for payment and either paid or returned to the Issuer as provided herein and in such Securities.

(b)   Resignation and Removal.  The Fiscal Agent may at any time resign by giving written notice to the Issuer of such intention on its part, specifying the date on which its desired resignation shall become effective, provided that such date shall not be less than 60 days from the date on which such notice is given, unless the Issuer agrees to accept shorter notice. The Fiscal Agent hereunder may be removed at any time by the filing with it of an instrument in writing signed on behalf of the Issuer and specifying such removal and the date when it shall become effective. Notwithstanding the dates of effectiveness of resignation or removal, as the case may be, to be specified in accordance with the preceding sentences, such resignation or removal shall take effect only upon the appointment by the Issuer, as hereinafter provided, of a successor Fiscal Agent (which, to qualify as such, shall for all purposes hereunder be a bank or trust company organized and doing business under the laws of the United States of America or of the State of New York, in good standing and having and acting through an established place of business in The City of New York, and authorized under such laws to exercise corporate trust powers) and the acceptance of such appointment by such successor Fiscal Agent. Upon its resignation or removal, the Fiscal Agent shall be entitled to payment by the Issuer pursuant to Section 8 hereof of compensation for services rendered and reimbursement of out-of-pocket expenses incurred hereunder after receipt of an itemized statement detailing such expenses. If no successor Fiscal Agent is appointed and has accepted such appointment within 90 days of such resignation or removal, the Fiscal Agent may petition a court of proper jurisdiction to appoint a successor Fiscal Agent.

(c)   Successors.  In case at any time the Fiscal Agent or any Paying Agent in respect of the Securities of a Series (if such Paying Agent is the only Paying Agent located in a place where, by the terms of the Securities of such Series or this Agreement, the Issuer is required to maintain a Paying Agent) shall resign, or shall be removed, or shall become incapable of acting, or shall be adjudged bankrupt or insolvent, or shall file a voluntary petition in bankruptcy or make an assignment for the benefit of its creditors or consent to the appointment of a receiver of all or any substantial part of its property, or shall admit in writing its inability to pay or meet its debts as they severally mature, or if a receiver of it or of all or any substantial part of its property shall be appointed, or if an order of any court shall be entered approving any petition filed by or against it under the provisions of applicable receivership, bankruptcy, insolvency, reorganization or other similar legislation, or if a receiver of it or its property shall be appointed, or if any public officer shall take charge or control of it or of its property or affairs, for the purpose of rehabilitation, conservation or liquidation, a successor Fiscal Agent or Paying Agent, as the case may be, qualified as aforesaid, shall be appointed by the Issuer by an instrument in writing, filed with the successor Fiscal Agent or Paying Agent, as the case may be, and the predecessor Fiscal Agent or Paying Agent, as the case may be. Upon the appointment as aforesaid of a successor Fiscal Agent or Paying Agent, as the case may be, and acceptance by such successor of such appointment, the Fiscal Agent or Paying Agent, as the case may be, so succeeded shall cease to be Fiscal Agent or Paying Agent, as the case may be, hereunder. If no successor Fiscal Agent or other Paying Agent, as the case may be, shall have been so appointed by the Issuer and shall have accepted appointment as hereinafter provided, and, in the case of such other Paying Agent, if such other Paying Agent is the only Paying Agent

located in a place where, by the terms of the Securities of a Series or this Agreement, the Issuer is required to maintain a Paying Agent, then any holder of a Security who has been a bona fide holder of a Security for at least six months (which Security, in the case of such other Paying Agent, is of the Series referred to in this sentence), on behalf of himself and all others similarly situated, or the Fiscal Agent may petition any court of competent jurisdiction for the appointment of a successor agent; provided that the Issuer may, but shall not be required to, appear in any proceeding with respect to such petition; and provided, further, that (i) if the Issuer elects not to appear in such proceeding, such election shall constitute an irrevocable waiver of its right to contest in any forum by any means the determinations made in such proceeding and (ii) if the Issuer elects to appear in any such proceeding, such appearance shall not constitute a waiver of immunity the Issuer may have or a submission to jurisdiction for purposes of any cross-claim, counterclaim, action, lawsuit or process. The Issuer shall give prompt written notice to each other Paying Agent of the appointment of a successor Fiscal Agent.

(d)  Acknowledgment.  Any successor Fiscal Agent appointed hereunder shall execute, acknowledge and deliver to its predecessor and to the Issuer an instrument accepting such appointment hereunder, and thereupon such successor Fiscal Agent, without any further act, deed or conveyance, shall become vested with all the authority, rights, powers, trusts, immunities, duties and obligations of such predecessor with like effect as if originally named as Fiscal Agent hereunder, and such predecessor, upon payment of its compensation and reimbursement of its disbursements then unpaid, shall thereupon become obligated to transfer, deliver and pay over, and such successor Fiscal Agent shall be entitled to receive, all monies, securities, books, records or other property on deposit with or held by such predecessor as Fiscal Agent hereunder.

(e)  Merger, Consolidation, etc.  Any corporation into which the Fiscal Agent hereunder may be merged, or any corporation resulting from any merger or consolidation to which the Fiscal Agent shall be a party, or any corporation to which the Fiscal Agent shall sell or otherwise transfer all or substantially all the assets and business of the Fiscal Agent, provided that it shall be qualified as aforesaid, shall be the successor Fiscal Agent under this Agreement without the execution or filing of any paper or any further act on the part of any of the parties hereto.

(f)  Separate Fiscal Agents.  The Issuer may appoint a separate fiscal agent for the Securities of any Series in addition to or in lieu of the Fiscal Agent or any other fiscal agent which is acting as such agent for the Securities of any other Series. Any such separate fiscal agent shall be a bank or trust company organized and doing business under the laws of the United States of America or of the State of New York, in good standing and having and acting through an established place of business in The City of New York, and authorized under such laws to exercise corporate trust powers. Any separate fiscal agent shall enter into an agreement with the Issuer under which such fiscal agent shall agree to act on substantially the terms applicable to the Fiscal Agent hereunder.

10.  Payment of Taxes.

The Issuer will pay all stamp taxes and other duties, if any, which may be imposed by the Republic of Venezuela, the United States of America or any political subdivision thereof or taxing authority of or in the foregoing with respect to this Agreement or the issuance of the Securities.

11. <u>Meetings and Amendments</u>.

(a) <u>Calling of Meeting, Notice and Quorum</u>.  A meeting of holders of Securities of a Series may be called at any time and from time to time to make, give or take any request, demand, authorization, direction, notice, consent, waiver or other action provided by this Agreement or the Securities of such Series to be made, given or taken by holders of Securities of such Series or to modify, amend or supplement the terms of the Securities of such Series or this Agreement as hereinafter provided. The Issuer may at any time call a meeting of holders of Securities of any Series for any such purpose to be held at such time and at such place as the Issuer shall determine. Notice of every meeting of holders of Securities of any Series, setting forth the time and the place of such meeting and in general terms the action proposed to be taken at such meeting, shall be given as provided in the terms of the Securities of such Series, not less than 30 nor more than 60 days prior to the date fixed for the meeting (provided that, in the case of any meeting to be reconvened after adjournment for lack of a quorum, such notice shall be so given not less than 10 nor more than 60 days prior to the date fixed for such meeting). In case at any time the Issuer or the holders of at least 10% in aggregate principal amount of the Outstanding Securities (as defined in subsection (d) of this Section 11) of a Series shall, after the occurrence and during the continuance of any default under the Securities of such Series, have requested the Fiscal Agent to call a meeting of the holders of Securities of such Series for any purpose specified in the first sentence of this Section 11(a), by written request setting forth in reasonable detail the action proposed to be taken at such meeting, the Fiscal Agent shall call such meeting for such purposes by giving notice thereof.

To be entitled to vote at any meeting of holders of Securities of any Series, a person shall be a holder of Outstanding Securities of such Series or a person duly appointed by an instrument in writing as proxy for such a holder. The persons entitled to vote a majority in principal amount of the Outstanding Securities of such Series shall constitute a quorum. In the absence of a quorum within 30 minutes of the time appointed for any such meeting, the meeting shall, if convened at the request of the holders, be dissolved. In any other case, the meeting may be adjourned for a period of not less than 10 days as determined by the chairman of the meeting prior to the adjournment of such meeting. In the absence of a quorum at any such adjourned meeting, such adjourned meeting may be further adjourned for a period of not less than 10 days as determined by the chairman of the meeting prior to the adjournment of such adjourned meeting. Notice of the reconvening of any adjourned meeting shall be given as provided in the preceding paragraph of this subsection (a), except that such notice need be given only once. Notice of reconvening of an adjourned meeting shall state expressly the percentage of the principal amount of the Outstanding Securities which shall constitute a quorum. Subject to the foregoing, at the reconvening of any meeting adjourned for a lack of a quorum, the persons entitled to vote 25% in principal amount of the Outstanding Securities of any Series shall constitute a quorum for the taking of any action set forth in the notice of the original meeting. Any meeting of holders of Securities of such Series at which a quorum is present may be adjourned from time to time by vote of a majority in principal amount of the Outstanding Securities represented at the meeting, and the meeting may be held as so adjourned without further notice.

The Fiscal Agent may make such reasonable and customary regulations consistent herewith as it shall deem advisable for any meeting of holders of Securities of such Series with respect to the proof of the holding of Securities, the adjournment and chairmanship of such meeting, the appointment of proxies in respect of holders of Securities of such Series,

the record date for determining the registered holders of Securities of such Series who are entitled to vote at such meeting (which date shall be designated by the Fiscal Agent and set forth in the notice calling such meeting hereinabove referred to and which shall be not less than 15 nor more than 60 days prior to such meeting (provided that nothing in this paragraph shall be construed to render ineffective any action taken by holders of the requisite principal amount of Outstanding Securities of such Series on the date such action is taken), the appointment and duties of inspectors of votes, the submission and examination of proxies, certificates and other evidence of the right to vote, and such other matters concerning the conduct of the meeting as it shall deem appropriate. The Fiscal Agent shall, by an instrument in writing, appoint a temporary chairman of the meeting, unless the meeting shall have been called by the Issuer or the holders of Securities of such Series as provided above, in which case the Issuer or the holders of Securities of such Series calling the meeting, as the case may be, shall in like manner appoint a temporary chairman. A permanent chairman and a permanent secretary of the meeting shall be elected by vote of the persons entitled to vote a majority in principal amount of the Outstanding Securities represented and voting at the meeting. The chairman of the meeting shall have no right to vote, except as holder of Securities of such Series or proxy. A record, at least in duplicate, of the proceeding of each meeting of holders shall be prepared, and one such copy shall be delivered to the Issuer and another to the Fiscal Agent to be preserved by the Fiscal Agent.

(b) Approval.  (i) At any meeting of holders of Securities of any Series duly called and held as specified above, upon the affirmative vote, in person or by proxy thereunto duly authorized in writing, of the lesser of (X) a majority in principal amount of the Outstanding Securities of such Series or (Y) the holders of not less than 66 2/3% in aggregate principal amount of the Securities of such Series then Outstanding represented at such meeting (or of such other percentage as may be set forth in the text of the Securities of such Series with respect to the action being taken), or (ii) with the written consent of the owners of not less than a majority in aggregate principal amount of the Securities of any Series then Outstanding (or of such other percentage as may be set forth in the text of the Securities of such Series with respect to the action being taken), the Issuer and the Fiscal Agent (and, in the case of the Banco Central Undertaking, with the agreement of Banco Central), upon agreement between themselves, may modify, amend or supplement the terms of the Securities of such Series or, insofar as respects the Securities of such Series, this Agreement or the Banco Central Undertaking, in any way, and the holders of Securities of such Series may make, take or give any request, demand, authorization, direction, notice, consent, waiver or other action provided by this Agreement or the Securities of such Series to be made, given or taken by holders of Securities of such Series; provided, however, that no such action may, without the consent or affirmative vote of the holder of each Security of such Series affected thereby, (A) change the due date for the payment of the principal of (or premium, if any) or any installment of interest on any Security of such Series, (B) reduce the principal amount of any Security of such Series, the portion of such principal amount which is payable upon acceleration of the maturity of such Security, the interest rate thereon or the premium payable upon redemption thereof, (C) change the coin or currency in which payment with respect to interest, premium or principal in respect of Securities of such Series is payable, (D) reduce the proportion of the principal amount of Securities of such Series the vote or consent of the holders of which is necessary to modify, amend or supplement this Agreement, the Banco Central Undertaking or the terms and conditions of the Securities of such Series or to make, take or give any request, demand, authorization, direction, notice, consent, waiver or other action provided hereby or thereby to be made, taken or given, or (E) change the obligation of the Issuer to pay Additional Amounts, if any,

pursuant to the Securities of such Series. Any such modification, amendment or supplement shall be binding on the holders of Securities of such Series. The Issuer and the Fiscal Agent (and, in the case of the Banco Central Undertaking, with the agreement of Banco Central), upon agreement between themselves, without the vote or consent of any holder of Securities, may modify, amend or supplement this Agreement or the Securities of a Series for the purpose of (A) adding to the covenants of the Issuer for the benefit of the holders of the Securities of such Series, (B) surrendering any right or power conferred upon the Issuer, (C) securing the Securities of such Series pursuant to the requirements of such Securities or otherwise, (D) curing any ambiguity, or curing, correcting or supplementing any defective provision thereof or (E) amending this Agreement, the Banco Central Undertaking or the Securities of such Series in any manner which the Issuer and the Fiscal Agent may determine and shall not adversely affect the interest of any holder of Securities of such Series in any material respect.

It shall not be necessary for the vote or consent of the holders of Securities of a Series to approve the particular form of any proposed modification, amendment, supplement, request, demand, authorization, direction, notice, consent, waiver or other action, but it shall be sufficient if such vote or consent shall approve the substance thereof.

(c)   Binding Nature of Amendments, Notices, Notations, etc.   Any instrument given by or on behalf of any holder of a Security of a Series in connection with any consent to or vote for any such modification, amendment, supplement, request, demand, authorization, direction, notice, consent, waiver or other action will be irrevocable once given and will be conclusive and binding on all subsequent holders of such Security or any Security issued directly or indirectly in exchange or substitution therefor or in lieu thereof. Any such modification, amendment, supplement, request, demand, authorization, direction, notice, consent, waiver or other action will be conclusive and binding on all holders of Securities of such Series, whether or not they have given such consent or cast such vote or were present at any meeting, and whether or not notation of such modification, amendment, supplement, request, demand, authorization, direction, notice, consent, waiver or other action is made upon the Securities of such Series. Notice of any modification or amendment of, supplement to, or request, demand, authorization, direction, notice, consent, waiver or other action with respect to the Securities of a Series or this Agreement (other than for purposes of curing any ambiguity or of curing, correcting or supplementing any defective provision hereof or thereof) shall be given to each holder of Securities affected thereby and then Outstanding, in all cases as provided in Securities of such Series.

Securities of a Series authenticated and delivered after the effectiveness of any such modification, amendment, supplement, request, demand, authorization, direction, notice, consent, waiver or other action may bear a notation in the form approved by the Fiscal Agent and the Issuer as to any matter provided for in such modification, amendment, supplement, request, demand, authorization, direction, notice, consent, waiver or other action taken, made or given in accordance with Section 11(b) hereof. New Securities of such Series modified to conform, in the opinion of the Fiscal Agent and the Issuer, to any such modification, amendment, supplement, request, demand, authorization, direction, notice, consent, waiver or other action may be prepared by the Issuer, authenticated by the Fiscal Agent (or any authenticating agent appointed pursuant to Section 3 hereof) and delivered in exchange for Outstanding Securities of such Series.

(d) "Outstanding" Defined. For purposes of this Agreement and the Securities, any Security authenticated and delivered pursuant to this Agreement shall, as of any date of determination, be deemed to be "Outstanding", except:

(i)     Securities theretofore cancelled by the Fiscal Agent or delivered to the Fiscal Agent for cancellation and not reissued by the Fiscal Agent;

(ii)    Securities which have been called for redemption in accordance with their terms or which have become due and payable at maturity or otherwise and with respect to which monies sufficient to pay the principal thereof (and premium, if any) and any interest thereon shall have been paid or duly provided for; or

(iii)   Securities of a Series in lieu of or in substitution for which other Securities of such Series shall have been authenticated and delivered pursuant to this Agreement;

provided, however, that in determining whether the holders of the requisite principal amount of Outstanding Securities of a Series are present at a meeting of holders of Securities of such Series for quorum purposes or have consented to or voted in favor of any request, demand, authorization, direction, notice, consent, waiver, amendment, modification or supplement hereunder, (i) the principal amount of a Security which by its terms provides for an amount other than the stated face amount to be due and payable upon a declaration of acceleration of the maturity thereof or at stated maturity (a "Variable Principal Security") that shall be deemed to be Outstanding shall be either (A) the amount of the principal thereof that would be due and payable as of the date of such determination upon acceleration of the maturity thereof or (B) such other amount not in excess of the stated face amount, as may be specified in such Security, (ii) the principal amount of a Security denominated in a foreign currency or currencies shall be the U.S. dollar equivalent, determined on the date of original issuance of such Security, of the principal amount (or, in the case of a Variable Principal Security, the U.S. dollar equivalent, determined on the date of original issuance of such Security, of the amount determined as provided in (i) above) of such Security, and (iii) Securities of such Series owned directly or indirectly by the Issuer shall be disregarded and deemed not to be Outstanding.

12. Governing Law.

THIS AGREEMENT SHALL BE GOVERNED BY, AND INTERPRETED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAWS. AUTHORIZATION AND EXECUTION OF THIS AGREEMENT BY THE ISSUER, HOWEVER, SHALL BE GOVERNED BY THE LAWS OF THE REPUBLIC OF VENEZUELA.

13. Notices.

All notices or communications hereunder, except as herein otherwise specifically provided, shall be in writing, shall specify this Agreement by name and date and shall identify the Securities to which such notices or communications relate, and if sent to the Fiscal Agent shall be delivered, or transmitted by facsimile or registered mail, first class postage prepaid, to it at 450 West 33rd Street, 15th Floor, New York, New York 10001, Facsimile No. (212) 946-8177 or (212) 946-8178, Attention: Global Trust Services,

-25-

DC_LAN01: 91108.4

International, or if sent to the Issuer shall be delivered or transmitted by hand, facsimile or reputable international courier, postage prepaid to it at:

> Ministerio de Hacienda de la Republica de Venezuela
> Direccion General Sectorial de Finanzas Publicas
> Esquina de Carmelitas
> Avenida Urdaneta
> Edificio del Ministerio de Hacienda
> Caracas, Venezuela
> Attention: Director de Credito Publico
> Telecopier: (582) 802-1893
> Telephone: (582) 802-1887

with a copy to

> Banco Central de Venezuela
> Esquina de Carmelitas
> Avenida Urdaneta
> Caracas 1010
> Venezuela
> Attention: Vice President of International Operations
> Telecopier:   (582) 837-373
> Telephone:   (582) 801-5352/801-5347/801-5088

The foregoing addresses for notices or communications may be changed by written notice given by the addressee to each party hereto, and the addressee's address shall be deemed changed for all purposes from and after the giving of such notice.

If the Fiscal Agent shall receive any notice or demand addressed to the Issuer by the holder of a Security, the Fiscal Agent shall promptly forward such notice or demand to the Issuer.

Notice to holders of Securities of a Series shall be given as provided in the terms of the Securities of such Series, provided, however, if the Fiscal Agent is requested to give notice in the name and at the expense of Venezuela it shall receive notice from Venezuela at least 15 days prior to the last date for notice to the holders.

14. **Waiver of Immunity; Consent to Jurisdiction; Consent to Service; Proceedings in Venezuela.**

(a)   The Issuer agrees that any suit, action or proceeding against it or its properties, assets or revenues with respect to this Agreement, any Security or a coupon appertaining thereto (a "Related Proceeding") shall be brought exclusively in the Supreme Court of the State of New York, County of New York; in the United States District Court for the Southern District of New York; in the courts of England that sit in London; or in the courts of Venezuela that sit in Caracas, as the person bringing such Related Proceeding may elect in its sole discretion, provided that if none of the courts specified above located in the country in which such person has elected to bring such Related Proceeding is a court that has jurisdiction of the subject matter or is otherwise competent under applicable law to hear

and determine such proceeding, such Related Proceeding may be brought in such other court located in such country as shall have jurisdiction of the subject matter or be otherwise competent under applicable law to hear and determine such Related Proceeding, or if such Related Proceeding seeks relief or a judgment that is enforceable only against any of its properties, assets or revenues that are subject to the jurisdiction of any other court located in the countries listed above and is limited to the value of such properties, assets or revenues, such Related Proceeding may be brought in any such court (all such courts described in this sentence being called herein "Specified Courts"). The Issuer also agrees that any judgment obtained in any of the Specified Courts arising out of any Related Proceeding may be enforced or executed in any Specified Court or any other court of competent jurisdiction whatsoever, and any judgment obtained in any such other court as a result of such enforcement or execution may be enforced or executed in any such other court of competent jurisdiction (all courts other than Specified Courts being herein called "Other Courts"), by means of a suit on the judgment or in any other manner provided by law. The Issuer hereby irrevocably submits to the exclusive jurisdiction of each of the Specified Courts for the purpose of any Related Proceeding and, solely for the purpose of enforcing or executing any judgment referred to in the preceding sentence (a "Related Judgment"), of each Specified Court and each Other Court. The Agreement made by the Issuer with respect to jurisdiction is made solely with respect to Related Proceedings and the enforcement or execution of Related Judgments and under no circumstances shall it be interpreted as a general agreement by the Issuer with respect to proceedings unrelated to this Agreement, any Security or a coupon appertaining thereto.

(b)    The Issuer agrees that service of all writs, process and summonses in any Related Proceeding or any suit, action or proceeding to enforce or execute any Related Judgment brought against it in the State of New York may be made upon the Consul General of the Republic of Venezuela or, in his or her absence or incapacity, any official of the Consulate of Venezuela, presently located at 7 East 51st Street, New York, New York 10022, U.S.A. (The "New York Process Agent"), and service of all writs, process and summonses in any Related Proceeding or any suit, action or proceeding to enforce or execute any Related Judgment brought against it in England may be made upon the person in charge of consular affairs at the Embassy of the Republic of Venezuela, presently located at One Cromwell Road, London SW7 2HW, England (the "London Process Agent" and, together with the New York Process Agent, the "Process Agents"), and the Issuer irrevocably appoints each Process Agent as its agent to receive such service of any and all such writs, process and summonses, and agrees that the failure of any of the Process Agents to give any notice to it of any such service of process shall not impair or affect the validity of such service or of any judgment based thereon. The Issuer agrees to maintain at all times an agent with offices in New York to act as its New York Process Agent, and an agent with offices in London to act as its London Process Agent as aforesaid (each such agent to be appointed by an irrevocable power of attorney hereto granted before a Venezuelan notary public). Nothing herein shall in any way be deemed to limit the ability to serve any such writs, process or summonses in any other manner permitted by applicable law.

(c)    The Issuer irrevocably consents to and waives any objection which it may now or hereafter have to the laying of venue of any Related Proceeding brought in any of the Specified Courts or to the laying of venue of any suit, action or proceeding brought solely for the purpose of enforcing or executing any Related Judgment in any of the Specified Courts or Other Courts, and further irrevocably waives, to the fullest extent it may

effectively do so, the defense of an inconvenient forum to the maintenance of any Related Proceeding or any such suit, action or proceeding in any such court.

(d)   To the extent that the Issuer or any of its revenues, assets or properties shall be entitled, with respect to any Related Proceeding at any time brought against the Issuer or any of its revenues, assets or properties in any jurisdiction in which any Specified Court is located, or with respect to any suit, action or proceeding at any time brought solely for the purpose of enforcing or executing any Related Judgment in any jurisdiction in which any Specified Court or Other Court is located, to any immunity from suit, from the jurisdiction of any such court, from attachment prior to judgment, from attachment in aid of execution of judgment, from execution of a judgment or from any other legal or judicial process or remedy, and to the extent that in any such jurisdiction there shall be attributed such an immunity, the Issuer irrevocably agrees not to claim and irrevocably waives such immunity to the fullest extent permitted by the laws of such jurisdiction (including, without limitation, the Foreign Sovereign Immunities Act of 1976 of the United States) and consents generally for the purposes of the State Immunity Act of 1978 of the United Kingdom to the giving of any relief or the issue of any process in connection with any Related Proceeding or Related Judgment, provided that such agreement and waiver, insofar as it relates to any jurisdiction other than a jurisdiction in which a Specified Court is located, is given solely for the purpose of enabling the Fiscal Agent, any Paying Agent or any holder to enforce or execute a Related Judgment. In addition, to the extent that the Issuer or any of its revenues, assets or properties shall be entitled, in any jurisdiction, to any immunity from set-off, banker's lien or any similar right or remedy, and to the extent that there shall be attributed, in any jurisdiction, such an immunity, the Issuer hereby irrevocably agrees not to claim and irrevocably waives such immunity to the fullest extent permitted by the laws of such jurisdiction with respect to any claim, suit, action, proceeding, right or remedy arising out of or in connection with this Agreement, any Security or a coupon appertaining thereto.

15.  Conversion of Currency.

The Issuer agrees that, if a judgment or order given or made by any Specified Court or Other Court for the payment of any amount in respect of any Security is expressed in a currency (the "judgment currency") other than the currency in which such Security is denominated (the "denomination currency"), the Issuer will pay any deficiency arising or resulting from any variation in rates of exchange between the date as of which the amount in the denomination currency is notionally converted into the amount in the judgment currency for the purposes of such judgment or order and the date of actual payment thereof. This obligation will constitute a separate and independent obligation from the other obligations under the Securities, will give rise to a separate and independent cause of action, will apply irrespective of any waiver or extension granted from time to time and will continue in full force and effect notwithstanding any judgment or order for a liquidated sum or sums in respect of amounts due in respect of the relevant Security or under any such judgment or order. The term "rates of exchange" shall include any premiums and costs of exchange payable in connection with the purchase of or conversion into the denomination currency.

16.  Headings.

The section headings herein are for convenience only and shall not affect the construction hereof.

17. <u>Counterparts</u>.

This Agreement may be executed in any number of counterparts, each of which, when so executed shall be deemed to be an original but all such counterparts shall together constitute but one and the same instrument.

IN WITNESS WHEREOF, the parties hereto have executed this Fiscal Agency Agreement as of the date first above written.

THE REPUBLIC OF VENEZUELA

By _____
Name:
Title:

BANCO CENTRAL DE VENEZUELA,
as Official Financial Agent of the
Republic of Venezuela

By _____
Name:
Title:

THE CHASE MANHATTAN BANK

By _____
Name:
Title:

DC_LAN01: 91108.4

-30-

EXHIBIT D\*

[FORM OF CERTIFICATE OF BENEFICIAL OWNERSHIP]

CERTIFICATE

REPUBLIC OF VENEZUELA

[TITLE OF SECURITIES]

This is to certify that as of the date hereof, [and except as set forth below,]\*\* the above-captioned Securities [held by you for our account]\*\* [to be acquired from you]\*\*\* (i) are owned by person(s) that are not citizens or residents of the United States, domestic partnerships, domestic corporations or any estate or trust the income of which is subject to United States Federal income taxation regardless of its source ("United States person(s)"), (ii) are owned by United States person(s) that (a) are foreign branches of United States financial institutions (as defined in U.S. Treasury Regulations Section 1.165-12(c)(1)(v)) ("financial institutions") purchasing for their own account or for resale, or (b) acquired the Securities through foreign branches of United States financial institutions and who hold the Securities through such United States financial institutions on the date hereof (and in either case (a) or (b), each such United States financial institution hereby agrees, on its own behalf or through its agent, that you may advise the Issuer that it will comply with the requirements of Section 165(j)(3)(A), (B) or (C) of the Internal Revenue Code of 1986, as amended, and the regulations thereunder), or (iii) are owned by United States or foreign financial institutions for purposes of resale during the restricted period (as defined in U.S. Treasury Regulations Section 1.163-5(c)(2)(i)(D)(7)) and, in addition, if the owner of the Securities is a United States or foreign financial institution described in clause (iii) above (whether or not also described in clause (i) or (ii)) this is to further certify that such financial institution has not acquired the Securities for purposes of resale directly or indirectly to a United States person or to a person within the United States or its possessions.

As used herein, "United States" means the United States of America (including the States and the District of Columbia); and its "possessions" include Puerto Rico, the U.S. Virgin Islands, Guam, American Samoa, Wake Island and the Northern Mariana Islands.

[We undertake to advise you by tested telex if the above statement is not correct on the date on which you intend to submit your certificate relating to such Securities to the

---

\*      For use in those instances where a definitive bearer Security, a temporary bearer Security, a temporary bearer global Security or a definitive bearer global Security is delivered in an Offshore Offering to non-U.S. persons at the time of sale thereof.

\*\*    To be included if the Certificate is being provided to EUROCLEAR or CEDEL BANK, société anonyme.

\*\*\*     To be included if the Certificate is being provided directly to the Issuer.

DC_LAN01.911084

Fiscal Agent, and in the absence of any such notification it may be assumed that this certificate applies as of such date.]*

This certificate excepts and does not relate to $_____ of such interest in the above Securities in respect of which we are not able to certify and as to which we understand exchange and delivery of definitive Securities cannot be made until we do so certify.

We understand that this certificate is required in connection with certain tax laws of the United States. In connection therewith, if administrative or legal proceedings are commenced or threatened in connection with which this certificate is or would be relevant, we irrevocably authorize you to produce this certificate to any interested party in such proceedings.

Dated: _____, 199_

By: _____
    As, or as agent for, the
    beneficial owner(s) of the
    Notes to which this
    certificate relates.

_____

*   To be included if the Certificate is being provided to Euroclear or CEDEL BANK, *société anonyme*.

EXHIBIT E

[FORM OF CERTIFICATE TO BE GIVEN
BY THE EUROCLEAR OPERATOR OR
CEDEL BANK, *société anonyme*]

CERTIFICATE

REPUBLIC OF VENEZUELA

[TITLE OF SECURITIES]

This is to certify that, based solely on certifications we have received in writing, by tested telex or by electronic transmission from member organizations appearing in our records as persons being entitled to a portion of the principal amount set forth below (our "Member Organizations") substantially to the effect set forth in the Fiscal Agency Agreement, as of the date hereof, _____ principal amount of the above-captioned Securities (i) is owned by persons that are not citizens or residents of the United States, domestic partnerships, domestic corporations or any estate or trust the income of which is subject to United States Federal income taxation regardless of its source ("United States persons"), (ii) is owned by United States persons that (a) are foreign branches of United States financial institutions (as defined in U.S. Treasury Regulations Section 1.165-12(c)(1)(v) ("financial institutions")) purchasing for their own account or for resale, or (b) acquired the Securities through foreign branches of United States financial institutions and who hold the Securities through such United States financial institutions on the date hereof (and in either case (a) or (b), each such United States financial institution has agreed, on its own behalf or through its agent, that we may advise the Issuer that it will comply with the requirements of Section 165(j)(3)(A), (B) or (C) of the Internal Revenue Code of 1986, as amended, and the regulations thereunder), or (iii) is owned by United States or foreign financial institutions for purposes of resale during the restricted period (as defined in U.S. Treasury Regulations Section 1.163-5(c)(2)(i)(D)(7)), and to the further effect that United States or foreign financial institutions described in clause (iii) above (whether or not also described in clause (i) or (ii)) have certified that they have not acquired the Securities for purposes of resale directly or indirectly to a United States person or to a person within the United States or its possessions.

As used herein, "United States" means the United States of America (including the States and the District of Columbia); and its "possessions" include Puerto Rico, the U.S. Virgin Islands, Guam, American Samoa, Wake Island and the Northern Mariana Islands.

We further certify (i) that we are not making available herewith for exchange (or, if relevant, exercise of any rights or collection of any interest) any portion of the temporary global Security excepted in such certifications and (ii) that as of the date hereof we have not received any notification from any of our Member Organizations to the effect that the statements made by such Member Organizations with respect to any portion of the part submitted herewith for exchange (or, if relevant, exercise of any rights or collection of any interest) are no longer true and cannot be relied upon as of the date hereof.

We understand that this certification is required in connection with certain tax laws and, if applicable, certain securities laws of the United States. In connection therewith, if administrative or legal proceedings are commenced or threatened in connection with which this certification is or would be relevant, we irrevocably authorize you to produce this certification to any interested party in such proceedings.

Dated: _____, 199__

Yours faithfully,

MORGAN GUARANTY TRUST COMPANY OF NEW YORK,
Brussels office, as operator of the EUROCLEAR System

or

CEDEL BANK, société anonyme

By:_____

DC_LAN01: 91108.4                                           E-2