# Exhibit M

## REGULATION S GLOBAL NOTE

UNLESS THIS CERTIFICATE IS PRESENTED BY AN AUTHORIZED REPRESENTATIVE OF THE DEPOSITORY TRUST COMPANY ("DTC") TO THE ISSUER OR ITS AGENT FOR REGISTRATION OF TRANSFER, EXCHANGE OR PAYMENT, AND ANY CERTIFICATE ISSUED IN EXCHANGE FOR THIS CERTIFICATE OR ANY PORTION HEREOF IS REGISTERED IN THE NAME OF CEDE & CO. OR IN SUCH OTHER NAME AS IS REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF DTC (AND ANY PAYMENT IS MADE TO CEDE & CO. OR TO SUCH OTHER ENTITY AS IS REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF CEDE & CO.), ANY TRANSFER, PLEDGE OR OTHER USE HEREOF FOR VALUE OR OTHERWISE BY OR TO ANY PERSON OTHER THAN DTC OR A NOMINEE THEREOF IS WRONGFUL INASMUCH AS THE REGISTERED OWNER HEREOF, CEDE & CO., HAS AN INTEREST HEREIN.

THIS NOTE IS A U.S. GLOBAL NOTE AND A REGULATION S GLOBAL NOTE WITHIN THE MEANING OF THE FISCAL AGENCY AGREEMENT REFERRED TO HEREINAFTER. THIS U.S. GLOBAL NOTE MAY NOT BE EXCHANGED, IN WHOLE OR IN PART, FOR A NOTE REGISTERED IN THE NAME OF ANY PERSON OTHER THAN DTC OR A NOMINEE THEREOF EXCEPT IN THE LIMITED CIRCUMSTANCES SET FORTH IN SECTION 5(C) OF THE FISCAL AGENCY AGREEMENT, AND MAY NOT BE TRANSFERRED, IN WHOLE OR IN PART, EXCEPT IN ACCORDANCE WITH THE RESTRICTIONS SET FORTH IN SECTION 6(B) OF THE FISCAL AGENCY AGREEMENT. BENEFICIAL INTERESTS IN THIS U.S. GLOBAL NOTE MAY NOT BE TRANSFERRED EXCEPT IN ACCORDANCE WITH SECTION 6(B) OF THE FISCAL AGENCY AGREEMENT.

THIS NOTE (OR ITS PREDECESSOR) WAS ORIGINALLY ISSUED IN A TRANSACTION EXEMPT FROM REGISTRATION UNDER THE UNITED STATES SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), AND MAY NOT BE OFFERED, SOLD, PLEDGED OR OTHERWISE TRANSFERRED IN THE UNITED STATES OR TO ANY U.S. PERSON EXCEPT PURSUANT TO AN AVAILABLE EXEMPTION FROM THE REGISTRATION REQUIREMENTS OF THE SECURITIES ACT AND ALL APPLICABLE STATE SECURITIES LAWS. TERMS USED ABOVE HAVE THE MEANINGS GIVEN THEM IN REGULATION S UNDER THE SECURITIES ACT.



REGISTERED
NO. R- 1                                                              US DOLLAR
CUSIP **P9395PAA9**

## BOLIVARIAN REPUBLIC OF VENEZUELA

**US$300,000,000**
**13.625 per cent. Notes due 2018**
**Common Code [☐]   ISIN USP9395PAA95**

**Specified Currency**: US Dollars

**Stated Maturity**: August 15, 2018

**Issue Date**: September 27, 2001

The Bolivarian Republic of Venezuela (herein called the "Issuer" or "Republic"), for value received, hereby promises to pay to the Depository Trust Company ("DTC"), or its registered assigns, the principal amount set forth above in the Specified Currency set forth above on the Stated Maturity, and to pay interest thereon from the date hereof or from the most recent Interest Payment Date (as defined below) to which interest has been paid or duly provided for, semi-annually in arrears on February 15 and August 15 in each year, commencing February 15, 2002 (each shall be an "Interest Payment Date"), at the rate of 13.625% per annum until the principal hereof is paid or made available for payment. The interest so payable, and punctually paid or duly provided for, on any Interest Payment Date will, as provided in the Fiscal Agency Agreement hereinafter referred to, be paid to the person in whose name this Note (or one or more predecessor Notes) is registered at the close of business on the Regular Record Date (as defined in the Terms and Conditions) next preceding such Interest Payment Date; *provided, however,* that interest payable at maturity will be payable to the person to whom principal shall be payable, and *provided further, however* that if the Issue Date is after a Regular Record Date and before the next succeeding Interest Payment Date, the first payment of interest shall be payable on the Interest Payment Date following the next succeeding Regular Record Date to the person in whose name this Note (or one or more predecessor Notes) is registered at the close of business on such next succeeding Regular Record Date.

Any such interest not so punctually paid or duly provided for will forthwith cease to be payable to the registered Holder on such Regular Record Date and may either be paid to the person in whose name this Note (or one or more predecessor Notes) is registered at the close of business on a special record date for the payment of such interest to be fixed by the Issuer, notice whereof shall be given to registered Holders of Notes of this Series not less than 10 days prior to such special record date, or be paid at any time in any other lawful manner not inconsistent with the requirements of any securities exchange on which the Notes of this Series may be listed, and upon such notice as may be required by such exchange.

THIS NOTE SHALL BE GOVERNED BY, AND INTERPRETED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK WITHOUT REGARD TO PRINCIPLES OF CONFLICT OF LAWS EXCEPT THAT ALL MATTERS GOVERNING AUTHORIZATION AND EXECUTION OF THIS NOTE BY THE ISSUER SHALL BE GOVERNED BY THE LAWS OF THE BOLIVARIAN REPUBLIC OF VENEZUELA.

Reference is hereby made to the Terms and Conditions of this Note set forth in Schedule I hereto, which Terms and Conditions shall for all purposes have the same effect as if set forth at this place.

All terms used in this Note that are defined in Schedule I hereto (as so amended or supplemented) or in the Fiscal Agency Agreement, including the exhibits thereto, shall have the meanings assigned to them therein.

Unless the certificate of authentication hereon has been executed by the Fiscal Agent by the manual signature of one of its duly authorized officers, this Note shall not be valid or obligatory for any purpose.

IN WITNESS WHEREOF, the Issuer has caused this instrument to be duly executed.

Dated:

BOLIVARIAN REPUBLIC OF VENEZUELA

By:_____
Name: JESÚS BERMÚDEZ ACOSTA
Title: GENERAL DIRECTOR OF PUBLIC FINANCE

This is one of the Notes of the series designated therein referred to in the within-mentioned Fiscal Agency Agreement.

BANKERS TRUST COMPANY
   as Fiscal Agent

By: Wanda Camacho
   Authorized Officer

DC_632762_4[1].DOC

**SCHEDULE I**

## TERMS AND CONDITIONS OF THE NOTES

**General**

Each Note is one of a duly authorized issue of 13⅝% Notes due 2018 of the Bolivarian Republic of Venezuela, to be issued pursuant to a Fiscal Agency Agreement (the "Fiscal Agency Agreement"), dated as of July 25, 2001, among the Republic, Banco Central de Venezuela, Deutsche Bank AG and Bankers Trust Company, as fiscal agents and principal paying agents (the "Fiscal Agent") and the other parties thereto. Capitalized terms used but not defined herein shall have the meanings given to them in the Fiscal Agency Agreement.

The holders of the Notes will be entitled to the benefits of, be bound by, and be deemed to have notice of, all the provisions of the Fiscal Agency Agreement. Copies of the Fiscal Agency Agreement are on file and may be inspected at the principal office of the Fiscal Agent in The City of New York and at the offices of the paying agents specified below. No reference herein to the Fiscal Agency Agreement and no provision of this Note or of the Fiscal Agency Agreement shall alter or impair the obligation of the Republic, which is absolute and unconditional, to pay the principal of, and interest on, this Note at the times, place and rate, and in the coin and currency, herein prescribed.

**Form and Denomination**

The Notes are issuable in fully registered form, without coupons, in denominations of $10,000 or any amount in excess thereof which is an integral multiple of $1,000 (an "authorized denomination"). The Notes, and transfer thereof, shall be registered as provided under "Replacement, Exchange and Transfer" below and in the Fiscal Agency Agreement. A person in whose name a Note shall be registered may (to the fullest extent permitted by law) be treated at all times, by all persons and for all purposes as the absolute owner of such Note regardless of any notice of ownership, theft or loss or of any writing thereon.

**Status**

The Notes constitute Public External Indebtedness of the Republic and (subject to "Negative Pledge" below) are direct, unconditional, unsecured and general obligations of the Republic and shall at all times rank *pari passu* and without any preference among themselves. The payment obligations of the Republic under the Notes and Coupons shall, save for such exceptions as may be provided by applicable legislation and subject to "Negative Pledge" below, at all times rank at least equally with all its other payment obligations relating to External Public Debt (as defined below). The Republic hereby pledges its full faith and credit for the due and punctual payment of all amounts due in respect of the Notes.

**Negative Pledge**

So long as any Note remains outstanding (as defined in the Fiscal Agency Agreement), if any Lien on Oil or Accounts Receivable (other than a Permitted Lien) is created by the Republic, Banco Central or any Governmental Agency to secure External Public Debt, the Republic will cause such Lien to equally and ratably secure the obligations of the Republic under the Notes. For purposes of the foregoing, the following terms have the following meanings:

"Accounts Receivable" means accounts payable to the Republic, Banco Central or any Governmental Agency in respect of the sale, lease or other provision of Oil, whether or not yet earned by performance or scheduled to be documented in the future pursuant to a contract in existence on the relevant date.

"Bond Currency" means any of the following currencies: Euros, Deutsche marks, Pounds sterling, U.S. dollars, Swiss francs, Italian lire or French francs.

DC_632762_4[1].DOC

"Debt" means, with respect to any Person, the following (whether outstanding on the date hereof or at any time thereafter): (a) all indebtedness of such Person for borrowed money, or for the deferred purchase price of property or services if and to the extent that the obligation to pay such purchase price is evidenced by an instrument; (b) all reimbursement obligations of such Person under or in respect of letters of credit or banker's acceptances; (c) all obligations of such Person to repay deposits with or advances to such Person; (d) all obligations of such Person (other than those specified in clauses (a) and (b) above) evidenced by bonds, debentures, notes or other similar instruments; and (e) all direct or indirect guarantees, endorsements and similar obligations of such Person in respect of, and all obligations (contingent or otherwise) of such Person to purchase or otherwise acquire, or otherwise to assure a creditor against loss in respect of, indebtedness or obligations of any other Person specified in clause (a), (b), (c) or (d) above.

"Export" means any sale of Oil by any Person, including any sales to Persons owned or controlled, directly or indirectly, by any such seller, (i) in connection with which such Oil is transported from the Republic or from storage facilities for Oil held for Export by any such person outside the Republic and (ii) which has not been preceded by any sale of such Oil which constitutes an Export hereunder.

"External Debt" means any Debt which is denominated or payable, or which at the option of the holder thereof may be payable, in a currency other than Bolívares.

"External Public Debt" means, at any time, the External Debt of the public sector entities referred to in Title I of the Organic Law of the Financial Administration of Public Sector of the Republic, as in effect on September 18, 2001, including principal, interest and other amounts payable in Bolívares in connection therewith.

"Financing Plan" means the Republic of Venezuela 1990 Financing Plan dated June 25, 1990, distributed to the international banking community.

"Governmental Agency" means each agency, department, ministry, authority, statutory corporation or other statutory body or juridical entity of the Republic or any political subdivision thereof or therein, now existing or hereafter created, and any bank, corporation or other legal entity 51% or more of the capital or voting stock or other ownership interest of which is now or hereafter owned or controlled, directly or indirectly, by the Republic, but excluding Banco Central.

"Lien" means any lien, pledge, mortgage, security interest, deed of trust, charge or other encumbrance on or with respect to, or any preferential arrangement which has the practical effect of constituting a security interest with respect to the payment of any obligation with or from the proceeds of, any asset or revenues of any kind.

"Oil" means hydrocarbons, their products and derivatives, in each case produced in the Republic, provided, however, that "Oil" shall not include Orimulsion®, products from Orimulsion®, natural gas, coal and petrochemicals.

"Operating Reserves" means, at any time, the value (determined in accordance with the second sentence of this definition) of all of the following assets owned by Banco Central at such time to the extent denominated in units of exchange other than Bolívares (excluding from such assets any assets which are subject to a Lien): (a) currencies other than Bolívares (excluding special drawing rights in the International Monetary Fund (the "IMF") and all funds received from the IMF); (b) deposits and credit balances with commercial financial lending institutions, central banks of non-Venezuelan governments or multilateral lending institutions which are payable in any of the Bond Currencies or currencies that are readily convertible into any of the Bond Currencies; and (c) marketable bonds, notes, certificates of deposit and other obligations issued by commercial financial institutions, non-Venezuelan governments or multilateral lending institutions which are payable in any of the Bond Currencies or currencies that are readily convertible into any of the Bond Currencies. For the purposes of this definition: (i) the value of an amount of any currency other than Bolívares at any time is the equivalent in U.S. dollars of such amount at such time determined in accordance with the consistently applied accounting practices of Banco Central; (ii) the

value of a deposit or credit balance referred to in sub-clause (b) above at any time is the equivalent in U.S. dollars of the face amount of such deposit or credit balance at such time determined in accordance with the consistently applied accounting practices of Banco Central; and (iii) the value of a bond, note, certificate of deposit or other obligation referred to in sub-clause (c) above at any time is the equivalent in U.S. dollars of the fair market value of such obligation at such time determined in accordance with the consistently applied accounting practices of Banco Central.

"Orimulsion®" means a liquid fuel consisting of (i) a natural bitumen of 7-10° API, (ii) water and (iii) a surfactant which is added to stabilize the bitumen in the water emulsion.

"Permitted Lien" means a Lien on Oil or Accounts Receivable, if at the time of creation of such Lien (the "New Lien"):

(i)     Operating Reserves are greater than the sum of (a) two months of imports into the Republic of goods and services (including interest payments with respect to External Public Debt) and (b) two months of principal payments with respect to all of the bonds issued to implement the Financing Plan and any other External Public Debt held by commercial lending institutions (measured in each case on the basis of imports and interest and principal payments during the preceding six months) (the availability of sufficient Operating Reserves to be certified by Banco Central);

(ii)    the aggregate principal amount of all External Public Debt secured by Liens on Oil or Accounts Receivable (including the External Public Debt to be secured by the New Lien and other External Public Debt to be simultaneously secured by Liens on Oil or Accounts Receivable) paid, due or scheduled to fall due in the current calendar year, and the aggregate outstanding principal amount of all such External Public Debt scheduled to fall due in each subsequent calendar year, is in each such year less than an amount equivalent to 17.5% of the aggregate revenues from the Export of Oil during the 12-month period preceding the creation of the New Lien (the amount of such External Public Debt to be certified by Banco Central and the amount of such revenues to be certified by the Republic); and

(iii)   the aggregate outstanding principal amount of all External Public Debt secured by Liens on Oil or Accounts Receivable (including the External Public Debt to be secured by the New Lien and other External Debt to be simultaneously secured by Liens on Oil or Accounts Receivable) is less than an amount equivalent to 55% of the aggregate revenues from the Export of Oil during the 12-month period preceding the creation of the New Lien (the amount of such External Public Debt to be certified by Banco Central and the amount of such revenues to be certified by the Republic),

provided that no New Lien will constitute a Permitted Lien if such New Lien is created while there is a default in the payment of principal of or interest on the Notes or on any bonds issued to implement the Financing Plan, unless the proceeds of the financing secured by such New Lien are used to make or secure on a ratable basis interest and principal payments due with respect to the Notes; provided further that, notwithstanding the foregoing, a New Lien will constitute a Permitted Lien if (a) such New Lien arises pursuant to an order of attachment, distraint or similar legal process arising in connection with court proceedings so long as the execution or enforcement thereof is effectively stayed and the claims secured thereby are being contested in good faith by appropriate proceedings, provided that such New Lien is released or discharged within one year of its imposition, or (b) such New Lien arises by operation of law (and not pursuant to any agreement) and has not been foreclosed or otherwise enforced against the Oil or Accounts Receivable to which such New Lien applies.

"Person" means any individual, corporation, partnership, association, joint stock company, joint venture, trust, unincorporated organization or any other juridical entity, or a sovereign state or government or any agency or political subdivision thereof.

"Public External Indebtedness" means any External Debt issued in a public offering or private placement of securities or other instruments of a type offered in capital markets, including, without limitation, any bonds, floating rate notes, commercial paper, certificates of deposit, debentures or other evidence of indebtedness.

**Interest**

The Notes bear interest from September 27, 2001 (the "Interest Commencement Date") at the rate of 13.625% per annum, payable semi-annually in arrear on February 15, and August 15 of each year, commencing on February 15, 2002. Each Note will cease to bear interest from the due date for redemption unless, upon due presentation, payment of principal is improperly withheld or refused. Where interest is to be calculated in respect of a period which is equal to or shorter than one year, it will be calculated on the basis of a 360-day year, consisting of twelve 30-day months.

If the Issuer shall fail to redeem the Notes when due, interest shall continue to accrue beyond the due date until actual redemption of the Notes but not beyond the fourteenth day after notice has been given by the Fiscal Agent that the funds required for redemption have been provided to the Fiscal Agent.

**Redemption and Purchase**

Unless the Notes previously are purchased and cancelled, the Notes will be redeemed at par on August 15, 2018.

The Republic may at any time purchase Notes in the open market or otherwise at any price.

**Payments and Agents**

The Principal of the Notes will be payable in U.S. dollars against surrender of such Notes at the office of the Paying Agent in The City of New York or, subject to applicable laws and regulations, at the office of any paying agent by United States dollar check drawn on, or by transfer to a United States dollar account maintained by the holder with, a bank located in The City of New York. Payment of any installment of interest on a Note will be made to the person in whose name such Note is registered at the close of business on the Regular Record Date (as defined below) immediately preceding the related Interest Payment Date (as defined on the face of the Notes). "Regular Record Date" means, with respect to any Interest Payment Date, the fifteenth day prior to such Interest Payment Date (whether or not a business day). Payment of such interest will be made by a United States dollar check drawn on a bank in The City of New York mailed to the holder at such holder's registered address or, upon application of any holder of at least $1,000,000 principal amount of Notes to the Paying Agent in The City of New York not later than the relevant Regular Record Date, by transfer to a United States dollar account maintained by such holder with a bank in The City of New York.

The Republic will agree that so long as any Note remains outstanding, it will maintain a registrar and paying agent having a specified office in The City of New York and, if and so long as the Notes are listed on the Luxembourg Stock Exchange and the rules of such exchange so require, a transfer and paying agent in Luxembourg. The Republic initially has appointed Bankers Trust Company as paying agent and transfer agent for the Notes. Subject to the foregoing, the Republic shall have the right at any time to terminate any such appointment and to appoint any other agents in such other places as it may deem appropriate upon notice in accordance with "Notices" below and in accordance with the terms and conditions set forth in the Fiscal Agency Agreement.

Payments in respect of the Notes shall be made in such coin or currency of the United States as at the time of payment shall be legal tender for the payment of public and private debts.

In any case where a payment date shall not be a business day at any place of payment, then the relevant payment need not be made on such date at such place, but may be made on the next succeeding day at such place which is a business day in the applicable jurisdiction, with the same force and effect as if made on the date for such payment, and no additional interest in respect of such payment date shall accrue for the period from and after such payment date.

In acting under the Fiscal Agency Agreement and in connection with the Notes, the Fiscal Agent and paying agent are acting solely as agents of the Republic and do not assume any obligation toward or relationship of agency or trust for or with the owner or holder of any Note except that any funds held by any such agent for payment of principal of or interest on the Notes shall be held in trust by it and applied as set forth in the Notes and Fiscal Agency Agreement, and shall be segregated from other funds held by it. For a description of the duties and the immunities and rights of the Fiscal Agent and Paying Agent under the Fiscal Agency Agreement, reference is made to the Fiscal Agency Agreement, and the obligations of the Fiscal Agent and Paying Agent to the owners or holders of Notes are subject to such immunities and rights.

Any amounts paid by the Republic under the Notes on any date shall be applied in the following order: first, the payment of any fees and expenses owing to CSFBi in relation to the Notes; second, to the payment of any interest accrued up to the date of such payment on any overdue amount under the Notes; third, to the payment of any interest on the principal of the Notes, provided that such interest is due and payable at such date; fourth, to the overdue payment of any principal amount under the Notes; fifth, to the payment of any outstanding principal amount of the Notes, provided that such principal is due and payable at such date; sixth, to the payment of any other amount due under the Notes.

**Additional Amounts**

Any and all payments by the Republic under the Notes or in respect thereof shall be made free and clear of and without deduction for any present or future taxes, levies, imposts, deductions, charges or withholdings, and all interest, penalties or other liabilities with respect thereto, imposed or levied at any time, excluding (i) in the case of each holder, taxes imposed or measured by its income or capital by the jurisdiction (or any political subdivision or taxing authority of such jurisdiction or any organization or federation of which such jurisdiction is at any time a member) under the laws of which such holder is organized, (ii) in the case of each holder, taxes imposed on or measured by its income or capital by the jurisdiction (or any political subdivision or taxing authority of such jurisdiction or any organization or federation of which such jurisdiction is at any time a member) in which the principal place of business or residence (as the case may be) of such holder is located, including, without limitation, any jurisdiction in which such holder is, through an office or fixed place of business, deemed to be doing business or maintaining a permanent establishment under any income tax treaty (unless such holder is so deemed as a result of a change of law in the Republic subsequent to the issue of the Notes) and (iii) all other taxes imposed by any jurisdiction (or any political subdivision or taxing authority of such jurisdiction or any organization or federation of which such jurisdiction is at any time a member) outside the Republic except such taxes which arise as a result of action taken by the Republic (all such non-excluded taxes, levies, imposts, deductions, charges, withholdings and liabilities being herein called "Taxes"). If the Republic shall be required by law to deduct any Taxes from or in respect of any sum payable under the Notes or in respect thereof to any holder, (a) the Republic shall pay such additional amounts ("Additional Amounts") as may be necessary so that after making all required deductions for Taxes (including deductions applicable to Additional Amounts payable under this Section (a)) such holder receives an amount equal to the sum it would have received had no such deductions been made, (b) the Republic will make such deductions and (c) the Republic will pay the full amount deducted to the relevant taxing authority or other authority in accordance with applicable law.

Except as otherwise provided herein, the Republic will pay (i) all stamp or other documentary taxes or duties, if any, which may be imposed by the Republic, the United Kingdom and the United States of America or any state or political subdivision thereof or taxing authority therein with respect to the original issue of the Notes or the exchange of interests in the global Notes for definitive Notes and (ii) all other excise or property taxes, charges or similar levies which arise in any jurisdiction from any payment made hereunder or from the execution or delivery of, or otherwise with respect to, the Notes, the Fiscal Agency Agreement, the Banco Central Undertaking or any other document or instrument referred to herein or in the Fiscal Agency Agreement, excluding (in the case of the preceding sub-clause (ii)) any such taxes imposed by any jurisdiction (or any political subdivision or taxing authority of such jurisdiction or any organization or federation of which such jurisdiction is at any time a member) outside the Republic except those resulting from, or required to be paid in connection with, the enforcement of the Notes, the Fiscal Agency Agreement, the Banco Central Undertaking or any such other document or instrument following the

occurrence of an Event of Default (all such non-excluded taxes, charges or levies described in sub-clauses (i) and (ii) above being herein called "Other Taxes").

The Republic will reimburse each holder for the full amount of Taxes or Other Taxes (including without limitation, any Taxes or Other Taxes imposed on amounts paid by such holder or any liabilities (including penalties, interest and expenses)) arising therefrom or with respect thereto, whether or not such Taxes or Other Taxes were correctly or legally asserted. Each holder which wishes to claim reimbursement for any such Taxes, Other Taxes or liabilities arising therefrom or with respect thereto will notify the Republic (through the Fiscal Agent) of its intention to pay the same as promptly as practicable and, if possible, prior to the date of such payment (such notice to describe such Taxes, Other Taxes or liabilities in reasonable detail). Such reimbursement shall be made within 30 days from the date such holder makes demand therefor.

Within 30 days after the date of any payment of Taxes (but in no event later than the date 45 days after the date such Taxes become due), the Republic will furnish to the Fiscal Agent the original (or a certified copy) of a receipt evidencing payment thereof. The obligations of the Republic described in this Section shall survive the payment of the Notes.

Whenever there is mentioned, in any context, the payment of the principal of or interest on, or in respect of, a Note, such mention shall be deemed to include mention of the payment of Additional Amounts to the extent that, in such context, Additional Amounts are, were or would be payable in respect thereof pursuant to the provisions of this Section, and express mention of the payment of Additional Amounts (if applicable) in any provisions hereof shall not be construed as excluding Additional Amounts in those provisions hereof where such express mention is not made.

## Events of Default

If any of the following events ("Events of Default") shall occur and be continuing:

(a)  the Republic fails to pay the principal amount of any Note when due and such failure continues for a period of 30 days; or

(b)  the Republic fails to pay interest or other amounts due on any Note when due, and such failure continues for a period of 30 days; or

(c) the Republic fails duly to perform or observe any term or obligation contained in the Notes (other than those specified in (a) or (b) above) or the Fiscal Agency Agreement and such failure shall continue unremedied for 90 days after written notice thereof shall have been given to the Republic at the specified office of the Fiscal Agent by any Noteholder; or

(d)  Banco Central fails to duly perform or observe any of its obligations contained in the Banco Central Undertaking to remit (as and to the extent provided therein) U.S. dollars in the amount of each payment of principal of, and interest on, the Notes upon payment by the Republic to Banco Central of the necessary Bolívares amount to make such payment, as provided in the Banco Central Undertaking, or on the occurrence and continuation of such a failure, Banco Central shall make any withdrawal of any amounts held on deposit with any holder or the Fiscal Agent that has notified Banco Central of its intention to set off from such amounts any amounts owed to such holder or the Fiscal Agent; or

(e)  Banco Central shall fail duly to perform or observe any term or obligation contained in the Banco Central Undertaking or the Fiscal Agency Agreement on its part to be performed or observed (other than those specified in (d) above) and such failure shall continue unremedied for 90 days after written notice thereof shall have been given to the Republic and Banco Central at the specified office of the Fiscal Agent by any holder; or

(f)  as a result of any default or event of default contained in any agreement or instrument related to any Public External Indebtedness (other than the Notes) of the Republic, Banco Central or any Governmental

DC_632762_4[1].DOC



Agency guaranteed by the Republic, any party to such agreement or instrument accelerates or declares to be due and payable any such Public External Indebtedness prior to the stated maturity thereof; or

(g) the Republic or Banco Central fails generally to pay or perform its obligations under Public External Indebtedness as they become due, or a moratorium on the payment or performance of such obligations shall be declared by the Republic or Banco Central; or

(h) there shall have been entered against the Republic or Banco Central a final judgment, decree or order by a court of competent jurisdiction from which no appeal may be made, or is made, for the payment of money in excess of U.S.$100,000,000 or its equivalent and 30 days shall have passed since the entry of any such order without it having been satisfied or stayed; or

(i) the Republic ceases to be a member of the IMF or ceases to be eligible to use the general resources of the IMF; or

(j) the validity of the Notes, the Fiscal Agency Agreement or the Banco Central Undertaking is contested by the Republic, Banco Central or any legislative, executive or judicial body or official of the Republic authorized in each case by law to contest the Republic or Banco Central denies any of its obligations thereunder to any of the Noteholders (whether by a general suspension of payments or a moratorium on the payment of debt or otherwise), or any constitutional provision, treaty, convention, law, regulation, official communique, decree, ordinance or policy of the Republic, or any final decision by any court in the Republic having jurisdiction purports to render any provision of the Notes, the Fiscal Agency Agreement or the Banco Central Undertaking invalid or unenforceable or purports to prevent or delay the performance or observance by the Republic or Banco Central of any of their respective obligations thereunder to any of the holders; or

(k) any constitutional provision, treaty, convention, law, regulation, ordinance, decree, consent, approval, license or other authority necessary to enable the Republic or Banco Central to make or perform its obligations under the Notes, the Fiscal Agency Agreement or the Banco Central Undertaking (as the case may be), or for the validity or enforceability thereof, expires, is withheld, revoked, terminated or otherwise ceases to remain in full force and effect, or is modified in a manner which adversely affects, or may reasonably be expected to affect, any rights or claims of any of the holders;

then holders of 25% or more in aggregate outstanding principal amount of the Notes may, by notice in writing given to the Fiscal Agent at its specified office, declare the Notes immediately due and payable whereupon the entire unpaid principal amount of the Notes, all interest accrued and unpaid thereon and all other amounts payable in respect of the Notes shall become and be forthwith due and payable, without presentation, demand, protest or further notice of any kind, all of which are hereby expressly waived by the Republic. Upon such declaration, the Fiscal Agent shall give notice thereof in the manner provided in the Fiscal Agency Agreement to the Republic by facsimile (with transmission confirmed) and to the holders of the Notes in accordance herewith. After any such declaration, if all amounts then due with respect to the Notes are paid (other than amounts due solely because of such declaration) and all other defaults with respect to the Notes are cured, such declaration may be annulled and rescinded by holders of more than 50% in aggregate outstanding principal amount of the Notes by written notice thereof to the Republic at the specified office of the Fiscal Agent.

If an event of default described in subparagraph (a) or (b) hereof shall have occurred and be continuing, Venezuela agrees to pay within 30 days after receipt of a demand therefor all reasonable and documented out-of-pocket expenses of the holders (including, without limitation, all reasonable counsel fees and court costs, stamp taxes, duties and fees) incurred in connection with any reasonable investigation of any such Event of Default or enforcement of the Securities.

## Prescription

Claims in respect of principal and interest will become void unless presentation for payment is made within a period of ten years in the case of principal and three years in the case of interest from the Relevant Date, to the extent permitted by applicable law. "Relevant Date" means whichever is the later of (i) the date on which any such payment first becomes due and (ii) if the full amount payable has not been received by the Fiscal Agent on or prior to such due date, the date on which, the full amount having been so received, notice to that effect shall have been given to the Noteholders.

DC_632762_4[1].DOC

**Replacement, Exchange and Transfer**

If any Note is lost, stolen, mutilated, defaced or destroyed it may be replaced at the specified office of the Fiscal Agent or any Paying Agent subject to all applicable laws and stock exchange requirements, upon payment by the claimant of the expenses incurred in connection with such replacement and on such terms as to evidence, security, indemnity and otherwise as the Republic may require. Mutilated or defaced Notes must be surrendered before replacements will be issued.

Upon the terms and subject to the conditions set forth in the Fiscal Agency Agreement, a Note or Notes may be exchanged for a Note or Notes of equal aggregate principal amount in such same or different authorized denominations as may be requested by the holder, by surrender of such Note or Notes at the office of the Fiscal Agent, or at the office of any transfer agent, together with a written request for the exchange.

Upon the terms and subject to the conditions set forth in the Fiscal Agency Agreement and subject to the restrictions on transfer described below under "Transfer Restrictions," a Note may be transferred in whole or in part in an authorized denomination by the holder or holders surrendering the Note for registration of transfer at the office of the Fiscal Agent or at the office of any transfer agent, duly endorsed by, or accompanied by a written instrument of transfer in form satisfactory to the Republic and the Fiscal Agent or any such transfer agent, as the case may be, duly executed by, the holder or holders thereof or its attorney-in-fact or attorneys-in-fact authorized in writing.

The costs and expenses of effecting any exchange or registration of transfer pursuant to the foregoing provisions, except for the expenses of delivery by other than regular mail (if any) and except, if the Republic shall so require, the payment of a sum sufficient to cover any tax or other governmental charge or insurance charges that may be imposed in relation thereto, will be borne by the Republic.

Notwithstanding the foregoing, the Fiscal Agent shall not register the transfer or exchange of Notes for a period of 15 days preceding the due date for any payment of principal of or interest on the Notes.

**Meetings and Amendments**

A meeting of holders of Notes may be called, as set forth below, at any time and from time to time to make, give or take any request, demand, authorization, direction, notice, consent, waiver or other action provided by the Fiscal Agency Agreement or the Notes to be made, given or taken by holders of Notes or to modify, amend or supplement the terms of the Notes or the Fiscal Agency Agreement as hereinafter provided.  The Republic may at any time call a meeting of holders of Notes for any such purpose to be held at such time and at such place as the Republic shall determine. Notice of every such meeting, setting forth the time and the place of such  meeting and in general terms the action proposed to be taken at such meeting, shall be given as provided in the terms of the Notes, not less than 30 nor more than 60 days prior to the date fixed for the meeting (provided that, in the case of any meeting to be reconvened after adjournment for lack of a quorum, such notice shall be given not less than 10 days nor more than 60 days prior to the date fixed for such meeting).  In case at any time the Republic or the holders of at least 25% in aggregate principal amount of the Outstanding (as defined in the Fiscal Agency Agreement) Notes shall, after the occurrence and during the continuance of any Event of Default under the Notes, have requested the Fiscal Agent to call a meeting of the holders of the Notes for any such purpose, by written request setting forth in reasonable detail the action proposed to be taken at the meeting, the Fiscal Agent shall call such meeting for such purposes by giving notice thereof.

The Fiscal Agent may make such reasonable and customary regulations consistent with the Fiscal Agency Agreement as it shall deem advisable for any meeting of holders of Notes with respect to the proof of the holding of the Notes, the adjournment and chairmanship of such meeting, the appointment and duties of inspectors of votes, certificates and other evidence of the right to vote, and such other matters concerning the conduct of the meeting as it shall deem appropriate.

With (a) the affirmative vote, in person or by proxy thereunto duly authorized in writing, of holders entitled to vote the lesser of (i) a majority in principal amount of the Outstanding Notes and (ii) 66 2/3% in

DC_632762_4[1].DOC

aggregate principal amount of the Outstanding Notes represented and voting at a meeting duly called and held as specified above, or (b) the written consent of the holders of a majority in aggregate principal amount of the Outstanding Notes, the Republic and the Fiscal Agent (and, in the case of the Banco Central Undertaking, with the agreement of Banco Central) may modify, amend or supplement the terms of the Fiscal Agency Agreement or the Notes and such holders may make, take or give any request, demand, authorization, direction, notice, consent, waiver or other action provided by the Fiscal Agency Agreement or the Notes to be made, given or taken by holders of the Notes; provided, however, that no such action may, without the consent or affirmative vote of the holder of each Note affected thereby, (A) change the due date for the payment of the principal, or the portion of such principal amount which is payable upon acceleration of the maturity, or for for the payment of any installment of interest, on such Note, (B) reduce the principal amount of any Note, the portion of such principal amount which is payable upon acceleration of the maturity of such Note, or the interest rate thereon or the premium payable upon redemption thereof, (C) change the coin or currency in which payment with respect to interest, any premium or principal in respect of any Note is payable, (D) reduce the proportion of the principal amount of the Notes the vote or consent of the holders of which is necessary to modify or supplement the Fiscal Agency Agreement or the terms and conditions of the Notes or to make, take or give any request, demand, authorization, direction, notice, consent, waiver or other action provided hereby or thereby to be made, taken or given, or (E) change the obligation of the Republic to pay Additional Amounts (as defined in "Taxation" and "Additional Amounts"). Any such modification, amendment or supplement shall be binding on all holders of the Notes.

The Republic and the Fiscal Agent (and, in the case of the Banco Central Undertaking, with the agreement of Banco Central) may, upon agreement among themselves, without the vote or consent of any holder of the Notes, modify, amend or supplement the Fiscal Agency Agreement or the Notes for the purpose of (i) adding to the covenants of Venezuela for the benefit of the holders of Notes, (ii) surrendering any right or power conferred upon Venezuela, (iii) securing the Notes pursuant to the requirements of the Notes or otherwise; (iv) correcting any defective provision contained in the Fiscal Agency Agreement, the Banco Central Undertaking or in the Notes; or (v) amending the Fiscal Agency Agreement or the Notes in any manner which the Republic, Banco Central and the Fiscal Agent, as the case may be, may determine, that such amendment shall not adversely affect the interest of any holder of Notes in any material respect.

**Notices**

Notices will be mailed to holders of Notes at their registered addresses and shall be deemed to have been given on the date of such mailing. DTC, Euroclear and Clearstream, Luxembourg will communicate such notices to their participants in accordance with their standard practices. In addition, all notices to holders of the Notes will be published, if and so long as the Notes are listed on the Luxembourg Stock Exchange and the rules of such exchange so require, in a daily newspaper of general circulation in Luxembourg. It is expected that such publication will be made in *The Luxemburger Wort*. If publication in accordance with the preceding sentence is not practicable, notice will be validly given if made in accordance with the requirements of the Luxembourg Stock Exchange.

**Currency Indemnity**

The U.S. dollar is the sole currency of account and payment for all sums payable by the Republic under or in connection with the Notes and the Coupons including damages. Any amount received or recovered in a currency other than U.S. dollars (whether as a result of, or of the enforcement of, a judgment, order of a court of any jurisdiction or for any other reason) by any Noteholder in respect of any sum expressed to be due to it from the Republic under any Note shall only constitute a discharge to the Republic to the extent of the U.S. dollar amount which the recipient is able to purchase in accordance with normal banking procedures with the amount so received or recovered in that other currency on the date of that receipt or recovery (or, if it is not practicable to make that purchase on that date, on the first date on which it is practicable to do so). If that U.S. dollar amount is less than the U.S. dollar amount expressed to be due to the recipient under any Note, the Republic shall indemnify it against any loss sustained by it as a result. In any event, the Republic shall indemnify the recipient against the cost of making any such purchase. For the purposes of this Section, it will be sufficient for the Noteholder to demonstrate that it would have suffered a loss had an actual purchase been made. These indemnities constitute a separate and independent obligation

from the Republic's other obligations, shall give rise to a separate and independent cause of action, shall apply irrespective of any indulgence granted by any Noteholder and shall continue in full force and effect despite any other judgment, order, claim or proof for a liquidated amount in respect of any sum due under any Note or any other judgment or order.

**Governing Law, Jurisdiction and Waiver of Immunity**

The Fiscal Agency Agreement and the Notes are governed by, and shall be construed in accordance with, the laws of the State of New York.

The Republic agrees that any suit, action or proceeding against it or its properties, assets or revenue with respect to the Notes (a "Related Proceeding") shall be brought exclusively in the courts of England that sit in London; in the Supreme Court of the State of New York, County of New York; in the United States District Court for the Southern District of New York; or in the courts of the Republic that sit in Caracas, as the person bringing such Related Proceeding may elect in its sole discretion, provided that if none of the courts specified above located in the country in which has elected to bring such Related Proceeding is a court that has jurisdiction over the subject matter or otherwise competent under applicable law to hear and determine such proceeding, such Related Proceeding may be brought in such other court located in such country as shall have jurisdiction of the subject matter or otherwise competent under applicable law to hear and determine such Related Proceedings, or if such Related Proceeding seeks relief or a judgment that is enforceable only against any of its properties, assets or revenues that are subject to the jurisdiction of any other court located in the countries listed above and is limited to the value of such properties, assets or revenues, such Related Proceeding may be brought in any such court (all such courts described in this sentence being called herein "Specified Courts"). The Republic also agrees that any judgment obtained in any of the Specified Courts arising out of any Related Proceeding may be enforced or executed in any Specified Court or any other court of competent jurisdiction whatsoever, and any judgment obtained in any such other court as a result of such enforcement or execution may be enforced or executed in any such other court of competent jurisdiction (all courts other than Specified Courts being herein called "Other Courts"), by means of a suit on the judgment or in any other manner provided by law. The Republic hereby irrevocably submits to the exclusive jurisdiction of each of the Specified Courts for the purpose of any Related Proceeding and, solely for the purpose of enforcing or executing any judgment referred to in the preceding sentence (a "Related Judgment"), of each Specified Court and each Other Court. The agreement made by the Republic in this section with respect to jurisdiction is made solely with respect to Related Proceedings and the enforcement or execution of Related Judgments and under no circumstances shall it be interpreted as a general agreement by the Republic with respect to proceedings unrelated to the Notes.

The Republic agrees that service of all writs, process and summonses in any Related Proceeding or any suit, action or proceeding to enforce or execute any Related Judgment brought against it in England may be made upon the officer in charge of the department of consular affairs at the Embassy of the Republic, presently located at One Cromwell Road, London SW7 2HW, England (the "London Process Agent") and service of all writs, process and summonses in any Related Proceeding or any suit, action or proceeding to enforce or execute any Related Judgment brought against it in the State of New York may be made upon the Consul General of the Republic or, in his or her absence or incapacity, any official of the Consulate of the Republic, presently located at 7 East 51st Street, New York, New York 10022, U.S.A. (the "New York Process Agent" and, together with the London Process Agent, the "Process Agents"), and the Republic irrevocably appoints each Process Agent as its agent to receive such service of any and all such writs, process and summonses, and agrees that the failure of any of the Process Agents to give any notice to it of any such service of process shall not impair or affect the validity of such service or of any judgment based thereon. The Republic agrees to maintain at all times an agent with offices in London to act as its London Process Agent, and an agent with offices in New York to act as its New York Process Agent as aforesaid (each such agent to be appointed by an irrevocable power of attorney hereto granted before a Venezuelan notary public). Nothing herein shall in any way be deemed to limit the ability to serve any such writs, process or summonses in any other manner permitted by applicable law.

DC_632762_4[1].DOC

The Republic irrevocably consents to and waives any objection which it may now or hereafter have to the laying of venue of any Related Proceeding brought in any of the Specified Courts or to the laying of venue of any suit, action or proceeding brought solely for the purpose of enforcing or executing any Related Judgment in any of the Specified Courts or Other Courts, and further irrevocably waives, to the fullest extent it may effectively do so, the defense of any inconvenient forum to the maintenance of any Related Proceeding or any such suit, action or proceeding in any such court.

To the extent that the Republic or any of its revenues, assets or properties shall be entitled, with respect of any Related Proceeding at any time brought against the Republic or any of its revenues, assets or properties in any jurisdiction in which any Specified Court is located, or with respect to any suit, action or proceeding at any time brought solely for the purpose of enforcing or executing any Related Judgment in any jurisdiction in which any Specified Court or Other Court is located, to any immunity from suit, from the jurisdiction of any such court, from attachment prior to judgment, from attachment in aid of execution of judgment, from execution of a judgment or from any other legal or judicial process or remedy, and to the extent that in any such jurisdiction there shall be attributed such an immunity, the Republic irrevocably agrees not to claim and irrevocably waives such immunity to the fullest extent permitted by the laws of such jurisdiction (including, without limitation, the Foreign Sovereign Immunities Act of 1976 of the United States) and consents generally for the purposes of the State Immunity Act of 1978 of the United Kingdom to the giving of any relief or the issue of any process in connection with any Related Proceeding or Related Judgment, provided that such agreement and waiver, insofar as it relates to any jurisdiction other than a jurisdiction in which a Specified Court is located, is given solely for the purpose of enabling the holders of the Notes to enforce or execute a Related Judgment. In addition, to the extent that the Republic or any of its revenues, assets or properties shall be entitled, in any jurisdiction, to any immunity from set-off, banker's lien or any similar right or remedy, and to the extent that there shall be attributed, in any jurisdiction, such an immunity, the Republic hereby irrevocably agrees not to claim and irrevocably waives such immunity to the fullest extent permitted by the laws of such jurisdiction with respect to any claim, suit, action, proceeding, right or remedy arising out of or in connection with the Notes.





DC_632762_4[1].DOC

## ABBREVIATIONS

The following abbreviations, when used in the inscription on the face of this instrument, shall be construed as though they were written out in full according to applicable laws or regulations:

TEN COM - as tenants  
           in common

UNIF GIFT  
MIN ACT - _____ Custodian_____  
      (Cust)     (Minor)

TEN ENT - as tenants by  
          the entirety

Under Uniform Gifts  
to Minors

JT TEN  - as joint tenants with  
          right of survivorship and  
          not as tenants in common

_____  
                   State

Additional abbreviations may also be used though not in the above list.

_____

FOR VALUE RECEIVED the undersigned hereby sell(s), assign(s) and transfer(s) unto

PLEASE INSERT SOCIAL SECURITY OR OTHER IDENTIFYING NUMBER OF ASSIGNEE

_____

_____

_____  
      Please print or typewrite name and address  
        including postal zip code of assignee

_____

the within note and all rights thereunder, hereby irrevocably constituting and appointing _____ attorney to transfer said note on the books of the Issuer, with full power of substitution in the premises.



DC_632762_4[1].DOC

Dated:

_____        NOTICE:  The signature to this assignment must correspond with the name as written upon the face of the within instrument in every particular, without alteration or enlargement or any change whatever.



DC_632762_4[1].DOC