# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

CONTRARIAN CAPITAL MANAGEMENT,
L.L.C., CONTRARIAN CAPITAL FUND I,
L.P., CONTRARIAN DOME DU GOUTER
MASTER FUND, LP, CONTRARIAN
CAPITAL SENIOR SECURED, L.P.,
CONTRARIAN EM II, LP, CONTRARIAN
EMERGING MARKETS, L.P.,  POLONIUS
HOLDINGS, LLC, and CONTRARIAN
FUNDS, L.L.C.,

Plaintiffs,

v.

BOLIVARIAN REPUBLIC OF VENEZUELA,

Defendant.

Case No. 19 Civ. 11018 [rel. Nos. 19
Civ. 3123 & 18 Civ. 11940]

Hon. Analisa Torres

## PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR A STAY AND REPLY IN FURTHER SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

Steven F. Molo
Justin M. Ellis
Lauren F. Dayton
MOLOLAMKEN LLP
430 Park Avenue, 6th Floor
New York, NY  10022
Tel.: (212) 607-8170
Fax: (212) 607-8161
smolo@mololamken.com

Elizabeth K. Clarke (admitted *pro hac vice*)
MOLOLAMKEN LLP
300 N. LaSalle Street, Suite 5350
Chicago, IL  60654
Tel.: (312) 450-6700
Fax: (312) 450-6701

*Counsel for Plaintiffs*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ................................................................................................................ 1

ARGUMENT ...................................................................................................................... 1

I.  A Stay Is Not Justified .............................................................................................. 1

   A.  The Court Should Not Exercise Its Inherent Power To Stay This Case ................ 2

   B.  International Comity Does Not Justify a Stay ...................................................... 10

   C.  The International Law Doctrine of Necessity Does Not Justify a Stay ................ 13

   D.  The Republic's "Impossibility" Defense Does Not Justify a Stay ....................... 17

II.  OFAC Regulations Do Not Prevent Entry of Judgment ........................................... 17

   A.  OFAC Regulations Do Not Bar Entering a Money Judgment ............................. 18

   B.  Entering Judgment Would Not Affect the Republic's Property Interests ............. 20

   C.  OFAC Cannot Restrict the Court's Article III Power To Enter Judgment ........... 24

III.  New York Statutory Prejudgment Interest Applies Here ................................. 26

IV.  There Is No Basis for a "Fraud-Prevention" Injunction ................................... 28

CONCLUSION .................................................................................................................. 30

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*407 E. 61st Garage, Inc. v. Savoy Fifth Ave. Corp.*,
    23 N.Y.2d 275 (1968) ..................................................................................17

*Allied Bank Int'l v. Banco Credito Agricola de Cartago*,
    757 F.2d 516 (2d Cir. 1985)...................................................................11, 12

*Am. Airways Charters, Inc. v. Regan*,
    746 F.2d 865 (D.C. Cir. 1984) .................................................................26

*Am. Int'l Grp. v. Islamic Republic of Iran*,
    657 F.2d 430 (D.C. Cir. 1981) .................................................................20

*Bachi-Reffitt v. Reffitt*,
    802 F. App'x 913 (6th Cir. 2020) ............................................................21

*Barkanic v. Gen. Admin. of Civil Aviation of China*,
    923 F.2d 957 (2d Cir. 1991)................................................................26, 27

*Batra v. Bd. of Regents of Univ. of Neb.*,
    79 F.3d 717 (8th Cir. 1996) .....................................................................21

*Bora v. N.Y. State Dep't of Soc. Servs.*,
    152 A.D.2d 10 (3d Dep't 1989) ...............................................................21

*Can. S. Ry. Co. v. Gebhard*,
    109 U.S. 527 (1883).................................................................................11

*Capak v. Epps*,
    No. 18 Civ. 4325, 2018 WL 6726553 (S.D.N.Y. Dec. 21, 2018)............7

*Chambers v. NASCO, Inc.*,
    501 U.S. 32 (1991)...................................................................................25

*Clinton v. Jones*,
    520 U.S. 681 (1997)...................................................................................5

*Cole v. Macklowe*,
    99 A.D.3d 595 (1st Dep't 2012) ..............................................................23

*Colo. River Water Conservation Dist. v. United States*,
    424 U.S. 800 (1976)...................................................................................2

*Comet Enters. Ltd. v. Air-A-Plane Corp.*,
    128 F.3d 855 (4th Cir. 1997) ...................................................................26

*Cruden v. Bank of N.Y.*,
   957 F.2d 961 (2d Cir. 1992)............................................................................5

*Cruz v. United States*,
   387 F. Supp. 2d 1057 (N.D. Cal. 2005) ......................................................11

*CTI-Container Leasing Corp. v. Uiterwyk Corp.*,
   685 F.2d 1284 (11th Cir. 1982) ....................................................................4

*Dames & Moore v. Regan*,
   453 U.S. 654 (1981)....................................................................20, 24, 25, 26

*Dean Witter Reynolds, Inc. v. Fernandez*,
   741 F.2d 355 (11th Cir. 1984) ...............................................................18, 20

*Dependable Highway Express, Inc. v. Navigators Ins. Co.*,
   498 F.3d 1059 (9th Cir. 2007) ......................................................................4

*eBay v. MercExchange, LLC*,
   547 U.S. 388 (2006)....................................................................................29

*FCS Advisors, Inc. v. Fair Fin. Co.*,
   605 F.3d 144 (2d Cir. 2010).........................................................................27

*In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*,
   948 F.3d 457 (1st Cir. 2020)........................................................................21

*Finanz AG Zurich v. Banco Economico S.A.*,
   192 F.3d 240 (2d Cir. 1999).........................................................................13

*First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*,
   462 U.S. 611 (1983).....................................................................................27

*FTC v. Standard Oil of Cal.*,
   449 U.S. 232 (1980)..................................................................................7, 29

*Hanson v. Denckla*,
   357 U.S. 235 (1958).....................................................................................19

*Hazen First State Bank v. Speight*,
   888 F.2d 574 (8th Cir. 1989) ........................................................................5

*Hilton v. Guyot*,
   159 U.S. 113 (1895).....................................................................................10

*Jesner v. Arab Bank, PLC*,
   138 S. Ct. 1386 (2018)...........................................................................14, 15

*Novara ex rel. Jones v. Cantor Fitzgerald, LP*,
  20 A.D.3d 103 (3d Dep't 2005) ...........................................................................21

*Jones v. Town of Carroll*,
  177 A.D.3d 1297 (4th Dep't 2019) ......................................................................21

*Landis v. N. Am. Co.*,
  299 U.S. 248 (1936) ...................................................................................2, 3, 8

*Legacy Agency, Inc. v. Genske*,
  No. 19 Civ. 2951, 2020 WL 377705 (S.D.N.Y. Jan. 23, 2020) ..............................2

*Leopard Marine & Trading, Ltd. v. Easy St. Ltd.*,
  896 F.3d 174 (2d Cir. 2018) ...............................................................................12

*Licci v. Lebanese Canadian Bank, SAL*,
  No. 08 Civ. 7253, 2018 WL 5090972 (S.D.N.Y. Oct. 3, 2018) ..............................7

*Lightwater Corp. v. Republic of Argentina*,
  No. 02 Civ. 3804, 2003 WL 1878420 (S.D.N.Y. Apr. 14, 2003) .............................4

*Lockyer v. Mirant Corp.*,
  398 F.3d 1098 (9th Cir. 2005) ..............................................................................7

*Louis Vuitton Malletier S.A. v. LY USA, Inc.*,
  676 F.3d 83 (2d Cir. 2012) ......................................................................... *passim*

*Lyon v. Singer*,
  339 U.S. 841 (1950) ............................................................................................18

*Mehmet v. Add2Net, Inc.*,
  66 A.D.3d 437 (1st Dep't 2009) ..........................................................................23

*Merrill Lynch & Co., Inc. v. Allegheny Energy, Inc.*,
  500 F.3d 171 (2d Cir. 2007) ...............................................................................23

*Nagahi v. I.N.S.*,
  219 F.3d 1166 (10th Cir. 2000) ..........................................................................26

*New England Ins. Co. v. Healthcare Underwriters Mut. Ins. Co.*,
  352 F.3d 599 (2d Cir. 2003) ...............................................................................28

*New England Merchs. Nat'l Bank v. Iran Power Generation & Transmission Co.*,
  508 F. Supp. 47 (S.D.N.Y. 1980) ..........................................................................8

*NML Capital v. Republic of Argentina*,
  17 N.Y.3d 250 (2011) ..........................................................................................27

*Ofosu v. McElroy*,
   98 F.3d 694 (2d Cir. 1996)..................................................................................2, 4

*OI European Grp. B.V. v. Bolivarian Republic of Venezuela*,
   419 F. Supp. 3d 51 (D.D.C. 2019) ............................................................................4

*Oliva v. Dep't of Justice*,
   433 F.3d 229 (2d Cir. 2005)....................................................................................14

*In re Pandeff*,
   201 B.R. 865 (Bankr. S.D.N.Y. 1996) ....................................................................19

*Pravin Banker Assocs., Ltd. v. Banco Popular del Peru*,
   109 F.3d 850 (2d Cir. 1997)..................................................................4, 9, 12, 13

*Pravin Banker Assocs., Ltd. v. Banco Popular del Peru*,
   165 B.R. 379 (S.D.N.Y. 1994)..........................................................................11, 13

*Red Tree Invs., LLC v. Petroleos de Venezuela, S.A.*,
   No. 19 Civ. 2523, 2020 WL 209276 (S.D.N.Y. Jan. 14, 2020)............................4, 5

*Royal & Sun All. Ins. Co. of Can. v. Century Int'l Arms, Inc.*,
   466 F.3d 88 (2d Cir. 2006)..................................................................................2, 12

*Schwartz v. Liberty Mut. Ins. Co.*,
   539 F.3d 135 (2d Cir. 2008)....................................................................................27

*Silverstein v. Penguin Putnam, Inc.*,
   368 F.3d 77 (2d Cir. 2004)......................................................................................29

*In re Simon*,
   153 F.3d 991 (9th Cir. 1998) ..................................................................................11

*Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa*,
   482 U.S. 522 (1987).................................................................................................12

*Sosa v. Alvarez-Machain*,
   542 U.S. 692 (2004)..........................................................................................13, 14

*Stevenson v. Blytheville Sch. Dist. #5*,
   800 F.3d 955 (8th Cir. 2015) ..................................................................................21

*Stewart v. I.N.S.*,
   762 F.2d 193 (2d Cir. 1985)....................................................................................29

*Sumitomo Corp. v. Parakopi Compania Maritima, S.A.*,
   477 F. Supp. 737 (S.D.N.Y. 1979) .........................................................................11

*Tagle v. Regan,*
    643 F.2d 1058 (5th Cir. 1981) ............................................................................20

*Tarros S.p.A. v. United States,*
    982 F. Supp. 2d 325 (S.D.N.Y. 2013) ...............................................................14

*Tenaris S.A. v. Bolivarian Republic of Venezuela,*
    No. 18 Civ. 1371, 2020 WL 3265476 (D.D.C. June 17, 2020) ...................... *passim*

*The Paquete Habana,*
    175 U.S. 677 (1900) ............................................................................................14

*U.W. Marx, Inc. v. Koko Contracting, Inc.,*
    124 A.D.3d 1121 (3d Dep't 2015) .....................................................................23

*United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc.,*
    216 F. Supp. 2d 198 (S.D.N.Y. 2002) ...............................................................12

*United States v. Trinidad,*
    839 F.3d 112 (1st Cir. 2016) ..............................................................................14

*United States v. Yousef,*
    327 F.3d 56 (2d Cir. 2003)..................................................................................14

*Westinghouse Credit Corp. v. D'Urso,*
    278 F.3d 138 (2d Cir. 2002) ...............................................................................27

*Westinghouse Credit Corp. v. D'Urso,*
    371 F.3d 96 (2d Cir. 2004) .................................................................................22

*Wis. Gas Co. v. FERC,*
    758 F.2d 669 (D.C. Cir. 1985) ...........................................................................29

**Statutes**

28 U.S.C. § 1606 .......................................................................................................14, 27

International Emergency Economic Powers Act, Pub. L. 95-223,
    91 Stat. 1625 (1977), codified as amended at 50 U.S.C. § 1701 *et seq.* ................25

**Regulations and Rules**

31 C.F.R. § 591.202(a) ...................................................................................................19

31 C.F.R. § 591.309 .......................................................................................................21

31 C.F.R. § 591.310 ..................................................................................................20, 23

31 C.F.R. § 591.501 .........................................................................................................6

Exec. Order No. 12294, 46 Fed. Reg. 14,111 (Feb. 24, 2011) .................................................24

Fed. R. Civ. P. 7(b)(1)........................................................................................................29

Fed. R. Civ. P. 56(c)(2)......................................................................................................29

Fed. R. Civ. P. 69 ..............................................................................................................19

N.Y. C.P.L.R. 5001(a) .......................................................................................................28

**Other Authorities**

Anne O. Krueger & Sean Hagan, *Sovereign Workouts: An IMF Perspective*,
  6 Chi. J. Int'l L. 203 (2005) .............................................................................................22

*Argentine Necessity Case*, Bundesverfassungsgericht May 8, 2007 (Ger.),
  https://bit.ly/30KlOFd ....................................................................................................16

Articles on Responsibility of States for Internationally Wrongful Acts,
  Art. 25, https://bit.ly/32Y5KlX .......................................................................................16

Articles on Responsibility of States for Internationally Wrongful Acts,
  Art. 25.1(a), https://bit.ly/32Y5KlX ................................................................................16

Articles on Responsibility of States for Internationally Wrongful Acts,
  Art. 25.2(a), https://bit.ly/32Y5KlX ................................................................................17

Articles on Responsibility of States for Internationally Wrongful Acts,
  Art. 33, https://bit.ly/32Y5KlX .......................................................................................16

*Cont. Cas. Co. v. Argentine Republic*, ICSID Case No. ARB/03/9, Award
  (Sept. 5, 2008)..................................................................................................................16

Convention on the Settlement of Investment Disputes Between States and
  Nationals of Other States ("ICSID Convention"), Art. 53,
  https://bit.ly/2X0xAdA ...................................................................................................14

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
  No. 17 Misc. 151, Dkt. 157 (D. Del. Dec. 19, 2019)..........................................................6

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
  No. 17 Misc. 151, Dkt. 174 (D. Del. May 22, 2020)...........................................................6

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
  No. 17 Misc. 151, Dkt. 212 (D. Del. July 16, 2020)...........................................................6

*Dresser-Rand Co. v. Petroleos de Venezuela, S.A.*,
  No. 19 Civ. 2689, Dkt. 78 (S.D.N.Y. May 29, 2020).....................................................6, 19

Elliot Abrams, *A New Path to Venezuelan Democracy*, Wall. St. J.
(Mar. 31, 2020) ...................................................................................................................3

Eric Posner, Stephen Choi, & Mitu Gulaiti, *Pricing Terms in Sovereign Debt
Contracts*, John M. Olin L. & Econ. Working Paper No. 541 (2010),
https://bit.ly/2CHt0tB.......................................................................................................9

*Gabcikovo-Nagymaros Project (Hungary/Slovakia)*, Judgment,
1997 I.C.J. Reports 7 (Sept. 25)......................................................................................16

*North Sea Continental Shelf*, Judgment, 1969 I.C.J. Rep. 3 (Feb. 20) .........................................16

*Pharo Gaia Fund Ltd. v. Bolivarian Republic of Venezuela*,
No. 19 Civ. 3123, Dkt. 49 (S.D.N.Y. Feb. 27, 2020) ...........................................................29

Restatement (Second) of Trusts §86 (1959)......................................................................21

Restatement (Third) of the Foreign Relations Law of the United States §102(b) .......................15

Restatement (Third) of the Foreign Relations Law of the United States §102(c).................15, 16

*United States v. Ortega*,
No. 18 Cr. 20685, Dkt. 193 (S.D. Fla. May 8, 2020) .........................................................3, 11

U.S. Dep't of State, "Democratic Transition Framework for Venezuela – Fact
Sheet" (Mar. 31, 2020), https://bit.ly/2WuCGOU ...................................................................3

U.S. Treasury, FAQ No. 808, https://bit.ly/2ZgbogX ............................................................9, 19

## INTRODUCTION

The Republic concedes liability.  It does not dispute its obligations to make payments under the bonds at issue, its failure to make those payments, or the amount of payments it missed.  Instead, the only defense the Republic offers is that OFAC regulations purportedly strip the Court of its fundamental power to resolve a case where it unquestionably has jurisdiction.  That argument fails for multiple reasons.  And the Republic cannot show any basis either to escape the mandatory prejudgment interest it owes under New York law or to enjoin Plaintiffs from transferring their bonds.  The Court should grant Plaintiffs' motion for summary judgment.

The Republic's motion for a stay also fails.  Whether framed under the Court's inherent powers, comity, international law, or "impossibility," the Republic's arguments for pausing this case all rest on the same claim – that it should be allowed to put off its obligations indefinitely until it can someday, somehow take power in Venezuela and restructure its debts.  But the Republic cannot offer any proof either that it will assume power anytime soon or that its hypothetical restructuring once it assumes power would justify staying this case.  The Court should deny the Republic's motion and enter judgment for Plaintiffs.

## ARGUMENT

### I.      A STAY IS NOT JUSTIFIED

The Republic asks for a stay on four grounds.  It asserts that the Court should use its inherent power to stay this case indefinitely because it hopes to voluntarily restructure its bonds if it gains control of Venezuela.  Def. Br. 8-13.  For the same reason, the Republic argues that the Court should stay the case as a matter of comity.  *Id.* at 13-15.  It claims that the international-law doctrine of "necessity" permits it to avoid obligations under contracts that it agreed would be governed by New York law.  *Id.* at 15-17.  And it claims to lack the resources necessary to pay its debts.  *Id.* at 17-18.  All of those arguments fail.

### A.    The Court Should Not Exercise Its Inherent Power To Stay This Case

A stay based on the Court's inherent powers is an "extraordinary remedy." *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 98 (2d Cir. 2012).  That is because this Court has a "'virtually unflagging obligation to exercise the jurisdiction given [it].'" *Royal & Sun All. Ins. Co. of Can. v. Century Int'l Arms, Inc.*, 466 F.3d 88, 91 (2d Cir. 2006) (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)) (ellipsis omitted). Accordingly, a movant seeking such a stay faces a "heavy burden."  *Legacy Agency, Inc. v. Genske*, No. 19 Civ. 2951, 2020 WL 377705, at *2 (S.D.N.Y. Jan. 23, 2020); *see Landis v. N. Am. Co.*, 299 U.S. 248, 256 (1936) (the "burden of making out the justice and wisdom" of a stay "l[ies] heavily on" the movant); *Louis Vuitton*, 676 F.3d at 97.  In particular, where, as here, a stay is sought to defer to a foreign proceeding, the Court's task "is not to articulate a justification *for* the exercise of jurisdiction, but rather to determine whether exceptional circumstances exist that justify the surrender of that jurisdiction." *Royal & Sun All.*, 466 F.3d at 93.  A party seeking a stay must also "show[] entitlement to equitable relief." *Ofosu v. McElroy*, 98 F.3d 694, 699, 703 (2d Cir. 1996).  Moreover, stays must be strictly limited:  A stay is "immoderate and hence unlawful unless so framed in its inception that its force will be spent within reasonable limits." *Landis*, 299 U.S. at 257.  And a stay's length must be justified at the time it is entered; a court may not enter an open-ended stay simply "because conceivably the court that made it may be persuaded at a later time to undo what it has done." *Id.*

The Republic cannot possibly meet those demanding standards.  The Republic's proposed stay is indefinite and thus unlawful.  And equity does not permit the Republic to use a stay to avoid its contractual obligations in favor of a hypothetical future restructuring.

### 1.    The Republic's Request for an Indefinite Stay Is Improper

At the threshold, the Republic's motion fails because it seeks an indefinite and

immoderate stay.  *Landis*, 299 U.S. at 255.  The Republic asks to stay this case until either it takes control of Venezuela and has a "reasonable opportunity" to pursue a restructuring, or until OFAC sanctions are lifted.  Def. Br. 7-8.[1]  That proposed stay lacks any reasonable limits.

The Republic admits that it will not start any hypothetical restructuring until it controls Venezuela's territory and institutions.  Def. Br. 7-8.  Nor does the U.S. plan to lift sanctions until a transition of power in Venezuela occurs.  *See* U.S. Dep't of State, "Democratic Transition Framework for Venezuela – Fact Sheet" (Mar. 31, 2020), https://bit.ly/2WuCGOU (proposing to lift sanctions once an interim "Council of State" takes power).  As the United States has observed, "[a]bsent former President Maduro relinquishing control to allow for free and fair legislative and presidential elections," the current situation is "unlikely to change any time in the near future."  Gov't's Resp. In Opp. To PDVSA's Mot. For Victim Status and Restitution, *United States v. Ortega*, No. 18 Cr. 20685, Dkt. 193 at 2 n.2 (S.D. Fla. May 8, 2020).  In fact, the U.S. government does not even support the Republic taking power.  Instead, the State Department's Special Representative for Venezuela has advocated that "***both*** Mr. Maduro . . . and Juan Guaidó" "step aside" and that the country conduct fresh elections.  Elliot Abrams, *A New Path to Venezuelan Democracy*, Wall. St. J. (Mar. 31, 2020), https://on.wsj.com/38NK7FV (emphasis added); *see also* U.S. Dep't of State, "Democratic Transition Framework for Venezuela," *supra*.  Because nobody knows if the Republic will ever assume power – let alone when it could start a hypothetical restructuring process – its proposed stay is "immoderate and hence unlawful."  *Landis*, 299 U.S. at 257.

Two courts have already refused to stay cases against the Republic in favor of its

---

[1] At most, the Republic proposes in a footnote that the parties check in with the Court every four months.  *Id.* at 18 n.35.

purported restructuring.  *Red Tree Invs., LLC v. Petroleos de Venezuela, S.A.*, No. 19 Civ. 2523, 2020 WL 209276, at *3 (S.D.N.Y. Jan. 14, 2020); *OI European Grp. B.V. v. Bolivarian Republic of Venezuela*, 419 F. Supp. 3d 51, 56 (D.D.C. 2019).  Even if the Republic does take power, those courts have recognized, it "'may take years to stabilize the country and fully transition to another political regime' in Venezuela." *Red Tree*, 2020 WL 209276, at *3 (quoting *OI*, 419 F. Supp. 3d at 56).  And even if the Republic takes power, **and** even if it stabilizes Venezuela, there is no way to predict when – or even if – it will start a restructuring.  Nor is it certain whether that hypothetical restructuring would offer creditors a meaningful alternative to litigation.  Under the circumstances, it is neither "'appropriate nor fair to the plaintiff to stay this case indefinitely until transition to the Guaidó government is completed.'" *Id.* (alterations omitted).

Courts routinely reach the same result when a sovereign seeks an indefinite stay to renegotiate its debt.  *See, e.g.*, *Pravin Banker Assocs., Ltd. v. Banco Popular del Peru*, 109 F.3d 850, 855 (2d Cir. 1997) (affirming denial of "an indefinite stay to allow [a sovereign] to complete its efforts to renegotiate its foreign debt"); *see also Lightwater Corp. v. Republic of Argentina*, No. 02 Civ. 3804, 2003 WL 1878420, at *4 (S.D.N.Y. Apr. 14, 2003) (denying stay where there was "no assurance about the success or the timing of [restructuring] negotiations").  Other courts have likewise denied stays based on other proceedings that have not begun, *see, e.g.*, *Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1067 (9th Cir. 2007), or where "[i]t is difficult to accurately predict the time" such proceedings will take, *CTI-Container Leasing Corp. v. Uiterwyk Corp.*, 685 F.2d 1284, 1288 (11th Cir. 1982).  The Court should follow those cases and deny the Republic's motion.

### 2.    Equity Requires Denying The Republic's Proposed Stay

A stay is also not warranted as a matter of equity.  *See Ofosu*, 98 F.3d at 703 (a party seeking a stay must "show[ ] entitlement to equitable relief"); *see also Louis Vuitton*, 676 F.3d at

97.  The Republic cites district court cases laying out a multi-factor test for granting stays.  Def. Br. 8.  As the Republic acknowledges, however, such tests "can do no more than act as a rough guide."  *Louis Vuitton*, 676 F.3d at 99.  Instead, the Court must use its "studied judgment . . . based on the particular facts before it and the extent to which such a stay would work a hardship, inequity, or injustice to a party, the public or the court."  *Id.*

Two courts have already found that equity does not support allowing the Republic to frustrate its creditors' rights in support of a hypothetical future restructuring.  *Red Tree*, 2020 WL 209276, at *3; *OI*, 419 F. Supp. 3d at 56.  The same result is required here.  The Republic does not contest that it had a duty to make payments on its bonds to Plaintiffs or that it breached its duty.  Dkt. 56-1 (Republic's Rule 56.1 response) ¶¶ 22-149.  It likewise does not deny that this Court is a proper forum to enforce its obligations, having waived defenses based on personal jurisdiction and sovereign immunity.  *Id.* ¶¶ 14-19; *see* Ellis Decl. Ex. J at 26-28; Ex. K at 28-29.  Instead, the Republic asks for an indefinite stay that would effectively rewrite the contracts to avoid liability until any restructuring begins.  Equity does not permit rewriting contracts in that way.  *See Cruden v. Bank of N.Y.*, 957 F.2d 961, 976 (2d Cir. 1992) (a court may not "redraft a contract to accord with its instinct for the dispensation of equity upon the facts of a given case"); *see also Hazen First State Bank v. Speight*, 888 F.2d 574, 576 (8th Cir. 1989) (a stay should not "enlarge the rights of individuals under a contract").  The Court should honor the FAAs and Bonds as written and permit Plaintiffs to vindicate their rights under those contracts now.

In any event, each of the factors the Republic cites weighs decisively against a stay:

### a.    *Plaintiffs' Interests*

"Like every other citizen who properly invokes [the Court's] jurisdiction," Plaintiffs have a compelling due process "right to an orderly disposition of [their] claims."  *Clinton v. Jones*, 520 U.S. 681, 710 (1997); *see also Louis Vuitton*, 676 F.3d at 103.  Plaintiffs' interest is

especially compelling here because the Republic does not deny its liability on the Bonds or (with the exception of prejudgment interest) the damages it owes.

A stay would be particularly prejudicial because other cases against the Republic and its instrumentalities are going forward now.  At this time, there are over 30 cases pending in federal courts with over $20 billion at stake against the Republic, its state-owned oil company PDVSA, or other affiliated entities.  *See* 7/27 Ellis Decl. Ex. 1 (listing cases).  Several of those cases have already proceeded to judgment.[2]  To stay this case indefinitely while other cases are proceeding would unfairly prejudice Plaintiffs vis-à-vis other creditors.  *See Louis Vuitton*, 676 F.3d at 103.

The Republic claims that a stay will not harm Plaintiffs because OFAC regulations purportedly prohibit both entering judgment and enforcing judgment.  Def. Br. 9-10.  The Republic's argument that regulations bar entering judgment is wrong.  *See* pp. 17-26, *infra*.  And while OFAC may restrict judgment enforcement for the time being, creditors with judgments may still apply for specific licenses to enforce those judgments on a case-by-case basis.  *See* 31 C.F.R. § 591.501.  Other judgment creditors have already begun the application process.  *See, e.g.*, *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, No. 17 Misc. 151 ("*Crystallex*"), Dkt. 157 at 7 (D. Del. Dec. 19, 2019) (announcing that Crystallex "will seek OFAC approval" for a license); *see also* Statement of Interest of the U.S., *Crystallex*, Dkt. 212 at 10 (D. Del. July 16, 2020) (noting that other creditors have applied for licenses regarding Venezuelan assets).  Plaintiffs would be left behind if other creditors can apply for and possibly receive licenses while

---

[2] *See, e.g.*, *Tenaris S.A. v. Bolivarian Republic of Venezuela*, No. 18 Civ. 1371, 2020 WL 3265476, at *4 (D.D.C. June 17, 2020); *Dresser-Rand Co. v. Petroleos de Venezuela, S.A.*, No. 19 Civ. 2689, Dkt. 78 (S.D.N.Y. May 29, 2020) (ordering judgment against PDVSA subsidiary); Mem. Order, *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, No. 17 Misc. 151, Dkt. 174 (D. Del. May 22, 2020) (lifting stay on already-entered judgment and setting briefing schedule for judgment-execution issues).

Plaintiffs are stayed from even obtaining a judgment.  There is no reason to prevent Plaintiffs from receiving a judgment simply because additional steps are needed to enforce it.

The Republic also suggests that Plaintiffs' interest in a judgment is somehow less because they are "sophisticated market participants who understood . . . the chances of prompt repayment were slim."  Def. Br. 9.  Given that the Republic never sought discovery about what Plaintiffs supposedly "understood," the Republic's argument is based on sheer speculation.  Regardless, what investors believed is no reason for the Republic to escape paying its debts – especially where, as here, the Republic does not contest what it owes.

### b.  *The Republic's Interests*

By contrast, the Republic has no legitimate interest in a stay.  All of the Republic's arguments are based on its purported plan to restructure its debt.  Without control of Venezuela's territory or institutions, however, the Republic can only point to tentative steps such as announcing its intentions or advertising for financial advisors.  Def. Br. 5-6.  The Republic can offer no assurances that a restructuring will ever happen, let alone when it would happen or what form it would take.  Its speculation about a possible restructuring is simply not enough to support a stay.  *See Capak v. Epps*, No. 18 Civ. 4325, 2018 WL 6726553, at *4 (S.D.N.Y. Dec. 21, 2018) (courts "will not grant a stay based on mere speculation"); *Licci v. Lebanese Canadian Bank, SAL*, No. 08 Civ. 7253, 2018 WL 5090972, at *2 (S.D.N.Y. Oct. 3, 2018) (similar).

The Republic also warns about a supposed "onslaught of further proceedings" by other bondholders if this case goes forward.  Def. Br. 10.  But the fact that the Republic has other unpaid debts for which it may face suit is hardly a legitimate reason to put off its obligations here.  Being required to defend litigation, by itself, is not the sort of clear hardship or inequity that justifies a stay.  *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005); *see also FTC v. Standard Oil of Cal.*, 449 U.S. 232, 244 (1980) (defending a lawsuit is not irreparable harm).

Regardless, given that numerous other suits have already proceeded to judgment or enforcement, a stay in this case will not affect whether other bondholders will sue. *See* p. 6, *supra*.

The Republic is also wrong to claim (at 10-11) that a judgment would cause a "scramble" for its assets. As another court recognized when entering judgment against the Republic, "[b]ecause [any plaintiffs] will need to obtain OFAC approval before they can enforce" a judgment, "there is no need for the Court to stay [such a] judgment." *Tenaris*, 2020 WL 3265476, at *4. Moreover, because OFAC "is well-versed in weighing the competing interests involved in enforcing judgments against other nations," OFAC "is the more appropriate body to make [any] decision whether to stay the enforcement of the award." *Id.*; *see also New England Merchs. Nat'l Bank v. Iran Power Generation & Transmission Co.*, 508 F. Supp. 47, 49 (S.D.N.Y. 1980).

Finally, the Republic cites the humanitarian crisis still unfolding in Venezuela. Def. Br. 12. Nobody doubts that crisis's severity or its terrible human cost. However, it has no bearing on the Republic's stay request. Given that the Republic does not control Venezuela, this case will have no effect on the Republic's ability to address problems in a country it does not govern. Moreover, because OFAC regulations bar judgment enforcement without a specific license, merely entering judgment will not affect the Republic's ability to aid its people. And if policy decisions must be made in this area, they should be made by OFAC, not the Court. *Tenaris*, 2020 WL 3265476, at *4; *see also New England Merchs.*, 508 F. Supp. at 49.

### c.     *The Court's Interest*

The Court's interest in this case weighs heavily against a stay. The Court has a "well-recognized interest in disposing 'of the causes on its docket with economy of time and effort for itself. . . .'" *Louis Vuitton*, 676 F.3d at 104 (quoting *Landis*, 299 U.S. at 254). That interest is especially powerful here. Because the Republic concedes liability, the Court can resolve this case quickly without the need for a trial. Moreover, because the legal issues raised in this case

are similar, if not identical, to the issues raised in the related cases, a ruling in this case could thus dispose of up to three cases on the Court's docket.  By contrast, the Republic's proposed stay would keep this case on the Court's docket indefinitely.  Nor does the Republic explain how entering judgment would "require devotion of resources to discovery" as it claims (at 11) when discovery is already complete.  The Court's interests are best served by resolving this case now.

### d.       *Third-Party and Public Interests*

The interests of third parties and the public also militate against a stay.  Most notably, the United States has a "strong interest in ensuring the enforceability of valid debts under the principles of contract law, and in particular, the continuing enforceability of foreign debts owed to United States lenders."  *Pravin*, 109 F.3d at 855.  The Republic's proposed stay would seriously harm that interest.  The Republic bargained for a contract that allowed it to issue bonds under New York law and have redress to New York state and federal courts.  Ellis Decl. Ex. J at 25, 26-28; Ex. K at 26, 28-29.  Such a bargain allows sovereigns to issue bonds more easily and cheaply than bonds issued under local law and enforced by local courts.  *See* Eric Posner, Stephen Choi, & Mitu Gulaiti, *Pricing Terms in Sovereign Debt Contracts*, John M. Olin L. & Econ. Working Paper No. 541 (2010), https://bit.ly/2CHt0tB.  It would be fundamentally unfair for the Republic to take the benefits of issuing bonds under U.S. law and then use a stay to propose its own hypothetical restructuring process.  And to make Plaintiffs' rights conditional on a restructuring that may never begin is flatly contrary to the United States' interest in enforcing contracts.  *Pravin*, 109 F.3d at 855.

The Republic tries (at 12-13) to conjure up a purported U.S. policy in support of a stay.  But that policy simply does not exist.  The Executive Branch has never advocated staying a judgment in this or any other case against the Republic.  To the contrary, OFAC regulations ***permit*** claims against the Republic to proceed to judgment.  U.S. Treasury, FAQ No. 808,

https://bit.ly/2ZgbogX; pp. 18-20, *infra*.  The fact that the U.S. supports a voluntary restructuring of sovereign debt as a general matter, *see* Def. Br. 12, does not mean it supports staying this case.  And while the U.S. has intervened to pause enforcement efforts in other cases, it has never suggested that claims against the Republic should not be reduced to judgment.  *See* Statement of Interest, *supra*.  Rather, the U.S. has taken pains to avoid "suggesting that Venezuela should be permitted to avoid payment of its lawful obligations."  *Id.* at 13.

Finally, third parties' interests, too, support resolving this case now.  Because the Republic has raised the same defenses that it raises here in other bondholder cases, a ruling here would serve other creditors' interests in resolving the Republic's defenses.  And it will promote the orderly functioning of sovereign-debt markets by enforcing U.S.-law contracts for such debt according to their terms.  Together with the other factors described above, those considerations reinforce that equity weighs decisively against the Republic's indefinite stay request.

### B.   International Comity Does Not Justify a Stay

The Republic also appeals to comity – that is, "the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation."  *Hilton v. Guyot*, 159 U.S. 113, 164 (1895); Def. Br. 13-15.  Because it may restructure its debts someday, the Republic argues, comity warrants a stay until that would-be restructuring begins.  Def. Br. 15.

The Republic's argument lacks merit.  Comity cannot apply when there is not, and may never be, any proceeding to defer to.  Comity principles also cannot displace the FSIA's command that the Republic face suit on the same terms as other private litigants, none of whom could put off their debts by stating they will someday restructure them.  And comity principles do not support a stay where, as here, their use would harm U.S. interests.

### 1.   There Is No Foreign Act To Recognize

Comity does not apply here because there is no "legislative, executive, or judicial act[ ]"

for this Court to recognize.  *Hilton*, 159 U.S. at 164.  The restructuring to which the Republic

asks this Court to defer is purely hypothetical.  It will stay hypothetical so long as the Republic

lacks control over Venezuela's territory and institutions – a situation that is "unlikely to change

any time in the near future."  Opp to Restit. Mot., No. 18 Cr. 20685 (S.D. Fla.), Dkt. 193 at 2 n.2.

Courts do not grant comity to acts a sovereign has not taken.  For example, where a case

has been filed in a foreign court, but that court has taken no action, comity does not require dis-

missing a related U.S. action because "no legislative, executive or judicial act of another nation

is involved" to defer to.  *Sumitomo Corp. v. Parakopi Compania Maritima, S.A.*, 477 F. Supp.

737, 742 (S.D.N.Y. 1979), *aff'd*, 620 F.2d 286 (2d Cir. 1980); *see also In re Simon*, 153 F.3d

991, 999 (9th Cir. 1998).  Likewise, where a sovereign merely investigates a course of action,

there is "no 'legislative, executive, or judicial act[ ]' to which the Court should show deference."

*Cruz v. United States*, 387 F. Supp. 2d 1057, 1070 (N.D. Cal. 2005).  Because the Republic has

at most ***considered*** a possible restructuring, not begun one, there is no foreign act to which the

Court could defer.

By contrast, all the Republic's cited cases (at 14-15) deferred to restructuring proceedings

that had already begun.  *Canada Southern Railway Co. v. Gebhard*, 109 U.S. 527, 539 (1883),

for example, involved deference to a Canadian "scheme of arrangement" that had already taken

place.  Similarly, in *Pravin Banker Associates, Ltd. v. Banco Popular del Peru*, there were

actual, ongoing foreign liquidation proceedings to which the court deferred – and even then, only

for a limited time.  165 B.R. 379, 384-89 (S.D.N.Y. 1994) ("*Pravin I*").  Likewise, in *Allied

Bank International v. Banco Credito Agricola de Cartago*, the Second Circuit considered – but

ultimately rejected – granting comity to a restructuring the Costa Rican government had already

completed.  757 F.2d 516, 519-20 (2d Cir. 1985).[3]  The Republic offers no authority allowing a

court to defer to a foreign proceeding that may take place at some undetermined future time.

In any event, the mere fact of a pending proceeding abroad is not enough to stay litigation

in U.S. courts.  Given their "'virtually unflagging obligation'" to exercise jurisdiction, U.S.

courts should defer to parallel foreign litigation only in "exceptional circumstances." *Royal &*

*Sun All.*, 466 F.3d at 93.  The Republic does not even attempt to meet that standard.

## 2.        Invoking Comity Would Harm U.S. Interests

Even if the comity doctrine did apply, a stay still would not be warranted.  Comity

"remains a rule of 'practice, convenience, and expediency' rather than of law." *Pravin*, 109 F.3d

at 854.  Thus, "courts will not extend comity to foreign proceedings when doing so would be

contrary to the policies or prejudicial to the interests of the United States." *Id.*  Deferring to the

Republic's hypothetical restructuring would undercut U.S. policy in at least two ways.

First, U.S. policy favors enforcing debts owed by foreign debtors to U.S. lenders.  *See*

*Pravin*, 109 F.3d at 855.  The Second Circuit has repeatedly declined to apply comity to foreign

acts that "vitiate an express provision of the contracts between the parties." *Allied Bank*, 757

F.2d at 522.  In *Allied Bank*, for example, the Second Circuit refused to recognize the Costa

Rican government's "unilateral attempt to repudiate private, commercial obligations." *Id.*  Such

efforts, the Second Circuit held, were "contrary to the interests of the United States, a major

source of private international credit," and would be "counter to principles of contract law." *Id.*

And in *Pravin*, the Second Circuit refused to stay proceedings against Peru in favor of ongoing

---

[3] *See also Leopard Marine & Trading, Ltd. v. Easy St. Ltd.*, 896 F.3d 174, 189 (2d Cir. 2018)
(cited in Def. Br. 14) (declining to grant comity); *United Feature Syndicate, Inc. v. Miller*
*Features Syndicate, Inc.*, 216 F. Supp. 2d 198, 219 (S.D.N.Y. 2002) (cited in Def. Br. 14)
(same); *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa*, 482 U.S.
522 (1987) (cited in Def. Br. 13-14) (discussing comity but not granting it).

restructuring negotiations because a stay would have denied the plaintiff "its right to enforce the underlying debt" and "would have converted" a supposedly "voluntary" restructuring "into the equivalent of a judicially-enforced bankruptcy proceeding[.]"  109 F.3d at 855.  Just like those cases, deferring to the Republic's hypothetical restructuring would deprive Plaintiffs of their rights under the contracts and make a supposedly "voluntary" restructuring mandatory.

Second, affording comity would violate the U.S. policy of ensuring holders of foreign debt fair treatment.  *See Finanz AG Zurich v. Banco Economico S.A.*, 192 F.3d 240, 246 (2d Cir. 1999).  Comity is warranted to a foreign proceeding only "if the foreign court abides by fundamental standards of procedural fairness."  *Id.* at 246 (citation and internal quotation marks omitted); *see also Pravin I*, 165 B.R. at 385-86 (evaluating whether Peru's liquidation procedure "satisfies American notions of fundamental fairness" (capitalization altered)).  The Republic offers no assurance that its hypothetical restructuring would be procedurally fair.  That is yet another reason not to defer to that theoretical restructuring on comity grounds.

### C.   The International Law Doctrine of Necessity Does Not Justify a Stay

Lacking support in U.S. law, the Republic argues that a stay is warranted under the international law "doctrine of necessity."  Def. Br. 15-17.  But international law does not apply to this New York-law dispute.  Even if it did, it would not warrant staying this case.

### 1.   The Court Has No Authority To Apply International Law

Contrary to the Republic's claim (at 15 n.30), the Supreme Court has made clear that international law is ***not***, as a general matter, part of federal common law.  *Sosa v. Alvarez-Machain*, 542 U.S. 692, 729-30 (2004).  After *Sosa,* federal courts may adopt international law only in "limited enclaves" where consistent with the actions of the political branches – and even

then, only with "great caution." *Id.* at 728-30; *see also Tarros S.p.A. v. United States*, 982 F. Supp. 2d 325, 338 & n.12, 343 (S.D.N.Y. 2013).[4]  International law applies only " 'where there is no treaty and no controlling executive or legislative act or judicial decision' that speaks to the issue in dispute." *Oliva v. Dep't of Justice*, 433 F.3d 229, 233 (2d Cir. 2005) (quoting *The Paquete Habana*, 175 U.S. 677, 700 (1900)).  "If a statute makes plain Congress's intent," then courts "must enforce" that statute "irrespective of whether the statute conforms to customary international law." *United States v. Yousef*, 327 F.3d 56, 93 (2d Cir. 2003); *see also Sosa*, 542 U.S. at 731.  Moreover, to be part of federal law, an international-law norm must be specific, universal, and obligatory.  *Sosa*, 542 U.S. at 732. And courts must also consider whether adopting an international-law doctrine on a given subject is "a proper exercise of judicial discretion," or whether the issue should be left to the political branches.  *Jesner v. Arab Bank, PLC*, 138 S. Ct. 1386, 1399 (2018) (opinion of Kennedy, J.); *see also Sosa*, 542 U.S. at 727-28.

Here, Congress plainly spoke to this issue in the FSIA and precluded resort to international law.  Under that statute, a sovereign must be "liable in the same manner and to the same extent as a private individual under like circumstances."  28 U.S.C. § 1606.  The Court may not invoke federal common law to undercut that statutory command.  Because the Republic's purported "necessity" defense is only available to sovereigns, the Court may not recognize it.

The Republic also cannot show that its supposed necessity defense is specific, universal, and obligatory.  *Sosa*, 542 U.S. at 732.  The Republic cites only two decisions applying the doctrine, both of which are non-precedential arbitral awards under bilateral investment treaties. Def. Br. at 15, 17; *see* Convention on the Settlement of Investment Disputes Between States and

---

[4] The Republic's authorities otherwise (at 15 n.30) either pre-date *Sosa* or have no precedential effect.  The Republic also fails to mention that its quotation from *United States v. Trinidad*, 839 F.3d 112 (1st Cir. 2016), is from the dissent.  *See id.* at 122 n.16 (Torruella, J., dissenting).

Nationals of Other States ("ICSID Convention"), Art. 53, https://bit.ly/2X0xAdA (providing that an award "shall be binding **on the parties**" (emphasis added)).  Such private awards do not come close to establishing that the "necessity" doctrine is "universal" or "obligatory."  Nor is the rule, as put forth by Venezuela, at all "specific."  The Court should not adopt such an amorphous rule, especially given the sparse evidence that other countries have accepted it.

Moreover, recognizing the Republic's proposed defense would intrude on the kinds of decisions "that [are] the prerogative of the political branches to make." *Jesner*, 138 S. Ct. at 1408 (opinion of Kennedy, J.).  Whether to allow foreign sovereigns to postpone or excuse their external debt involves the sort of "delicate and important considerations" that the political branches are in a better position to weigh than the courts. *See id.* at 1406.  The Court should not fashion new law to address a situation that OFAC already has well in hand. *See id.* at 1408; *see also Tenaris*, 2020 WL 3265476, at *4-5 (noting OFAC's expertise).

### 2.     The Doctrine of Necessity Is Not International Law

Even if the Court had power to apply international law in this New York-law case, the Republic's "necessity" defense is not part of international law.  A party seeking to establish that a custom has the force of international law must prove two elements: state practice and "*opinio juris*."  Restatement (Third) of the Foreign Relations Law of the United States § 102(b), (c).  A state practice must be both "wide[ly] accept[ed]" and followed "from a sense of legal obligation." *Id.*  "Failure of a significant number of important states to adopt a practice can prevent [it] from becoming general customary law." *Id.* § 102(b).

The Republic cannot meet either test.  The Republic's citations to private arbitral awards do not show that the necessity defense is widely accepted by a significant number of nations.  Likewise, the Republic's source for its definition of "necessity" – the U.N.'s draft "Articles of Responsibility of States for Internationally Wrongful Acts" ("ARSIWA") – is "not . . . consid-

ered per se as a source of international law" but is "a work of codification, having the nature of a restatement." *Cont. Cas. Co. v. Argentine Republic*, ICSID Case No. ARB/03/9, Award at 72 n.238 (Sept. 5, 2008). These scant authorities do not establish that the necessity defense is widely accepted. And the Republic also has not established *opinio juris* – "a belief" among states "that [a] practice is rendered ***obligatory*** by the existence of a rule of law requiring it." *North Sea Continental Shelf*, Judgment, 1969 I.C.J. Rep. 3, 44 (Feb. 20) (emphasis added); *see also* Restatement (Third) of the Foreign Relations Law of the United States § 102(c). The Republic's motion fails even to mention *opinio juris*, let alone prove that it exists here.

### 3. The Doctrine of Necessity Is Inapplicable on its Own Terms

Even if the doctrine of necessity had the force of customary international law, it does not apply by its own terms. As ARSIWA describes, the necessity defense only applies to a sovereign's acts "not in conformity ***with an international obligation of that State***." ARSIWA, Art. 25 (emphasis added), https://bit.ly/32Y5KlX. An "international obligation" is one "owed to another State, to several States, or to the international community as a whole," ***not*** an obligation to private parties. ARSIWA Art. 33. Accordingly, the German Federal Constitutional Court declined to extend the doctrine "to relationships under private law involving private creditors." *Argentine Necessity Case*, Bundesverfassungsgericht May 8, 2007, 10-12 (Ger.), https://bit.ly/30KlOFd. The Republic's cited cases about bilateral investment treaties do not prove otherwise.

The Republic's necessity defense also fails for other reasons. That defense excuses non-compliance with a state's obligations only if necessary to avoid "grave and imminent peril." ARSIWA, Art. 25.1(a); *see Gabcikovo-Nagymaros Project (Hungary/Slovakia)*, Judgment, 1997 I.C.J. Reports 7, 42 (Sept. 25) ("'Imminence' is synonymous with 'immediacy' or 'proximity[.]'"). Any harm posed by entry of judgment is hardly "imminent" when OFAC

regulations prevent enforcement.   Moreover, ARSIWA provides that necessity may not be invoked if "the international obligation in question excludes the possibility of invoking necessity."   ARSIWA, Art. 25.2(a).   By selecting New York law, the Bonds and FAAs exclude the possibility of invoking defenses under other bodies of law, including international law.

### D.   The Republic's "Impossibility" Defense Does Not Justify a Stay

Finally, the Republic argues that a stay should be granted because it is "impossible at this time" for the Republic "to access the billions of dollars that would be needed to settle its financial obligations."   Def. Br. 17-18.   The Republic offers no detail or proof to support its factual claims and no authority suggesting that such a stay would be appropriate.

It would not.   A contract party's purported inability to pay its debts is not a defense against liability.   *407 E. 61st Garage, Inc. v. Savoy Fifth Ave. Corp.*, 23 N.Y.2d 275, 281 (1968). If financial difficulty does not excuse liability on the merits, it also does not warrant a stay where, as here, liability is uncontested.   Nor does the Republic try to show, as it must, that equity would allow such a stay.   *See* pp. 4-5, *supra*.   The Republic's "impossibility" defense fares no better than its other arguments for a stay.

## II.   OFAC REGULATIONS DO NOT PREVENT ENTRY OF JUDGMENT

In its pre-motion letters, the Republic argued broadly that entering judgment would violate OFAC regulations against "transferring" its "property" by altering its rights under the Bonds and FAAs – in particular, its ability under certain "collective-action clauses" to amend the contracts if a supermajority of bondholders consent.   Dkt. 55 at 4; Dkt. 58 at 2.   As Plaintiffs noted in their opening brief, that argument fails for several reasons.   Pls.' Br. 19-28.   The plain text of OFAC regulations only restricts enforcing money judgments, not entering them.   *Id.* at 20-22.   Under basic preclusion principles, the Republic can still enforce its rights under the contracts in future suits.   *Id.* at 22-24.   Entering a money judgment also will not affect the

Republic's rights under contract law, if any, to amend the FAAs or Bonds with regard to future missed payments. *Id.* at 24-25. And any ban by OFAC on entering a money judgment here would violate basic separation-of-powers principles. *Id.* at 25-28.

In its brief, the Republic deals with only the first and last of these arguments. Def. Br. 18-26. By failing to address its ability to renegotiate ***future*** missed payments under either preclusion principles or contract law, the Republic tacitly concedes that its argument only covers payments it has already missed. In other words, the Republic asserts only that OFAC regulations bar judgment because it might someday convince a supermajority of bondholders to renegotiate the payments at issue in this case. But the Republic's narrower arguments still defy the text and structure of OFAC regulations, New York contract law, and basic Article III jurisprudence. The Republic's arguments offer no valid reason against entering judgment.[5]

### A.   OFAC Regulations Do Not Bar Entering a Money Judgment

The Republic effectively concedes that OFAC regulations say nothing explicit about entering money judgments. The Republic also ignores that court after court, including the U.S. Supreme Court, has held that blocking regulations do not bar judgments like this one that merely fix a plaintiff's right to relief but do not transfer property. Pls.' Br. 21-22; *see, e.g.*, *Lyon v. Singer*, 339 U.S. 841, 842 (1950); *Dean Witter Reynolds, Inc. v. Fernandez*, 741 F.2d 355, 362 (11th Cir. 1984). And the Republic's argument that "[n]o court to date has issued a judgment in comparable circumstances" under current sanctions, Def. Br. 23, is wrong. Courts have entered money judgments that, under the Republic's theory, would violate OFAC sanctions. *See Tenaris*

---

[5] The Republic also frames its OFAC argument as a reason in "further support [of] a stay." Def. Br. 18. But the Republic never explains how its argument is relevant to its stay motion rather than Plaintiffs' motion for summary judgment. It is not. Whether the Court has power to enter judgment does not bear on whether the Court should stay a judgment it can enter. The Republic's framing appears calculated only to gain an improper summary judgment sur-reply.

*S.A. v. Bolivarian Republic of Venezuela*, No. 18 Civ. 1371, Dkt. 29 (D.D.C. July 17, 2020) (money judgment against the Republic); *Dresser-Rand Co. v. Petroleos de Venezuela, S.A.*, No. 19 Civ. 2689, Dkt. 78 at 2 (S.D.N.Y. May 29, 2020) (money judgment against PDVSA corporate affiliate).[6]  Together with the regulations' text and the undisputed weight of authority, those actions show that there is no bar to entering the money judgments Plaintiffs seek here.

OFAC itself reinforces that conclusion with interpretive guidance that a license is "not ordinarily required to initiate or continue U.S. legal proceedings."  U.S. Treasury, FAQ No. 808, https://bit.ly/2ZgbogX; Pls.' Br. 20-21.  The Republic observes that the same guidance requires a license for the "creation or perfection of any legal or equitable interests" in blocked property.  Def. Br. 19.  But that situation is not present here.  A money judgment against the Republic would in no way create or perfect an interest "in" the Bonds, the FAAs, or any other property the Republic holds.  Rather, a judgment would be a ***debt*** that the Republic would owe to Plaintiffs independent of its other assets.  *See, e.g.*, *Hanson v. Denckla*, 357 U.S. 235, 246 n.12 (1958) (a "judgment *in personam* imposes a personal liability or obligation on one person in favor of another").  Only through enforcement could a creditor use a money judgment to obtain an interest in the Republic's property.  *See, e.g.*, *In re Pandeff*, 201 B.R. 865, 873 (Bankr. S.D.N.Y. 1996) (in New York, whose law governs execution in this Court under Fed. R. Civ. P. 69, "a judgment is not a lien against property of the judgment debtor" without further action).

As a result, courts have repeatedly held that an *in personam* suit does not create an

---

[6] The Republic argues in a footnote that *Dresser-Rand* is irrelevant because the judgment debtor, Petroleo S.A., had waived all defenses to judgment.  Def. Br. 23 n.42.  It is hard to see why that matters.  If the Republic were correct that OFAC regulations block entering money judgments, then the *Dresser-Rand* judgment is "null and void" for violating those regulations whether Petroleo had raised any defenses or not.  *See* Def. Br. 23 (citing 31 C.F.R. §591.202(a)).  Tellingly, the Republic and Petroleo have not argued in either *Dresser-Rand* or *Tenaris* that those cases' judgments are void, either before or after they were entered.

interest "in" blocked property.  Although such a suit "might eventually be reduced to judgment and that judgment might be executed upon, [it] is an effort to establish liability and fix damages and does not focus on any particular property within the jurisdiction."  *Dames & Moore v. Regan*, 453 U.S. 654, 675 (1981); *see also Dean Witter*, 741 F.2d at 362 (where litigation "was *in personam*," "[i]t was not until after judgment that a transfer of property became possible" so as to implicate blocking regulations); *Tagle v. Regan*, 643 F.2d 1058, 1067 (5th Cir. 1981) (judgment that "simply determined claims under state law" was not a "judicial transfer of assets" barred by sanctions, given that "enforcement of th[o]se claims [wa]s conditioned upon obtaining a license"); *Am. Int'l Grp. v. Islamic Republic of Iran*, 657 F.2d 430, 443 n.15 (D.C. Cir. 1981) (similar).  Because a money judgment would not be an interest "in" the Republic's property, OFAC guidance makes clear that no license is required to issue that judgment.

### B.    Entering Judgment Would Not Affect the Republic's Property Interests

In the face of the OFAC regulations' plain text, the Republic makes the fallback argument that a money judgment would "alter" its property interests in the Bonds and FAAs.  Def. Br. 20-24.  Specifically, the Republic argues that it has a property interest in the Bonds' "collective-action clauses" because a supermajority of bondholders might someday use those clauses to forgive the Republic's defaults, even though there is no indication that they will ever do so.  *Id.* at 20-22.  And the Republic asserts that entering judgment in this case would "alter" the Republic's supposed rights under those clauses.  *Id.* at 22-24; *see also id.* at 19 (citing 31 C.F.R. § 591.310 (prohibiting judgments that "alter" blocked property interests)).

The Republic's argument falters at both steps.  The Republic has no "interest," even a contingent one, in bondholders' future decisions whether to approve a hypothetical restructuring.  By their terms, the collective-action clauses only allow bondholders to amend the contracts, not to annul judgments that arise from those contracts.  And the Republic has no rights under those

clauses for payment obligations it has already breached.

### 1.     The Republic Has No Property Interest in Bondholders' Future Use of the Collective-Action Clauses

The Republic's argument fails at the outset because it lacks any meaningful property interest in the collective-action clauses.  Pls.' Br. 24 n.11.  The Republic asserts, without proof, that it has "at least a contingent interest" in the collective-action clauses.  Def. Br. 21 (citing 31 C.F.R. § 591.309).  But where, as here, a person has a "mere expectation or hope" of receiving property, "which may be more or less well founded," he or she has "no present interest," and "not even a contingent interest."  Restatement (Second) of Trusts § 86 (1959).  New York courts thus routinely refuse to find that such an "expectancy" based on what other parties might do is a "property interest."[7]  Case after case in the federal courts reaches the same result.[8]  Because the Republic has, at best, a subjective expectation that bondholders might someday agree to restructure its bonds, it lacks any "property interest" that could be "altered" by a judgment.

### 2.     The Collective-Action Clauses Do Not Reach Judgments

The Republic's position also rests on a misreading of the collective-action clauses.  Those

---

[7] *See, e.g.*, *Jones v. Town of Carroll*, 177 A.D.3d 1297, 1298 (4th Dep't 2019) (potential buyer of land had no property interest affected by regulations of that land); *Novara ex rel. Jones v. Cantor Fitzgerald, LP*, 20 A.D.3d 103, 108 (3d Dep't 2005) (expectancy in receiving benefits as state board determined was not a "property interest"); *Bora v. N.Y. State Dep't of Soc. Servs.*, 152 A.D.2d 10, 13 (3d Dep't 1989) (doctor's participation in Medicaid program that was terminable at will by the state was a "mere expectancy," not a "property interest").

[8] *See, e.g.*, *Bachi-Reffitt v. Reffitt*, 802 F. App'x 913, 915 (6th Cir. 2020) (anticipated share of a spouse's business that a divorce court might award was, for purposes of a civil RICO claim, "no property interest but only an expectancy interest"); *In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 948 F.3d 457, 468 (1st Cir. 2020) (expected contributions to retirement fund "constituted merely an expectancy and not a property 'right'" under reorganization statute); *Stevenson v. Blytheville Sch. Dist. #5*, 800 F.3d 955, 968 (8th Cir. 2015) (parents' ability to choose child's school dependent on agreement of school district was a "mere subjective expectancy" and not a "property interest"); *Batra v. Bd. of Regents of Univ. of Neb.*, 79 F.3d 717, 720 (8th Cir. 1996) (a "mere subjective expectancy" of continued employment is not a "property interest").

clauses do not say that either bondholders or the Republic have the power to prevent suits on the Bonds or to annul judgments.  Instead, they allow a supermajority of bondholders to "modify, amend or supplement the terms *of the Notes* . . . or, insofar as respects the Notes . . . *this Agreement*."  *See, e.g.*, Ellis Decl. Ex. N at PDF 4-5, 14 (emphasis added).

Terms allowing parties to a debt instrument to alter "the Notes" or "this Agreement" do not allow the contract parties to undo judgments that arise from that instrument.  As the Republic itself points out, once a breach-of-contract claim is reduced to judgment, the obligation is no longer an obligation under the contract but becomes a right under the judgment itself.  *See* Dkt. 58 at 2; *Westinghouse Credit Corp. v. D'Urso*, 371 F.3d 96, 102 (2d Cir. 2004) (collecting cases).  In that situation, judgment creditors' claims "are no longer subject to the provisions of the underlying contract," including any collective-action clause, "by virtue of the fact that they had received a judgment against the sovereign."  Anne O. Krueger & Sean Hagan, *Sovereign Workouts:  An IMF Perspective*, 6 Chi. J. Int'l L. 203, 215 n.26 (2005).  Accordingly, the Bonds' collective-action clauses cannot reach prior claims that have already been reduced to judgment.[9]

The Republic suggests that reducing Plaintiffs' claim for missed payments to judgment would "effectively rewrite the contract" because a supermajority of bondholders could someday agree to forgive those payments.  Def. Br. 23.  But the Bonds and FAAs nowhere allow the Republic to either postpone payments or put off suits until bondholders weigh in.  Nor would that reading of the contracts make any sense.  Under the Republic's theory, no creditor could ever sue without violating the collective-action clauses because a supermajority of bondholders might later wish to modify the contracts.  The Court should not read the Bonds to create that

---

[9] The Republic is wrong to argue that reducing its debt under the contract to judgment is an "alteration" of its property.  A debt is not the debtor's "property."  *See* p. 19, *supra*.

absurd result.  *See Cole v. Macklowe*, 99 A.D.3d 595, 596 (1st Dep't 2012).

The collective-action clauses allow bondholders to modify only those obligations that have not yet been reduced to judgment.  The Republic may still propose modifications to the terms of the Bonds, subject to approval of a supermajority of bondholders, until a judgment is entered.  And, as Plaintiffs previously explained, the Republic will still have that right with respect to all future payments it owes.  Pls.' Br. 25.  Because the Republic's contractual rights will be exactly the same as they were before judgment, no "alter[ation]" will occur within the meaning of the OFAC regulations.  *See* 31 C.F.R. § 591.310.

> **3.     The Republic Forfeited Any Rights Under the Collective-Action Clauses with Respect to Already-Missed Payments**

Even if the collective-action clauses did affect bondholders' rights to sue on missed payments, the Republic lacks any right to enforce those clauses with respect to payments it has already missed.  Pls.' Br. 24 n.11.  That is another reason why Republic has no "property" interest in the collective-action clauses.  *Id.*

The Republic asserts that it could raise a restructuring as a defense to future suits.  Def. Br. 22 n.40.  But the Republic has forfeited any rights it may have against Plaintiffs to restructure payments it has already missed.  "Under New York law, a party's performance under a contract is excused where the other party has substantially failed to perform its side of the bargain or, synonymously, where that party has committed a material breach."  *Merrill Lynch & Co., Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 186 (2d Cir. 2007).  Because there is no dispute that the Republic's failure to make payments is material, that failure relieves Plaintiffs of whatever obligations they may have under the collective-action clauses for the missed payments.  *U.W. Marx, Inc. v. Koko Contracting, Inc.*, 124 A.D.3d 1121, 122-23 (3d Dep't 2015); *see also Mehmet v. Add2Net, Inc.*, 66 A.D.3d 437, 438 (1st Dep't 2009).

The Republic urges that, to be effective, collective-action clauses must apply to "obligations . . . that have already been missed."  Def. Br. 21.  While true, that is irrelevant. *Other bondholders* retain their right to use those clauses to waive past defaults that have not yet been reduced to judgment.  But that does not mean that *the Republic* can use its hope that bondholders someday invoke the collective-action clauses as a defense to its current obligations. Until a supermajority of bondholders agrees to waive the Republic's defaults, the Republic cannot raise the collective-action clauses as a defense and thus has no "property" in those clauses that would be "altered" by entering judgment on its missed payments to date.

### C.    OFAC Cannot Restrict the Court's Article III Power To Enter Judgment

Read the way the Republic insists, the OFAC regulations would unconstitutionally limit the Court's Article III power to enter judgment.  Pls.' Br. 25-28.  The Court should avoid the grave problems raised by the Republic's argument by reading the OFAC regulations the way OFAC reads them – to limit *enforcing* judgments but not *entering* them.  *Id.* at 28.

The Republic's arguments otherwise lack merit.  Def. Br. 24-26.  The Republic bases its defense of the OFAC regulations (as it misinterprets them) almost entirely on the Supreme Court's decision in *Dames & Moore v. Regan*, 453 U.S. 654 (1981).  Def. Br. 24-26.  But that case has no similarity to this one.  In *Dames & Moore*, the Supreme Court held that, with Congress's consent, President Reagan could explicitly "suspend" claims pending in U.S. courts against Iran so that those cases could be heard instead by the U.S.-Iran Claims Tribunal.  453 U.S. at 666 (quoting Exec. Order No. 12294, 46 Fed. Reg. 14,111 (Feb. 24, 2011)).  Almost every fact the Supreme Court relied on in approving that action is missing here.

While the Republic claims that OFAC implicitly stripped the Court of its Article III powers by restricting the "alter[ation]" of "property," there was no doubt in *Dames & Moore* that the President's executive order explicitly suspending court cases provided the clear statement

courts demand for such a drastic action. *See* 453 U.S. at 666; *Chambers v. NASCO, Inc.*, 501 U.S. 32, 47 (1991) (discussing the clear-statement requirement); Pls.' Br. 27. Moreover, while the Republic argues that the International Emergency Economic Powers Act ("IEEPA") justifies what it thinks OFAC did, the Supreme Court held in *Dames & Moore* that "IEEPA . . . ***cannot be read to authorize the suspension of . . . claims***." 453 U.S. at 675 (emphasis added). Only through a careful analysis of multiple Congressional actions and legislative history – none of which the Republic claims exist here – did the Supreme Court find that Congress had consented to the President's actions. *Id.* at 686. The Republic does not assert that Congress has consented to OFAC implicitly stripping jurisdiction over this case. Furthermore, the Supreme Court also based its conclusion on the fact that the Iran-U.S. Claims Tribunal offered an alternative forum that could provide creditors "meaningful relief." *Id.* at 686-87. By contrast, the Republic argues that OFAC stripped the Court's power to enter judgment when there is ***no*** alternative forum whatsoever.[10] And the Republic does not address how the Court emphasized and "re-emphasize[d] the narrowness of [its] decision" in *Dames & Moore* and disclaimed any "attempt to lay down [ ] general 'guidelines' covering other situations not involved here." *Id.* at 661, 688.

Likewise, the Republic misses the point when it notes that the suspension of claims in *Dames & Moore* did not divest jurisdiction but merely "effected a change in the substantive law" by transferring certain cases to another forum. Def. Br. at 26 (quoting 453 U.S. at 684-85). The Republic is not asserting that the substantive law of contracts, the FSIA, or any other law governing either its amenability to suit or its liability has changed. It argues that, in a case where the Court unquestionably has subject-matter jurisdiction, OFAC may nonetheless prevent the

---

[10] While the Republic asserts that the case should be stayed because of its hypothetical future restructuring, it does not claim that whether OFAC regulations permit entry of judgment depends on that purported restructuring process.

Court from entering judgment.  Def. Br. 26.  That is not a "change in the substantive law" but a restriction on the Court's powers *regardless of* the substantive law.  *Dames & Moore* says nothing about that situation.  In any event, Plaintiffs also observed that the regulations as the Republic misreads them would give OFAC power to improperly review and veto the Court's decisions.  Pls.' Br. 27.  Courts find such encroachments on judicial power impermissible whether they are "jurisdictional" or not.  *See, e.g.*, *Nagahi v. I.N.S.*, 219 F.3d 1166, 1171 (10th Cir. 2000).  Tellingly, the Republic does not even respond to that point in its brief.

The grave problems raised by the Republic's reading are ample reason for the Court to reject it.  Pls.' Br. at 27-28.  The Republic barely attempts to deal with the need to avoid constitutional concerns.  It notes that two cases narrowing OFAC regulations to avoid such concerns dealt with whether OFAC could require counsel to obtain a license.  Def. Br. at 25 n.44 (citing *Comet Enters. Ltd. v. Air-A-Plane Corp.*, 128 F.3d 855 (4th Cir. 1997); *Am. Airways Charters, Inc. v. Regan*, 746 F.2d 865 (D.C. Cir. 1984)).  But the Republic never explains why that matters.  It does not.  Regardless of the issue, courts refuse to read OFAC regulations in a way that raises constitutional difficulties.  The Court should do the same here.

## III.   NEW YORK STATUTORY PREJUDGMENT INTEREST APPLIES HERE

Because the Republic agreed for New York law to govern these contracts, it owes prejudgment interest at New York's statutory rate on the Bonds' unpaid coupon payments.  Pls.' Br. 15-19.  The Republic argues that federal standards should apply instead because "the Court's jurisdiction arises under federal law."  Def. Br. 27.  The Republic is wrong.

The Republic does not disagree that "as a general matter, state substantive law is controlling in FSIA cases," even if federal law provides subject-matter jurisdiction.  *Barkanic v. Gen. Admin. of Civil Aviation of China*, 923 F.2d 957, 959 (2d Cir. 1991); Pls.' Br. 17.  Nor does the Republic deny that New York law governs these contracts or that New York choice-of-law

principles apply the same law to prejudgment interest that controls the main claim. *Schwartz v. Liberty Mut. Ins. Co.*, 539 F.3d 135, 147 (2d Cir. 2008); Pls.' Br. 18.[11]  And the Republic does not dispute that applying federal-law prejudgment interest to sovereign-debt disputes, but state-law prejudgment interest to other contract suits, would defy the FSIA by imposing different liability on sovereigns compared to private individuals in like circumstances.  Pls.' Br. 18; *see* 28 U.S.C. § 1606.  Those concessions require applying New York prejudgment interest here.

The Republic's only basis for arguing otherwise is a footnote in a Second Circuit opinion stating that sometimes "'a uniform body of federal law should control.'"  Def. Br. 27 (quoting *Barkanic*, 923 F.2d at 959 n.2).  In fact, that footnote makes clear that New York prejudgment interest rules control this case.  There, the Court of Appeals recognized that the Supreme Court imposed a uniform federal rule for sovereigns' alter-ego liability "as ***an exception*** to the general rule of applying state substantive law to FSIA claims," given "the special nature of questions involving the amenability of a foreign sovereign to suit."  *Barkanic*, 923 F.2d at 959 n.2 (emphasis added) (citing *First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 623 (1983)).  But that exception does not apply where "the only question is the extent of [a sovereign's] liability," not whether the sovereign is amenable to suit.  *Id.*  In ***that*** situation, "state law, rather than federal law, is controlling."  *Id.*  Because prejudgment interest involves only the extent of the Republic's liability, state law controls what prejudgment interest rules apply.

---

[11] The Republic does urge, quoting two Second Circuit cases, that choice-of-law clauses may not "demonstrate[] a clear, unambiguous and unequivocal" intent to deviate from the federal rate. Def. Br. 27 n.46 (quotation omitted).  The cases it cites, however, discuss whether parties can contract around the federal ***post-***judgment rate.  *FCS Advisors, Inc. v. Fair Fin. Co.*, 605 F.3d 144, 147-48 (2d Cir. 2010) (citing *Westinghouse Credit Corp. v. D'Urso*, 278 F.3d 138, 146 n.3 (2d Cir. 2002)).  For ***pre-***judgment interest, by contrast, "New York's statutory rate will be applied as the default rate" to a contract case unless the parties include a provision in their contract requiring otherwise.  *NML Capital v. Republic of Argentina*, 17 N.Y.3d 250, 258 (2011).

As a result, the Republic's policy arguments for applying federal law are beside the point. *See* Def. Br. 28. Those arguments are also unpersuasive. While the Republic refers (at 27-28) to a supposed "federal policy" favoring voluntary restructuring of sovereign debt, the U.S. has never taken a position on what prejudgment interest applies here. And the Republic's concern that applying state prejudgment rules "would encourage creditors to forum shop," Def. Br. at 28, makes no sense. New York prejudgment interest applies here because **the Republic** bargained for New York law and consented to suit in New York courts. *See* p. 9, *supra*; Pls.' Br. 17-18.

Because New York prejudgment rules apply, the Court has no "discretion" to decide what interest to impose, as the Republic insists. *See* Def. Br. 26, 28. Under New York law, prejudgment interest at the statutory rate is "mandatory." *New England Ins. Co. v. Healthcare Underwriters Mut. Ins. Co.*, 352 F.3d 599, 607 (2d Cir. 2003); *see* N.Y. C.P.L.R. 5001(a); Pls.' Br. 18-19. In any event, Plaintiffs cited several reasons why any discretion the Court might have supports applying the New York rate, including the opportunity cost of Plaintiffs' investment and the unfairness of effectively granting the Republic an interest-free loan. Pls.' Br. 19 n.9. The Republic ignores all but one of those reasons, quibbling only whether prejudgment interest squares with the "parties' reasonable, bargained-for expectations." Def. Br. 29. But the Republic should have reasonably expected that New York law would apply – including New York prejudgment interest – because it agreed to that law when it entered into these contracts. Contrary to what the Republic claims now (at 29), there is nothing "fundamentally unfair" about imposing New York prejudgment interest. That is simply what the Republic bargained for.

## IV. THERE IS NO BASIS FOR A "FRAUD PREVENTION" INJUNCTION

Finally, the Republic asks for "fraud prevention and error prevention mechanisms" in the form of a judgment permanently enjoining Plaintiffs from selling their Bonds. Def. Br. 29-30 & n.48. The Republic asserts, without proof, that an injunction is necessary because its judgment

creditors bringing suit could purportedly " 'double dip' " by selling its bonds to an "unsuspecting third party." *Id.* But the Court has neither authority nor reason to take that step.

The Republic's request is improper for several reasons. The Republic has never filed a counterclaim that would give the Court power to enjoin Plaintiffs. *See Stewart v. I.N.S.*, 762 F.2d 193, 199 (2d Cir. 1985) (without a pleading related to a proposed injunction, "no jurisdictional basis exist[s] upon which the district court" can issue that relief). The Republic has also failed to move for injunctive relief, even conditionally. *See* Fed. R. Civ. P. 7(b)(1) ("A request for a court order must be made by motion."). The Republic has made no effort to submit admissible evidence in support of the judgment it seeks, let alone enough evidence to support the "extraordinary remedy" of a permanent injunction. *Silverstein v. Penguin Putnam, Inc.*, 368 F.3d 77, 84 (2d Cir. 2004); *see* Fed. R. Civ. P. 56(c)(2). And the Republic has made no attempt to meet the traditional four-factor test for injunctive relief. *eBay v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).[12] Each of those failures is grounds to reject the Republic's request.

But the Republic's request also fails on the merits. While the Republic worries that "an unscrupulous plaintiff" might "double dip," Def. Br. 29, it does not accuse Plaintiffs of such behavior. More candidly, in the related cases, the Republic asked for such an injunction merely to "establish a precedent" in future cases. *See Pharo Gaia Fund Ltd. v. Bolivarian Republic of Venezuela*, No. 19 Civ. 3123, Dkt. 49 at 21 (S.D.N.Y. Feb. 27, 2020). Plaintiffs should not be enjoined based on the Republic's worries about what other plaintiffs might do.

---

[12] It is hard to see how the Republic could meet that test. *See eBay*, 547 U.S. at 391. The harms the Republic would face if a third party sued again on these Bonds – a lawsuit and potential damages – are not irreparable. *Standard Oil*, 449 U.S. at 244 (defending a lawsuit is not irreparable harm); *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) ("economic loss does not, in and of itself, constitute irreparable harm"). Moreover, any such harm could be remedied by damages. *See eBay*, 547 U.S. at 391. And the Republic has not shown either that the balance of hardships favors it or that the public interest supports an injunction. *See id.*

## <u>CONCLUSION</u>

The Court should deny the Republic's motion for a stay, grant Plaintiffs' motion for summary judgment, and enter judgment for Plaintiffs in the full amount of missed principal, missed coupon payments, New York statutory prejudgment interest, attorneys' fees, costs, and out-of-pocket expenses.

Dated:   July 27, 2020                         Respectfully submitted,
           New York, New York

                                              */s/ Steven F. Molo*
                                              Steven F. Molo
                                              Justin M. Ellis
                                              Lauren F. Dayton
                                              MOLOLAMKEN LLP
                                              430 Park Avenue, 6th Floor
                                              New York, NY  10022
                                              Tel.: (212) 607-8170
                                              Fax: (212) 607-8161
                                              smolo@mololamken.com

                                              Elizabeth K. Clarke (admitted *pro hac vice*)
                                              MOLOLAMKEN LLP
                                              300 N. LaSalle Street, Suite 5350
                                              Chicago, IL  60654
                                              Tel.: (312) 450-6700
                                              Fax: (312) 450-6701

                                              *Counsel for Plaintiffs*