UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CONTRARIAN CAPITAL MANAGEMENT, L.L.C., CONTRARIAN CAPITAL FUND I, L.P., CONTRARIAN DOME DU GOUTER MASTER FUND, LP, CONTRARIAN CAPITAL SENIOR SECURED, L.P., CONTRARIAN EM II, LP, CONTRARIAN EMERGING MARKETS, L.P.,  POLONIUS HOLDINGS, LLC, and CONTRARIAN FUNDS, L.L.C., <br><br>                Plaintiffs,<br><br>   v.<br><br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br><br>                Defendant. | Case No. 19 Civ. 11018 [rel. Nos. 19 Civ. 3123 & 18 Civ. 11940]<br><br>Hon. Analisa Torres |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
THEIR MOTION FOR FEES AND EXPENSES**

Steven F. Molo
Justin M. Ellis
Lauren F. Dayton
MOLOLAMKEN LLP
430 Park Avenue, 6th Floor
New York, NY  10022
Tel.: (212) 607-8170
Fax: (212) 607-8161
smolo@mololamken.com

Elizabeth K. Clarke (admitted *pro hac vice*)
MOLOLAMKEN LLP
300 N. LaSalle Street, Suite 5350
Chicago, IL  60654
Tel.: (312) 450-6700
Fax: (312) 450-6701

*Counsel for Plaintiffs*

# **TABLE OF CONTENTS**

Page

INTRODUCTION .................................................................................................................. 1

BACKGROUND .................................................................................................................... 1

ARGUMENT .......................................................................................................................... 3

I.    The Relevant Contract Entitles Plaintiffs to Fees and Costs ............................... 4

II.   Counsel Achieved Substantial Success on Plaintiffs' Claims ............................. 6

III.  The Requested Rates Are Presumptively Reasonable .......................................... 7

IV.  The Hours Charged in This Case Are Reasonable ............................................. 11

V.   Plaintiffs' Out-of-Pocket Expenses Are Reasonable .......................................... 13

CONCLUSION ..................................................................................................................... 13

# **TABLE OF AUTHORITIES**

Page(s)

### CASES

*Advanced Analytics, Inc. v. Citigroup Glob. Mkts., Inc.*,
   No. 04 Civ. 3531, 2020 WL 91504 (S.D.N.Y. Jan. 8, 2020) ........................................................9

*Ambac Assurance Corp. v. Adelanto Pub. Util. Auth.*,
   No. 09 Civ. 5087, 2013 WL 4615404 (S.D.N.Y. Aug. 29, 2013) ............................................13

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*,
   522 F.3d 182 (2d Cir. 2008) ....................................................................................................12

*Cruz v. Local Union Number 3 of Int'l Brotherhood of Elec. Workers*,
   34 F.3d 1148 (2d Cir. 1994) ....................................................................................................11

*Danaher Corp. v. Travelers Indem. Co.*,
   No. 10 Civ. 121, 2014 WL 4898754 (S.D.N.Y. Sept. 30, 2014) .........................................8, 11

*F.H. Krear & Co. v. Nineteen Named Trs.*,
   810 F.2d 1250 (2d Cir. 1987) ................................................................................................3, 4

*Farrar v. Hobby*,
   506 U.S. 103 (1992) ..................................................................................................................6

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) ...............................................................................................................5, 6

*HSH Nordbank AG N.Y. Branch v. Swerdlow*,
   No. 08 Civ. 6131, 2010 WL 1141145 (S.D.N.Y. Mar. 24, 2010) ...........................................13

*In re Karp*,
   145 A.D.2d 208 (N.Y. App. Div. 1989) ..................................................................................12

*LeBlanc-Sternberg v. Fletcher*,
   143 F.3d 748 (2d Cir. 1998) ......................................................................................................5

*MSC Mediterranean Shipping Co. Holding S.A. v. Forsyth Kownacki LLC*,
   No. 16 Civ. 8103, 2017 WL 1194372 (S.D.N.Y. Mar. 30, 2017) .............................................9

*Pennsylvania v. Del. Valley Citizens' Council for Clean Air*,
   478 U.S. 546 (1986) ................................................................................................................11

*Perdue v. Kenny A. ex rel. Winn*,
   559 U.S. 542 (2010) ................................................................................................................11

*Restivo v. Hessemann*,
    846 F.3d 547 (2d Cir. 2017) ............................................................................................... 8

*Riordan v. Nationwide Mut. Fire Ins. Co.*,
    977 F.2d 47 (2d Cir. 1992) ............................................................................................... 12

*Schultz v. Hembree*,
    975 F.2d 572 (9th Cir. 1992) ............................................................................................. 6

*Simmons v. N.Y.C. Transit Auth.*,
    575 F.3d 170 (2d Cir. 2009) ......................................................................................... 8, 11

*Star Ins. Co. v. A&J Constr. of N.Y., Inc.*,
    No. 15 Civ. 8798, 2018 WL 6177857 (S.D.N.Y. Nov. 26, 2018) ..................................... 4

*Sykes v. RFD Third Ave. I Assocs., LLC*,
    39 A.D.3d 279 (N.Y. App. Div. 2007) .............................................................................. 6

*Themis Cap. v. Democratic Republic of Congo*,
    No. 09 Civ. 1652, 2014 WL 4379100 (S.D.N.Y. Sept. 4, 2014) ....................................... 9

*In re Tremont Sec. Law, State Law & Ins. Litig.*,
    699 F. App'x 8 (2d Cir. 2017) ......................................................................................... 11

*U.S. Football League v. Nat'l Football League*,
    887 F.2d 408 (2d Cir. 1989) ............................................................................................ 13

*Vaigasi v. Solow Mgmt. Corp.*,
    No. 11 Civ. 5088, 2017 WL 3868990 (S.D.N.Y. Sept. 5, 2017) ....................................... 9

*Vista Outdoor Inc. v. Reeves Family Tr.*,
    No. 16 Civ. 5766, 2018 WL 3104631 (S.D.N.Y. May 24, 2018) ................................. 8, 9

*P.J. ex rel. W.J. v. Conn. State Bd. of Educ.*,
    931 F.3d 156 (2d Cir. 2019) ............................................................................................ 11

*Wells Fargo Bank, NA v. Konover*,
    No. 05 Civ. 1924, 2014 WL 3908596 (D. Conn. Aug. 8, 2014) ..................................... 11

### STATUTES

28 U.S.C. § 1608(a)(4) ............................................................................................................ 2

28 U.S.C. § 1608(c)(1) ............................................................................................................ 2

**OTHER AUTHORITIES**

Debra Cassens Weiss, *At Least 3 BigLaw Firms Charge More than $1K Per Hour for Top Associates*, ABA Journal (May 27, 2020), https://bit.ly/2GZFv5U ............................. 9

Martha Neil, *Top Partner Billing Rates at BigLaw Firms Approach $1,500 Per Hour*, ABA Journal (Feb. 8, 2016), https://bit.ly/2FsBkim ....................................................... 9

Sullivan & Cromwell LLP, Joseph E. Neuhaus, https://bit.ly/31rU3Cr ........................................ 12

Plaintiffs Contrarian Capital Management, L.L.C., Contrarian Capital Fund I, L.P., Contrarian Dome du Gouter Master Fund, LP, Contrarian Capital Senior Secured, L.P., Contrarian EM II, LP, Contrarian Emerging Markets, L.P., Polonius Holdings, LLC, and Contrarian Funds, L.L.C. respectfully submit this memorandum of law in support of their motion for attorneys' fees and costs.

## INTRODUCTION

The Global Note for the 13.625% 2018 RegS Bonds entitles Plaintiffs to recover "all reasonable and documented out-of-pocket expenses . . . incurred in connection with any reasonable investigation of any such Event of Default or the enforcement of the Securities." Molo Decl. Ex. A (MSJ Ex. M) at PDF 10.  Plaintiffs have incurred attorneys' fees and expenses in connection with this litigation to enforce the terms of the 13.625% 2018 RegS Bonds. Plaintiffs now seek to recover those reasonable fees and expenses pursuant to the terms of the Global Note.  The fees incurred are presumptively reasonable because they were reviewed and agreed to by sophisticated clients.  Moreover, those fees are amply justified in light of the success achieved in this case.  They are in line with market conditions in this District and with the substantial experience, skill, and efficiency that counsel brought to this matter.  And they are proportional in light of the complexity of this case and the amount at stake.  The Court should award Plaintiffs' requested fees and expenses in full.

## BACKGROUND

Plaintiffs have worked at every phase of this case to expedite this litigation.  They filed their original complaint on November 29, 2019.  Dkt. 1.  They then amended that complaint in December 2019 to add seven more series of bonds.  Dkt. 15.  Plaintiffs promptly attempted multiple times to serve the Republic at its New York consulate, where the Republic had agreed to accept service in the two "Fiscal Agency Agreements" governing the bonds at issue.  Molo

Decl. ¶ 14; *see* Dkt. 65-8 (1998 FAA) § 14(b); Dkt. 65-9 (2001 FAA) § 14(b). However, because the consulate was closed, and because other methods of service under the Foreign Sovereign Immunities Act were unavailable, Plaintiffs worked with the Department of State to serve the Republic through diplomatic channels. *See* Dkt. 24 (clerk's certificate of mailing); *see also* 28 U.S.C. § 1608(a)(4). Service was completed on January 14, 2020. *See* 2/04/20 text entry (noting transmission of diplomatic note as of January 14, 2020); 28 U.S.C. § 1608(c)(1) (diplomatic service is effective as of "the date of transmittal").

Plaintiffs then took steps to streamline discovery. Immediately upon learning that service had been completed, Plaintiffs wrote the Republic's counsel in the related cases, proposed the same protective order agreed to in those cases, and offered to produce all relevant documents in their possession as soon as the protective order was executed. Molo Decl. Ex. D (Feb. 3, 2020 letter). While that counsel did not respond, the Republic's current counsel contacted Plaintiffs in March 2020. Molo Decl. ¶ 16. Plaintiffs and the Republic then submitted a protective order by March 23, Dkt. 30, which the Court signed, Dkt. 31. On March 26, Plaintiffs produced to the Republic the same materials used for summary judgment in the related cases. Molo Decl. ¶ 16; Dkt. 35 at 2.

Plaintiffs and the Republic then engaged in good-faith discovery about certain questions and additional requests that the Republic raised. Among other tasks, Contrarian voluntarily responded to the Republic's informal document requests and interrogatories and answered numerous follow-up questions raised by the Republic's counsel. Molo Decl. ¶ 17; *see* Dkt. 56 at 1-2 (describing pre-motion discovery). Pursuant to a scheduling order issued on April 10, 2020, the parties completed that discovery on April 23, subject to one discrete dispute about the disclosure of Plaintiffs' beneficial owners, which was resolved at an April 30 court conference. *See* Dkt. 41 (scheduling order); 4/30/20 Text Entry (describing conference).

After discovery closed, Plaintiffs served their first amended Rule 56.1 statement on April 28, 2020. Dkt. 50 at 1. Plaintiffs and the Republic then engaged in good-faith discussions to partially resolve the claims at issue in this case (including the settlement conference required by the Court's scheduling order, *see* Dkt. 41 at 2; Dkt. 48 at 2). Molo Decl. ¶17. As a result of those discussions, the parties stipulated twice to dismiss without prejudice all claims by three Plaintiff funds and certain claims by the remaining Plaintiffs. *See* Dkts. 49, 53. The parties also met and conferred to resolve their disagreements about the proper calculation of interest owing on the Republic's bonds. *See* Dkt. 50 at 1.

On June 1, 2020, the Court entered a briefing schedule on Plaintiffs' motion for summary judgment and the Republic's cross-motion for a stay. *See* Dkt. 59. Pursuant to that schedule, the parties' motions were fully briefed as of August 10, 2020. *See id.* The Court granted Plaintiffs' motion for summary judgment in its entirety and denied the Republic's cross-motion in an October 1, 2020 opinion. *See* Dkt. 74. The Court then entered judgment in the full amount of unpaid principal, coupon interest, and prejudgment interest for Plaintiffs' bonds on October 16, 2020, ten and one half months after Plaintiffs filed their initial complaint. Dkt. 81.

## ARGUMENT

Under New York law,[1] "when a contract provides that in the event of litigation the losing party will pay the attorneys' fees of the prevailing party, the court will order the losing party to pay whatever amounts have been expended by the prevailing party, so long as those amounts are not unreasonable." *F.H. Krear & Co. v. Nineteen Named Trs.*, 810 F.2d 1250, 1263 (2d Cir. 1987). In deciding whether fees claimed are reasonable, the court uses a "lodestar" method, "in

---

[1] New York fee-award standards control because the Global Note for the 13.625% RegS Bonds is governed by New York law. *See F.H. Krear & Co. v. Nineteen Named Trs.*, 810 F.2d 1250, 1263 (2d Cir. 1987) (applying New York law, "which the Contracts provided was to govern," to fee determination).

3

which the hours reasonably spent by counsel, as determined by the Court, [are] multiplied by the reasonable hourly rate." *Id.* at 1263 (internal quotation marks omitted). "A variety of factors informs the court's determination of whether a requested amount of attorneys' fees is reasonable or unreasonable, including the difficulty of the questions involved; the skill required to handle the problem; the time and labor required; the lawyer's experience, ability and reputation; the customary fee charged by the Bar for similar services; and the amount involved." *Id.* (internal quotation marks omitted). "'[T]here is no precise rule or formula for determining a proper attorney's fees award; rather, the district court should exercise its equitable discretion in light of all relevant factors.'" *Star Ins. Co. v. A&J Constr. of N.Y., Inc.*, No. 15 Civ. 8798, 2018 WL 6177857, at *3 (S.D.N.Y. Nov. 26, 2018).

Plaintiffs' fee request easily satisfies those standards. The Global Note for the 13.625% unambiguously requires the Republic to pay Plaintiffs' costs and expenses incurred in bringing this case. As described in the supporting Declaration of Steven F. Molo, Plaintiffs request a total of $823,949.95 in fees[2] and $12,248.25 in out-of-pocket costs. Molo Decl. ¶¶ 28, 31, 33. Those fees and costs are dwarfed by the judgment of over $280 million that counsel achieved for their clients on a pace far faster than comparable bondholder litigation. Counsel achieved that result in a case that raised complex issues of sovereign immunity, federal sanctions regulations, and the Court's Article III powers. And counsel's fees represent a discount to prevailing market rates that Plaintiffs and other litigants regularly pay in cases of this nature.

I.   **THE RELEVANT CONTRACT ENTITLES PLAINTIFFS TO FEES AND COSTS**

In the Global Note for the 13.625% 2018 RegS Bonds, the Republic promised to pay "all reasonable and documented out-of-pocket expenses of the holders (including, without limitation,

---

[2] This total represents Plaintiffs' lodestar less $112.10, representing sums not paid due to clerical errors. Molo Decl. ¶¶ 28, 31.

4

all reasonable counsel fees and court costs, stamp taxes, duties and fees) incurred in connection with any reasonable investigation of any such Event of Default or the enforcement of the Securities." Molo Decl. Ex. A (Dkt. 65-12) at PDF 10. An "Event of Default" exists if the Republic fails to pay principal or interest when due and such failure continues for 30 days. *Id.*

The Republic does not dispute that it made this promise. *See* Dkt. 64-2 (response to Plaintiffs' operative Rule 56.1 statement ¶¶ 58-59. And it does not dispute that the conditions for a fee-shifting award have been met. The Republic admits that it did not make numerous interest payments on the 13.625% RegS bonds that came due from February 2018 to February 2020. *Id.* ¶¶ 48-49. The Republic thus did not contest in its summary-judgment briefing either that an Event of Default is continuing with respect to the 13.625% 2018 RegS Bonds or that such event of default entitles Plaintiffs to their fees and expenses.

Nor can the Republic dispute that the costs Plaintiffs incurred in litigating this action overall are costs "incurred in connection with . . . the enforcement of the" 13.625% 2018 RegS Bonds. Where, as here, a plaintiff's "claims for relief [ ] involve a common core of facts" or are "based on related legal theories," the "lawsuit cannot be viewed as a series of discrete claims" for purposes of a fee application. *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983). Instead, a party whose attorney has "obtained excellent results" overall should "recover a fully compensatory fee," regardless whether each individual claim is compensable. *Id.*; *see also LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 762 (2d Cir. 1998) (if prevailing "claims for relief 'involve[d] a common core of facts' or were 'based on related legal theories' . . . there should be a fee award for all time reasonably expended"). The crux of this action concerned issues that affected Plaintiffs' claims as a whole, such as the impact of OFAC sanctions and the Republic's stay request, and not issues relating to any given bond. As a result, the fees that Plaintiffs are entitled to under the 13.625% 2018 RegS Bonds are indivisible from their fees incurred in

5

prosecuting this case as a whole. *See Hensley*, 461 U.S. at 465; *see also Schultz v. Hembree*, 975 F.2d 572, 576-77 (9th Cir. 1992) (in cases where some claims are compensable and some are not, it is appropriate to award the prevailing party "that amount in fees it would have incurred had the [compensable] claims been litigated by themselves").[3]

Moreover, to the extent it is possible to identify billing entries for work attributable only to other sets of Bonds, Plaintiffs have removed those entries from this application. For example, Plaintiffs excluded time entries solely spent on obtaining authorization to sue on Bonds other than the 13.625% 2018 RegS Bonds. Thus, all remaining time entries represent time either devoted to the 13.625% 2018 RegS Bonds in particular or to the litigation as a whole.

## II. COUNSEL ACHIEVED SUBSTANTIAL SUCCESS ON PLAINTIFFS' CLAIMS

"The most critical factor in determining a fee award's reasonableness is the degree of success obtained[.]" *Farrar v. Hobby*, 506 U.S. 103, 103 (1992); *see also Hensley*, 461 U.S. at 435. That factor, by itself, shows that the requested fees and expenses in this case are reasonable. At a cost of only $823,949.95 in fees, counsel obtained a judgment of over $287 million that recovered all unpaid principal, coupon interest, and prejudgment interest on the bonds still at issue in this case.

Moreover, counsel obtained that result far faster than both contract cases in general in this District and similar bondholder litigation against the Republic or PDVSA, its state-owned oil

---

[3] Unlike some contractual fee-shifting provisions, the relevant Global Note does not limit fees to "prevailing parties" in litigation. In any event, Plaintiffs are prevailing parties here. Plaintiffs prevailed on all their claims and successfully opposed the Republic's motion to stay. *See* Dkt. 74 (granting summary judgment on all claims and denying motion to stay). The Court then granted Plaintiffs judgment in the full amount of unpaid principal, coupon interest, and prejudgment interest they requested in the bonds still at issue. Dkt. 81. That easily meets the threshold to be deemed prevailing parties. *See Sykes v. RFD Third Ave. I Assocs., LLC*, 39 A.D.3d 279, 279 (N.Y. App. Div. 2007) (in deciding whether a party has "prevailed," courts consider the "'true scope' of the dispute litigated and what was achieved within that scope").

company. For example, while Plaintiffs proceeded from initial complaint to a final judgment in ten and a half months, *see* Dkt. 81 (October 16, 2020 judgment); Dkt. 1 (November 29, 2019 complaint), litigation analytics by LexMachina show that the median contract case in this District reaches an order on a summary judgment motion within 726 days, or approximately 23.87 months. *See* Molo Decl. Ex. E. That result was achieved even after delays caused by the Republic's failure to accept service at its New York consulate, which required Plaintiffs to expend additional time serving the Republic through diplomatic channels. *See* Molo Decl. ¶¶ 14-15. Similarly, the two bondholder cases against the Republic marked as related to this one took 17.8 and 21.4 months, respectively, to reach a ruling on summary judgment. *See* No. 19 Civ. 3123, Dkts. 1 & 62 (complaint filed April 8, 2019, and summary judgment granted on September 30, 2020); No. 18 Civ. 11940, Dkts. 1 & 75 (complaint filed December 18, 2018, and summary judgment granted on September 30, 2020). And other bondholder cases in this District against the Republic or PDVSA have either taken much longer to reach judgment or have not reached judgment at all.[4] The speed with which Plaintiffs obtained a judgment, too, shows the fees incurred in reaching judgment are reasonable.

## III.   THE REQUESTED RATES ARE PRESUMPTIVELY REASONABLE

The hourly rates charged by counsel in this case are also reasonable. In their engagement letter, Plaintiffs agreed for their counsel to charge, and Plaintiffs actually paid, from $395 to $1,400 per hour for attorneys and $210 per hour for legal assistants. Molo Decl. Ex. F.

---

[4] *See, e.g.*, *Lovati v. Petroleos de Venezuela, S.A.*, No. 19 Civ. 4799, Dkt. 38 (S.D.N.Y. Oct. 12, 2020) (case filed May 23, 2019 that is currently in discovery); *Lovati v. Bolivarian Republic of Venezuela*, No. 19 Civ. 4793 & 19 Civ. 4796 (S.D.N.Y.) (case filed May 23, 2019 that is currently awaiting decision on a motion to dismiss and to vacate default); *Dresser-Rand Co. v. Petroleos de Venezuela, S.A.*, No. 19 Civ. 2689 (S.D.N.Y.) (case filed March 26, 2019 that is currently in discovery as to defendant PDVSA); *White Beech SNC, LLC v. Petroleos de Venezuela, S.A.*, No. 18 Civ. 4148 (S.D.N.Y.) (case filed May 9, 2018 that is currently stayed).

Plaintiffs also agreed to, and actually received, a 10% discount for all invoices that were paid within 30 days.  Molo Decl. ¶27.

Such a fee that a "reasonable, paying client would be willing to pay" is "presumptively reasonable" because "such a party wishes to spend the minimum necessary to litigate the case effectively."  *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (citation and internal quotation marks omitted); *see also Danaher Corp. v. Travelers Indem. Co.*, No. 10 Civ. 121, 2014 WL 4898754, at *2 (S.D.N.Y. Sept. 30, 2014) ("'[T]he amount actually paid to counsel by paying clients is compelling evidence of a reasonable market rate.'" (citation omitted)).  Plaintiffs – Contrarian Capital Management, L.L.C. and associated investment funds and separately-managed accounts – are sophisticated investors which have regularly retained counsel for complex litigation matters in this District and elsewhere.  Plaintiffs agreed to counsel's rates, reviewed every invoice that counsel submitted, and paid every invoice in full with the agreed-upon discount.  Molo Decl. ¶¶27-28.

The fees are also in line with the market for legal services in this District.  When using the lodestar approach, courts "'generally use the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee.'"  *Restivo v. Hessemann*, 846 F.3d 547, 590 (2d Cir. 2017).  In this case, the relevant community is the legal market in New York City.  *Vista Outdoor Inc. v. Reeves Family Tr.*, No. 16 Civ. 5766, 2018 WL 3104631, at *5 (S.D.N.Y. May 24, 2018).  The fees paid by Plaintiffs are well within the market range of fees paid for similar legal services in New York.  *See* Molo Decl. ¶29.  Courts in this District have consistently approved similar (or higher) rates for attorneys, recognizing that such

8

rates are not excessive in the New York market.[5] The Republic's counsel have likewise charged similar or even higher rates in recent years.[6] And media reports indicate even higher rates are not unusual in the New York market. *See* Debra Cassens Weiss, *At Least 3 BigLaw Firms Charge More than $1K Per Hour for Top Associates*, ABA Journal (May 27, 2020), available at https://bit.ly/2GZFv5U; Martha Neil, *Top Partner Billing Rates at BigLaw Firms Approach $1,500 Per Hour*, ABA Journal (Feb. 8, 2016), available at https://bit.ly/2FsBkim. MoloLamken's attorney rates are well within the prevailing market range for New York firms performing comparable work.[7]

Counsel's rates are also reasonable given the experience and qualifications of the attorneys involved. MoloLamken is a nationally recognized litigation firm that regularly tries complex commercial cases, cases involving issues of foreign sovereign immunity, and securities-

---

[5] *See, e.g.*, *Vista Outdoor Inc. v. Reeves Family Tr.*, No. 16 Civ. 5766, 2018 WL 3104631, at *6 (S.D.N.Y. May 24, 2018) (awarding partner billing rates between $1,165 and $1,260 and associate rates between $382.50 and $693.75); *MSC Mediterranean Shipping Co. Holding S.A. v. Forsyth Kownacki LLC*, No. 16 Civ. 8103, 2017 WL 1194372, at *3 (S.D.N.Y. Mar. 30, 2017) (finding reasonable partner rates between $874.60 and $1,048.47 and associate rates between $569.02 and $753.42); *Themis Cap. v. Democratic Republic of Congo*, No. 09 Civ. 1652, 2014 WL 4379100, at *7 (S.D.N.Y. Sept. 4, 2014) ("[P]artner billing rates in excess of $1,000 an hour[ ] are by now not uncommon in the context of complex commercial litigation.").

[6] *See, e.g.*, Decl. of Thomas C. White, *Universal Instruments Corp. v. Micro Sys. Eng'g Inc.*, No. 13 Civ. 831, Dkt. 422-2 (N.D.N.Y. Feb. 23, 2018) (reporting rates charged by Sullivan & Cromwell LLP from 2017 to 2018 between $723 and $1,445 an hour for attorneys); Mem. In Supp. of Mot. For Attorney's Fees & Litig. Expenses, *Cytec Indus. Inc. v. Allnex (Luxembourg) & CY S.C.A.*, No. 14 Civ. 1561, Dkt. 146, at 12 (S.D.N.Y. July 20, 2017) (reporting rates charged by Sullivan & Cromwell LLP in 2016 between $665 and $1,700 per hour for attorneys and between $160 to $410 per hour for legal assistants).

[7] The rates charged for other professional staff are likewise within the range of rates found reasonable within this District. *See, e.g.*, *Vista*, 2018 WL 3104631, at *7 (noting, in 2018, that courts in this District award rates of up to $200 per hour for paralegals); *Vaigasi v. Solow Mgmt. Corp.*, No. 11 Civ. 5088, 2017 WL 3868990, at *4 (S.D.N.Y. Sept. 5, 2017) (same observation in 2017); *Advanced Analytics, Inc. v. Citigroup Glob. Mkts., Inc.*, No. 04 Civ. 3531, 2020 WL 91504, at *5-6 (S.D.N.Y. Jan. 8, 2020) (finding rate of $205.42 reasonable for paralegals).

litigation matters. Molo Decl. ¶¶ 6-7. The bulk of the work on this case was performed by only four attorneys, each of whom has substantial relevant experience:

- Steven F. Molo, a founding partner of MoloLamken, has over thirty years of experience in civil matters. Mr. Molo led the representation in this case by advising the clients on high-level strategic issues and reviewing and approving all court filings. Molo Decl. ¶ 10. He has been repeatedly recognized as a leading practitioner in the field, having been named for five years as one of the top 100 trial lawyers in the United States by *Benchmark Litigation* and for twelve years as one of the leading 500 lawyers in the United States by *Lawdragon*. Molo Decl. ¶ 8; Molo Decl. Ex. B at 1. He has led numerous cases to verdict or judgment involving complex commercial and securities matters. Molo Decl. Ex. B at 1-7. He billed a total of 81.4 hours on this matter that were included in this fee application. Molo Decl. Ex. F at 12.

- Justin M. Ellis, a partner of MoloLamken, was responsible for the day-to-day management of this case, including pleadings, motion practice, and discovery. Molo Decl. ¶ 10. Together with Mr. Molo, Mr. Ellis also advised the client on high-level strategic issues. *Id.* ¶ 10. Mr. Ellis has been recognized by *Benchmark Litigation* as one of the top bankruptcy and restructuring lawyers in the United States and has been named repeatedly as a "Rising Star" by *SuperLawyers*. Molo Decl. Ex. C at 1. Mr. Ellis graduated from the University of Chicago Law School in 2009 and served as a law clerk to the Hon. Frank H. Easterbrook of the United States Court of Appeals for the Seventh Circuit. *Id*. at 2. He billed a total of 347.3 hours on this matter that were included in this fee application. Molo Decl. Ex. F at 12.

- Lauren F. Dayton served as the lead associate on the case and handled all aspects of complaint drafting, discovery, and motion practice. Molo Decl. ¶ 10. Ms. Dayton graduated from the University of Michigan Law School in 2016 and served as a law clerk to the Hon. Steven M. Colloton of the United States Court of Appeals for the Eighth Circuit and the Hon. Brian M. Cogan of the United States District Court for the Eastern District of New York. Molo Decl. Ex. C at 4. She billed a total of 443 hours on this matter that were included in this fee application. Molo Decl. Ex. F at 12.

- Elizabeth K. Clarke has served the role of a junior associate in this case, and in particular participated in discovery and the drafting of Plaintiffs' summary-judgment papers. Molo Decl. ¶ 10. Ms. Clarke graduated from the University of Chicago Law School in 2017 and served as a law clerk to the Hon. Allison H. Eid of the United States Court of Appeals for the Tenth Circuit and the Hon. Edmond E. Chang of the United States District Court for the Northern District of Illinois. Molo Decl. Ex. C at 6. She billed a total of 238.3 hours on this matter that were included in this fee application. Molo Decl. Ex. F at 12.

The case, moreover, was staffed and litigated efficiently. The majority of the work performed by total hours was completed by two associates, Ms. Dayton and Ms. Clarke, who led the process of completing discovery, preparing and filing the summary judgment motion, and handling the responsive briefing. Molo Decl. ¶¶ 10, 19, 22 & Ex. F at 12. That delegation of work to lower-billing associates is further proof that the fees charged in this case are reasonable.

## IV.  THE HOURS CHARGED IN THIS CASE ARE REASONABLE

There is a "strong presumption that the lodestar figure—the product of reasonable hours times a reasonable rate—represents a 'reasonable' fee." *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986); *see also Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010); *P.J. ex rel. W.J. v. Conn. State Bd. of Educ.*, 931 F.3d 156, 169 (2d Cir. 2019). Here, where every invoice was reviewed and paid by a sophisticated client, the amount of work done is also presumptively reasonable. *Simmons*, 575 F.3d at 174; *Danaher*, 2014 WL 4898754, at *2; *see also Wells Fargo Bank, NA v. Konover*, No. 05 Civ. 1924, 2014 WL 3908596, at *10 (D. Conn. Aug. 8, 2014), *aff'd sub nom. Wells Fargo Bank, N.A. v. Konover Dev. Corp.*, 630 F. App'x 46 (2d Cir. 2015). As the attached Declaration of Steven F. Molo explains, Plaintiffs' counsel spent a total of 1290.6 hours to prosecute this case from the initial complaint to judgment. Molo Decl. ¶ 28 & Ex. F at 13.[8]

---

[8] The amount of hours spent is detailed through summaries of the time billed each month for each attorney or professional staff member engaged on this case. Molo Decl. Ex. F. Those summaries are based upon counsel's contemporaneous fee records. Molo Decl. ¶ 30. Under Second Circuit standards, the Court "may rely on [such] summaries that are based on voluminous contemporaneous records." *In re Tremont Sec. Law, State Law & Ins. Litig.*, 699 F. App'x 8, 18 n.13 (2d Cir. 2017); *see Cruz v. Local Union Number 3 of Int'l Brotherhood of Elec. Workers*, 34 F.3d 1148, 1160 (2d Cir. 1994) (approving award of fees based on billing summaries based on "contemporaneous entries [made] as the work was completed"). In any event, state law creates the substantive right to fees for Plaintiffs' New York claims, and New York law does not require contemporaneous time records to support a fee application. *See*

The amount of hours is also reasonable in light of the complex and novel legal issues raised in this case. *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 186 n.3 (2d Cir. 2008) (among other factors, courts consider the "novelty and difficulty of the questions" involved in the case). Among other issues, the Republic raised defenses including whether the Court should stay this case as an exercise of its inherent powers; whether doctrines of comity and the international-law "doctrine of necessity" also warranted a stay; whether OFAC sanctions prohibited the entry of judgment, and, if so, whether such sanctions were an unconstitutional limitation on the Court's Article III powers; whether, given the Republic's sovereign status, the Foreign Sovereign Immunities Act mandated applying a lower prejudgment interest rate to Plaintiffs' claims; and whether the Court should enter certain "fraud-prevention" language in Plaintiffs' judgment. *See, e.g.*, Dkt. 69 (summary judgment brief) at 7-29. Each of those issues is an open question in this Circuit which required substantial effort for Plaintiffs to research and draft their summary-judgment papers. The complexity of those issues – and the results obtained by counsel – is further proof that the fees claimed are reasonable.

Finally, the amount involved in this case, its timing, the case's cooperative resolution, and the quality of opposing counsel's representation also support the fee petition. *See Arbor Hill Concerned Citizens Neighborhood Ass'n*, 522 F.3d at 186 n.3 (courts consider the "amount involved"). Plaintiffs sought and received over $280 million in their judgment. They litigated this case against highly sophisticated opposing counsel, including a lead attorney, Joseph Neuhaus, who has been recognized as one of the leading lawyers in the United States for matters involving foreign sovereign litigation and international commercial arbitration. *See* Sullivan &

---

*Riordan v. Nationwide Mut. Fire Ins. Co.*, 977 F.2d 47, 53 (2d Cir. 1992); *In re Karp*, 145 A.D.2d 208, 216 (N.Y. App. Div. 1989).

Cromwell LLP, Joseph E. Neuhaus, https://bit.ly/31rU3Cr.  Plaintiffs did so on a cooperative basis that avoided needless extra work by informally conducting discovery with the Republic and by voluntarily resolving numerous of the claims at issue.  Molo Decl. ¶¶ 16-17.  And they did so on an expedited timeline given the need to maintain their priority relative to other creditors of the Republic.  *Id.* ¶ 24.  Those factors, too, demonstrate that Plaintiffs' fees are reasonable.

## V. PLAINTIFFS' OUT-OF-POCKET EXPENSES ARE REASONABLE

The Global Note for the 2018 RegS Bonds also entitles Plaintiffs to their reasonable and documented out-of-pocket expenses incurred in this case.  Molo Decl. Ex. A (Dkt. 65-12) at PDF 10; pp. 4-6, *supra*.  Plaintiffs incurred hard costs totaling $12,248.25 in connection with the enforcement of the 13.625% 2018 RegS Bonds.  These costs included the cost of a process server; fees for diplomatic service (including translation services); court costs and associated expenses; transcript fees; and costs related to e-discovery management and hosting.  *See* Molo Decl. ¶ 33 & Ex. H.  Courts in this district routinely award such costs.  *See, e.g.*, *Ambac Assurance Corp. v. Adelanto Pub. Util. Auth.*, No. 09 Civ. 5087, 2013 WL 4615404, at *1, *7 (S.D.N.Y. Aug. 29, 2013); *HSH Nordbank AG N.Y. Branch v. Swerdlow*, No. 08 Civ. 6131, 2010 WL 1141145 (S.D.N.Y. Mar. 24, 2010), *aff'd sub nom. HSH Nordbank AG N.Y. Branch v. Street*, 421 F. App'x 70 (2d Cir. 2011); *U.S. Football League v. Nat'l Football League*, 887 F.2d 408, 416 (2d Cir. 1989) (awarding out-of-pocket expenses that were "incidental and necessary to the representation") (internal quotation marks omitted).  In light of the results obtained, those out-of-pocket costs are amply reasonable.  The Court should award them as well.

## CONCLUSION

The Court should award Plaintiffs attorneys' fees in the amount of $823,949.95 and out-of-pocket expenses in the amount of $12,248.25.

|  |  |
|---|---|
| Dated: October 30, 2020<br>New York, New York | Respectfully submitted,<br><br>*/s/ Steven F. Molo*<br>Steven F. Molo<br>Justin M. Ellis<br>Lauren F. Dayton<br>MOLOLAMKEN LLP<br>430 Park Avenue, 6th Floor<br>New York, NY  10022<br>Tel.: (212) 607-8170<br>Fax: (212) 607-8161<br>smolo@mololamken.com<br><br>Elizabeth K. Clarke (admitted *pro hac vice*)<br>MOLOLAMKEN LLP<br>300 N. LaSalle Street, Suite 5350<br>Chicago, IL  60654<br>Tel.: (312) 450-6700<br>Fax: (312) 450-6701<br><br>*Counsel for Plaintiffs* |