# Vinson&Elkins

Dora Georgescu  dgeorgescu@velaw.com
**Tel** +1.212.237.0186  **Fax** +1.917.849.5373

August 22, 2024

**Via ECF/CM and Email**

Hon. Analisa Torres
United States District Court
Southern District of New York
Daniel Patrick Moynihan United States Court House
500 Pearl Street
New York, New York 10007

**RE:** *Contrarian Capital Management, LLC, et al. v. Bolivarian Republic of Venezuela*, No. 19-cv-11018 (S.D.N.Y.) (rel. Nos. 19-cv-3123 & 18-cv-11940):  Defendant's Response to the Court's August 8, 2024 Order

Dear Judge Torres:

     We represent Defendant the Bolivarian Republic of Venezuela ("Venezuela").  We write pursuant to your Honor's order, dated August 8, 2024, which seeks an explanation of how, if at all, the results of the Venezuelan presidential election affect Venezuela's position on Plaintiffs'[1] motion under 28 U.S.C. § 1610(c) ("Plaintiffs' Motion").  *See* Dkt. No. 189.  The results of the presidential election, and the international reaction in the weeks following the election, confirm Venezuela's position that the country is on the brink of a political reform that will lead to a significant debt restructuring, which weighs in favor of delaying execution of the January 2, 2024 judgment (the "January 2024 Judgment") under the four factors set forth by Congress.  *See Ferrostaal Metals Corp. v. S.S. Lash Pacifico*, 652 F. Supp. 420, 423 (S.D.N.Y. 1987).

     As Venezuela indicated in its opposition to Plaintiffs' Motion, the Venezuelan presidential election presented an opportunity for the Nicolás Maduro regime—which has been widely characterized as authoritarian and anti-democratic[2]—to be replaced by leadership that has expressed its commitment to debt restructuring in order to repay creditors like Plaintiffs.  *See* Def.'s Mem. of Law in Opp. to Pl.s' Mot. for Relief Pursuant to 28 U.S.C. § 1610(c), Dkt. No. 185, at 6–8.  On July 28, 2024, the Venezuelan people

---

[1] Contrarian Capital Management, L.L.C., Contrarian Capital Fund I, L.P., Contrarian Dome Du Gouter Master Fund, L.P., Contrarian Capital Senior Secured, L.P., Contrarian Em II, L.P., Contrarian Emerging Markets, L.P., Boston Patriot Summer St L.L.C., Polonius Holdings, L.L.C., Contrarian Funds, L.L.C., Emma 1 Master Fund, L.P., and E1 SP, a Segregated Account of EMAP SPC.

[2] *See* Press Release, Ned Price, Dep't Spokesperson, U.S. Dep't of State, Venezuela's Interim Government and the 2015 National Assembly (Jan. 3, 2023), https://www.state.gov/venezuelas-interim-government-and-the-2015-national-assembly/.

**Vinson & Elkins LLP  Attorneys at Law**                                         The Grace Building, 1114 Avenue of the Americas, 32nd Floor
Austin  Dallas  Dubai  Houston  London  Los Angeles                              New York, NY 10036
New York  Richmond  San Francisco  Tokyo  Washington                             **Tel** +1.212.237.0000  **Fax** +1.212.237.0100  velaw.com

V&E

elected the democratic opposition candidate, Edmundo González Urrutia; however, Mr. Maduro has refused to accept the election results.

The Maduro-controlled National Electoral Council (the "CNE") proclaimed Mr. Maduro the winner of the election.[3] Mr. González, along with many international leaders rejected this result and requested that the CNE publish the data supporting its announcement.[4] To date, the CNE has refused to provide the requested proof.[5] Mr. González and opposition leader María Corina Machado, on the other hand, published copies of the voting tallies, "which have been uploaded to the internet and independently reviewed" and indicate that Mr. González is the true winner.[6]

Following the election, the opposition called for "nationwide protests to intensify pressure on Mr. Maduro to concede."[7] Since then, protests against the Maduro regime have been ongoing throughout Venezuela—where security forces loyal to Mr. Maduro have detained more than 2,400 protestors—and around the world.[8] Pressure on Mr. Maduro to step down is also mounting from foreign governments, including the United States. The U.S. government has denounced the CNE's "deeply flawed" actions, which announced an "outcome that does not represent the will of the Venezuelan people."[9] Indeed, in light of the "overwhelming evidence" that Mr. González was elected, the U.S. Government has recognized Mr. González as the president-elect and called for a "peaceful transition in accordance with Venezuelan electoral law and the wishes of the Venezuelan people."[10] Further, the U.S. Government has reaffirmed its support for "re-establishing democratic norms in Venezuela."[11]

Considering that less than a month has passed since the election, it is too soon to tell when, or whether, Mr. Maduro will cede power to the democratically elected Mr. González. If and when Mr. González assumes office, however, his government intends to restructure Venezuela's debt.[12]

---

[3] Vanessa Buschschlüter, *Venezuela crisis in brief*, BBC (Aug. 5, 2024), https://www.bbc.com/news/world-latin-america-48121148.
[4] *Id.*
[5] *Id.*
[6] *Id.*
[7] Gianluca Avagnina, *Protests across Venezuela as election dispute goes on*, BBC (Aug. 7, 2024), https://www.bbc.com/news/articles/cgedgqqy7x9o.
[8] *Id.*
[9] Press Release, Antony J. Blinken, Sec'y of State, Assessing the Results of Venezuela's Presidential Election (Aug. 1, 2024), https://www.state.gov/assessing-the-results-of-venezuelas-presidential-election/.
[10] *Id.*
[11] *Id.*
[12] Darrin Gibbs, *La agenda de Edmundo González Urrutia*, El Nacional (May 23, 2024), https://www.elnacional.com/opinion/la-agenda-de-edmundo-gonzalez-urrutia/.

**V&E**

  Notably, Plaintiffs' probability of enforcing the January 2024 Judgment are currently slim, given the strict regulations that the Office of Foreign Assets Control of the U.S. Department of the Treasury ("OFAC") has imposed on parties attempting to engage in any transactions with a Maduro-controlled Venezuela and related entities.[13]  Plaintiffs will likely have to sit on any attachment orders for some time before OFAC allows the January 2024 Judgment to be executed.[14]  Conversely, Plaintiffs will not be impacted by delays in attachment, as the opposition's official restructuring plan provides equal treatment to all creditors once the restructuring process begins, irrespective of whether a creditor has an order under 28 U.S.C. § 1610(c).  *See* Decl. of Joseph E. Neuhaus in Supp. of Mot. to Stay, Ex. A, Dkt. No. 72-1, at 2 ("[N]o different treatment shall be accorded to eligible foreign currency-denominated claims as a result of their origin . . . the nature or domicile of the holder of the claim, and/or the identity of the public sector obligor . . . whether the claim has been reduced to a court judgment or otherwise.").

  Accordingly, Plaintiffs' Motion should be denied pending the restitution of democracy in Venezuela and initiation of the debt restructuring process.

                Respectfully submitted,

                */s/ Dora Georgescu*
                Dora Georgescu

---

[13] Office of Foreign Asset Controls, *Venezuela Sanctions*, U.S. Dep't of Treasury, https://ofac.treasury.gov/faqs/808 (last updated May 1, 2023) (hereinafter "Venezuela Sanctions") ("[A] specific license from OFAC is required for the entry into a settlement agreement, or for the enforcement of any lien, judgment, or other order through execution, garnishment, or other judicial process purporting to transfer or otherwise alter or affect property or interests in property blocked pursuant to the [Venezuela Sanctions Regulations, 31 CFR part 591]."); *see also* Office of Foreign Asset Controls, *Frequently Asked Questions Related to the Suspension of Certain U.S. Sanctions with Respect to Venezuela on October 18, 2023*, U.S. Dep't of Treasury, https://ofac.treasury.gov/media/932821/download?inline (last updated Apr. 17, 2024) (reiterating that the U.S. Government's posture on litigation brought by creditors seeking to attach assets has not changed).

[14] Venezuela Sanctions, *supra* note 13.